**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------×

SARAH GOOLDEN,

*Plaintiff,*

**19 CV 6257**

*v.*

**COMPLAINT**

HAMED WARDAK,

*Defendant.*

---------------------------------------------------------------------×

Plaintiff Sarah Goolden, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Hamed Wardak as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Sarah Goolden, is the victim of sexual and physical violence by a merciless individual, Defendant Wardak, who knows no bounds and has followed and attacked other women. Defendant Wardak has been stalking Ms. Goolden for over a year and has been arrested numerous times for his illegal and relentless pursuit of Ms. Goolden.

2. Ms. Goolden seeks damages and costs against Defendant Wardak for assault, battery, and intentional infliction of emotional distress from Defendant Wardak's sexual assault of Ms. Goolden.

3. Ms. Goolden also seeks damages and costs against Defendant Wardak intentional infliction of emotional distress from his continued stalking of Ms. Goolden.

4. Ms. Goolden also seeks damages and costs against Defendant Wardak for defamation *per se*.

## JURISDITION AND VENUE

5. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

a. Plaintiff is a citizen of the State of New York, as she is domiciled in the State of New York.

b. Upon information and belief, Defendant is a citizen of Puerto Rico, as he is domiciled in the Commonwealth of Puerto Rico.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Defendant was and is a resident of Dorado County in the Commonwealth of Puerto Rico.

## STATEMENT OF FACTS

10. Defendant Wardak is a multi-millionaire with seemingly unlimited resources, who has a long, documented history of stalking and attacking woman.

11. Ms. Goolden, in her late 20s, is a working model and student.

12. Ms. Goolden met Defendant Wardak in 2010, and soon thereafter, they became friends.

13. In the summer of 2018, Defendant Wardak continually pressured Ms. Goolden into a romantic relationship.

14. As part of his courtship, Defendant Wardak bought Ms. Goolden numerous gifts.

15. Defendant Wardak told Ms. Goolden that he purchased the gifts only "as a friend" and that there were "no strings attached."

16. After giving Ms. Goolden the gifts, Defendant Wardak told Ms. Goolden that she absolutely had to give him a chance romantically and accept him as her boyfriend.

17. In and around early June 2018, feeling pressured by Defendant Wardak, Defendant, Ms. Goolden surrendered to his attempt to forge a closer relationship.

18. In and around the week of July 4, 2018, Ms. Goolden traveled to Miami with friends, Stephanie and Ferris, to attend Defendant Wardak's Fourth of July party.

19. Ms. Goolden and her friend stayed at Defendant Wardak's home.

20. On or about July 5, Defendant Wardak began an argument with Ms. Goolden in which he falsely and baselessly accused Ms. Goolden of sleeping with her friend, Ferris.

21. After threatening Ms. Goolden and Ferris, Defendant Wardak left his home to go to a nightclub.

22. Ms. Goolden, fearful of sleeping in the same room as Mr. Wardak, decided to sleep with Ferris and Stephanie in the guest room.

23. In the early morning of July 6, Ms. Goolden awoke to Defendant Wardak screaming and pulling her by her hair.

24. In front of Mr. Al-Awan, Defendant Wardak forcibly pulled Ms. Goolden out of bed, picked her up, and then carried her to his bedroom, where he then threw her onto his bed.

25. Defendant Wardak resumed the previous argument with Ms. Goolden and began throwing glasses and plates at her.

26. During the assault, Defendant Wardak threatened Ms. Goolden that he would ruin her life if she did not stay with him and agree to do what he wanted.

27. Ferris was fearful of Defendant Wardak and attempted to leave.

28. However, the elevator was stuck.

29. Regardless of the elevator trouble, Ms. Goolden also attempted to leave, beginning to pack her suitcase.

30. While she packed, Defendant Wardak told Ms. Goolden that if she forgave him for his actions, he would calm down and not hurt her or her friends.

31. Ms. Goolden was terrified of Defendant Wardak, and with the elevator stuck and having no other place to stay at 5:00 a.m., she decided to stay for the night.

32. Ms. Goolden, however, only got a few hours of sleep when she awoke suddenly to Defendant Wardak on top of her.

33. Defendant Wardak demanded that Ms. Goolden speak to him and work things out.

34. Defendant Wardak apologized to Ms. Goolden and Ferris.

35. Later that day, July 6, 2019, Defendant Wardak treated Ms. Goolden, her friends, and his entourage to food and drinks at a Bal Harbour restaurant.

36. Everyone was drinking heavily and Ms. Goolden felt extremely vulnerable and afraid.

37. Defendant Wardak then began buying multiple shots of tequila for Ms. Goolden, stating, "Sarah is only fun when she takes shots of 1942."

38. Shortly thereafter, Defendant Wardak proposed marriage to Ms. Goolden in front of his entourage.

39. Ms. Goolden felt publicly pressured and scared that Defendant Wardak would retaliate by physically assaulting her if she declined.

40. Thus, Ms. Goolden publically accepted Defendant Wardak's proposal.

41. In private, however, Ms. Goolden told Defendant Wardak that the proposal was a bad idea, and that she could not go through with the marriage.

42. Defendant Wardak brushed off Ms. Goolden's feelings and concerns, and told Ms. Goolden as-a-matter-of-fact, that she was "locked in now" because she had already said, "Yes."

43. When Ms. Goolden attempted to privately talk to her friend Alexandra about the matter, Defendant Wardak prevented Ms. Goolden from being alone with Alexandra by ordering his bodyguards to follow them into the bathroom.

44. Ms. Goolden increasingly became more uncomfortable being alone with Defendant Wardak.

45. Later that night at a hotel, Defendant Wardak was still drunk from the all-day drinking and initiated another argument with Ms. Goolden, yelling at Ms. Goolden, "It's a romantic night," and, "You should want to be alone with your fiancé."

46. Defendant Wardak also screamed as Ms. Goolden, telling her that she was a terrible person because she did not show him any affection.

47. Ms. Goolden was emotionally exhausted and tried to go to sleep.

48. Defendant Wardak joined Ms. Goolden in bed and told her that she is his fiancée now, and he "couldn't wait to make love" to her.

49. Ms. Goolden responded, saying that she did not want to engage in any sexual activity, that she was not ready, and that she wanted to rethink the engagement.

50. Defendant Wardak yelled multiple times, "No! You're my fiancé! You need to make love to me!"

51. Defendant Wardak then climbed on top of Ms. Goolden, pulled off of her underwear, and forcefully held her down while he performed oral sex on her.

52. Ms. Goolden pleaded with him to stop.

53. Defendant Wardak then stopped performing oral sex, pulled out his penis and sexually assaulted Ms. Goolden.

54. While Ms. Goolden loudly cried with her eyes shut, Defendant Wardak continued to shout, "You should want this because you're my fiancé!"

55. Throughout the sexual assault, Ms. Goolden repeatedly begged him to stop, which Defendant Wardak ignored.

56. At the end of the sexual assault, Defendant Wardak exclaimed, "This was the worst sexual experience of my life."

57. Ms. Goolden felt ashamed, terrified and defeated, and forced herself to sleep that night.

58. On July 7, the next morning, Ms. Goolden suffered an extreme anxiety attack.

59. Ms. Goolden then told Defendant Wardak that what happened last night "was not okay" and "would never happen again."

60. She also told Defendant Wardak that she wanted nothing to do with him and did not want to be engaged.

61. This led to another argument that ended with Ms. Goolden and Ferris leaving Defendant Wardak's home with their belongings and booking a room at a local hotel.

62. Ms. Goolden then informed her friend, Stephanie, that they left Defendant Wardak's apartment.

63. Defendant Wardak did not allow Stephanie to retrieve her belongings, and then called Stephanie and Ferris, yelling and threatening to harm Ms. Goolden if she did not return and speak with him.

64. Specifically, Defendant Wardak told them that he would ruin Ms. Goolden's life, make her look like a con-artist, get her dad thrown in jail, have someone follow her, and ruin her reputation.

65. In an attempt to retrieve Stephanie's belongings, Ms. Goolden, Stephanie and Ferris returned to Defendant Wardak's apartment.

66. Defendant Wardak allowed the retrieval, but then threatened Ms. Goolden further, telling Ms. Golden that he would sue her and force her into bankruptcy with legal fees, murder her and her entire family, tap her phones, and have her followed and watched.

67. Defendant Wardak also said to Ms. Goolden, "You're just a little blonde model—who will believe you?" and then bragged, "I took on Al Qaeda and The Taliban," before stating that Ms. Goolden was no match for him.

68. Mere moments after delivering these threats to Ms. Goolden, Defendant Wardak offered Ms. Goolden $3 million to marry him.

69. He then continued to threaten her by stating that he would do everything within his means to ruin Ms. Goolden if she chose not to be with him.

70. Defendant Wardak then told Ms. Goolden that the reason she did not love him was because she had not gotten over her ex-boyfriend.

71. Defendant Wardak disturbingly explained to Ms. Goolden that "a woman has an emotional attachment to a man after they have sex" and that both him and Ms. Goolden needed to keep having sex in order to grow an attachment."

72. Defendant Wardak further explained that Ms. Goolden would not initially like the sex, but they need to keep having sex repeatedly until she grew to like it, and eventually love him.

73. Defendant Wardak then admitted to raping Ms. Goolden.

74. Ms. Goolden was so traumatized and disturbed that the next day, on July 8, she left Miami and returned to her home in New York City.

75. Thereafter, in New York, Defendant Wardak then carried out the majority of his threats upon Ms. Goolden.

76. After Ms. Goolden returned to New York in July 2018, Defendant Wardak began to severely harass, stalk, and defame Ms. Goolden well into 2019; much of this conduct continues to this day, as Defendant Wardak was even arrested recently for violating a Court Order to stay away from Ms. Goolden.

77. Defendant Wardak, with the intention to maliciously harm Ms. Goolden's reputation, told Ms. Goolden's brother, Kevin Goolden, and her friend, Yura Shabetayev, that Ms. Goolden suffered from a drug addiction.

78. Defendant Wardak knew that these statements were false when he made them.

79. With the intention to harm Ms. Goolden, Defendant Wardak then maliciously made false public posts on social media regarding drug addiction, knowing that associates of Ms. Goolden could view them.

80. Defendant Wardak further harassed Ms. Goolden via email on multiple occasions, stating that she had a drug addiction and sending her links to articles that discussed the effects of such addiction.

81. Defendant Wardak also sent Ms. Goolden links to get help for bipolar disorder, a mood disorder that Ms. Goolden never had.

82. He falsely accused Ms. Goolden via text messaging and email of being an escort, a sex trafficker, and a racist.

83. Defendant Wardak also posted a message on his social media page that falsely insinuated Ms. Goolden was sleeping with her lawyer.

84. However, this long-distance harassment was not enough for Defendant Wardak.

85. So, in September 2018, Defendant Wardak obtained an apartment in New York, a few blocks from Ms. Goolden, with the intent to ruin her life and reputation.

86. Defendant Wardak then began to stalk Ms. Goolden and bribe her family members.

87. For example, Defendant Wardak gave Ms. Goolden's father plane tickets, hotel rooms, and other lavish gifts in exchange for Ms. Goolden's father's encouraging of Ms. Goolden to speak with Defendant Wardak.

88. Defendant Wardak also attempted to bribe Ms. Goolden's brother.

89. Due to Defendant Wardak's bribery and harassment, Ms. Goolden's relationship with her father became strained for months.

90. Defendant Wardak threatened to show up at Ms. Goolden's apartment and her father's house.

91. Ms. Golden lived every day in fear that he would arrive at her apartment and physically assault her again.

92. Ms. Goolden became distressed to the extent that she saw a therapist for Defendant Wardak's psychological and emotional abuse, which affected all aspects of her life, including her modeling career.

93. Although Ms. Goolden filed multiple reports against Defendant Wardak from September 2018 to January 2019, blocked his number and multiple email addresses, Defendant Wardak's harassment continues.

94. In May 2019, Defendant Wardak threatened to murder Ms. Goolden's father and sent him multiple death threats.

95. Since Ms. Goolden's sexual assault, Defendant Wardak has delivered almost all of his previous threats, thereby isolating Ms. Goolden from her family, causing severe emotional and psychological trauma, and ruining her reputation and career.

96. To date, Defendant Wardak continues to harass Ms. Goolden through frivolous legal means.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Assault

97. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 96 with the same force as though separately alleged herein.

98. Defendant Wardak intentionally threated to inflict injury on Ms. Goolden.

99. Defendant Wardak, a male individual much larger than his victim, had ability to cause the harm to Ms. Goolden.

100. Defendant Wardak's actions created the apprehension of bodily harm and offensive contact for the victim, Ms. Goolden.

101. Defendant Wardak's actions caused Ms. Goolden damages, including, but not limited to, emotional distress.

102. Defendant Wardak's conduct shows a high degree of moral culpability, which manifests a conscious disregard of the rights of Mr. Goolden and otherwise amounts to conduct so reckless as to amount to such disregard.

**SECOND CAUSE OF ACTION**
**Battery**

103. Plaintiff hereby repeats and incorporates each and every allegation contained in paragraphs 1 through 102 with the same force as though separately alleged herein.

104. Defendant Wardak intentionally applied force to the body of Ms. Goolden by attacking her both physically and sexually.

105. These actions were extremely harmful and offensive to Ms. Goolden.

106. Ms. Goolden did not consent to the applied force to her body.

107. Defendant Wardak's actions caused Ms. Goolden damages, including, but not limited to, physical injury and emotional distress.

108. Defendant Wardak's conduct shows a high degree of moral culpability, which manifests a conscious disregard of the rights of Mr. Goolden and otherwise amounts to conduct so reckless as to amount to such disregard.

**THIRD CAUSE OF ACTION**
**Defamation *Per Se***

109. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein.

110. Defendant made false and defamatory statements of facts regarding Plaintiff, namely, that she was a drug addict, prostitute, sex trafficker, and a racist.

111. Defendant's statements were made with malicious intent and have resulted in injury to Plaintiff by damaging her reputation and business relationships.

112. As a result of Defendant's slander and libel, Plaintiff has suffered substantial damages.

113. Defendant Wardak's conduct shows a high degree of moral culpability, which manifests a conscious disregard of the rights of Mr. Goolden and otherwise amounts to conduct so reckless as to amount to such disregard.

**FOURTH CAUSE OF ACTION**
**Intention Infliction of Emotional Distress**

114. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 113 with the same force as though separately alleged herein.

115. The above-described actions of Defendants are extreme and outrageous and were undertaken with the intent to cause Plaintiff severe emotional distress.

116. Such extreme and outrageous acts did in fact cause Plaintiff severe emotional distress.

117. As a proximate result of extreme and outrageous acts, Plaintiff has experienced pain, suffering, severe emotional distress, mental distress, shame, humiliation, embarrassment and related physical ailments.

118. As a further and proximate result of such conduct, Plaintiff has suffered loss of income, as well as other career opportunities.

119. Defendant's acts alleged herein are malicious, oppressive, fraudulent, despicable, and in conscious disregard of Plaintiff's privacy, dignity and emotional well being. As such, punitive damages are warranted.

120. Defendant Wardak's conduct has a high degree of moral culpability, which manifests a conscious disregard of the rights of Mr. Goolden and otherwise amounts to conduct so reckless as to amount to such disregard.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, compensatory damages not less than $1,000,000, punitive damages, and any other damages to be determined at trial;

B. For the second cause of action, compensatory damages not less than $1,000,000, punitive damages, and any other damages to be determined at trial;

C. For the third cause of action, compensatory damages not less than $1,000,000,

D. For the fourth cause of action, compensatory damages not less than $1,000,000 punitive damages, and any other damages to be determined at trial; and

E. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 5, 2019

By: ______________________

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
381 Park Avenue South, Suite 1220
New York, NY 10016
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*