## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### CASE NO. 19 CV 06257

SARAH GOOLDEN,

     Plaintiff,

v.

HAMED WARDAK,

     Defendant.

_____/

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS, MOTION TO STRIKE IMMATERIAL, IMPERTINENT, AND SCANDALOUS PORTIONS OF PLAINTIFF'S COMPLAINT, AND MOTION TO TRANSFER CASE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

Defendant, Hamed Wardak (Mr. Wardak"), hereby files his Memorandum of Law in Support of his Motion to Dismiss, Motion to Strike Immaterial, Impertinent, and Scandalous Portions of Plaintiff's Complaint, and Motion to Transfer Case to the United States District Court for the Southern District of Florida and states:

### MOTION TO DISMISS

**A.**    <u>**Standard**</u>

"A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Divine Allah v. Goord*, 405 F. Supp. 2d 265, 271 (S.D.N.Y. 2005). "At the motion to dismiss stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test."

Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  This standard of "plausibility" requires that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

**B.    Argument**

**1.    Failure to comply with Rule 8(a)**

Each of the causes of action asserted in Ms. Goolden's Complaint incorporates all of the factual allegations preceding it as well as adopting all of the allegations of each preceding count. This constitutes a "shotgun pleading."  Consequently, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).   As Ms. Goolden has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), her Complaint should be dismissed.

**2.    Failure to state a claim[1]**

Ms. Goolden's conclusory allegations are not sufficient to adequately plead a cause of action for any of her tort claims.  "[R]egardless of the complaint's satisfaction of the generous requirements of Rule 8(a)(2), a Rule 12(b)(6) motion will 'lie to permit each particular defendant

---

[1] Mr. Wardak asserts that this District is the improper venue for the claims brought by Ms. Goolden.  Furthermore, Ms. Goolden is either vague or specifically identifies Florida as the location for the events giving rise to her tort claims.  Therefore, Florida law likely applies to the claims asserted in the Complaint, despite Ms. Goolden's chosen forum and assertion otherwise.  However, in the abundance of caution, Mr. Wardak cites to both New York and Florida law, as Ms. Goolden has failed to state of cause of action for three of her four counts under both jurisdictions.

to eliminate those causes of action as to which no set of facts has been identified that support a claim against him.'" *Silver v. Kuehbeck*, 2005 U.S. Dist. LEXIS 26956, at *20-21 (S.D.N.Y. Nov. 7, 2005) (citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)).

a)  Count I – Assault

"To establish a claim for assault under New York law, a plaintiff must show an intentional placing of another person in fear of imminent harmful or offensive contact." *Silver v. Kuehbeck*, 2005 U.S. Dist. LEXIS 26956, at *39 (S.D.N.Y. Nov. 7, 2005) (citing to *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)) (emphasis in original). "Threats, standing alone, do not constitute an assault." *Id*. "To state a claim for assault in Florida, a plaintiff must establish that the defendant (1) made an intentional, unlawful threat of violence, (2) appeared to have the ability to carry out the threat, and (3) created a well-founded fear in the plaintiff that the violence threatened was imminent." *Henning v. Felty*, No. 6:15-cv-927-Orl-40DCI, 2017 U.S. Dist. LEXIS 125966, at *5 (M.D. Fla. Aug. 9, 2017).

While Ms. Goolden alleges multiple times that she was fearful of or uncomfortable with Mr. Wardak, this is not enough to state a cause of action for assault.  There is nothing connecting any threats made by Mr. Wardak of impending physical harm to Ms. Goolden with her alleged feelings of fear.  The allegations that Mr. Wardak threatened to sue Ms. Goolden, ruin her life, make her look like a con-artist, have her father thrown in jail, have her followed, ruin her reputation, or show up at her house are legally insufficient to state a claim for assault because these statements- even if true- do not place Ms. Goolden in reasonable fear of imminent bodily injury. Furthermore, any alleged threats not made to Ms. Goolden or any alleged fear felt by an individual other than Ms. Goolden, do not constitute assault.

The threats alleged by Ms. Goolden were either (1) not threats of bodily harm; (2) not made to Ms. Goolden, (3) did not suggest imminent harmful contact; or (4) were qualified. None of these alleged comments or threats to Ms. Goolden suggest "imminent" harmful contact, regardless of any alleged fear she felt. Therefore, Ms. Goolden fails to state a cause of action for assault under both New York and Florida law, and this claim should be dismissed.

> b) Count III – Defamation per se

Under New York law, to state a claim for defamation, "a plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotations omitted). "A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Id.* (internal quotations omitted). Similarly, "[t]o state a claim for defamation under Florida law, a plaintiff must allege "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Miller v. Anderson*, No. 11-23800-Civ-COOKE/TUR, 2012 U.S. Dist. LEXIS 75232, at *5-6 (S.D. Fla. May 31, 2012).

Furthermore, Ms. Goolden interchanges the legal term defamation with slander and harassment. "The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001).

Ms. Goolden does not meet any of the pleading requirements for defamation or slander in her Complaint.  First, Ms. Goolden incorporates her counts for assault and battery within her defamation count.  This makes it impossible separate such allegations as Mr. Wardak sending accusatory text messages, emails about personality disorders, and calling Ms. Goolden an "escort, sex trafficker, and a racist" directly to Ms. Goolden in her defamation claim.  The defamation claim as to all statements made directly to Ms. Goolden should be dismissed as these statements are not alleged to have been made to a third-party, an integral element of the tort.

Second, Ms. Goolden fails to specifically identify the actual statements Mr. Wardak allegedly made on social media about drug addiction As these social media posts did not identify her and were not made specifically about Ms. Goolden, it fails on it's face as to the false statement *about* the plaintiff element.  The alleged insinuation Mr. Wardak made that Ms. Goolden was sleeping with her lawyer also fails as defamatory as a matter of law.  "Where a statement or phrase is susceptible of more than one meaning, we will not presume either that the phrase means what the plaintiff asserts it does or that it is factual where it can be understood as an opinion." *Price v. Viking Penguin*, 881 F.2d 1426, 1432 (8th Cir. 1989).  "We do not recognize defamation by implication." *Id.  See also Stepanov v. Dow Jones & Co., Inc.*, 2014 NY Slip Op 3940, ¶ 4, 120 A.D.3d 28, 37-38, 987 N.Y.S.2d 37, 44 (App. Div.) ("To survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference").

In fact, the only false statement even cursorily identified as purportedly made by Mr. Wardak to a third-party about Ms. Goolden is her accusation that he told her brother, Kevin

Goolden, and her friend, Yura Shabetayev, that Ms. Goolden suffered from a drug addiction, presumably while Mr. Wardak still lived in Florida. D.E. 77. There is absolutely no factual allegation that these third-party defendants believed the statements, nor that this statement is somehow connected to the damages she asserts resulted to her reputation or business relationships. D.E. 1 at ¶ 111.

Ms. Goolden utterly fails to adequately identify a specific communication, when or how it was made, and to whom it was communicated. Notwithstanding, the vague allegations she does make fail to satisfy the elements of a defamation claim. Therefore, Ms. Goolden's defamation claim should be dismissed.

c) <u>Count IV – Intentional Infliction of Emotional Distress</u>

Again, it is indisputable that Ms. Goolden's alleged sexual assault and battery claims occurred in Florida. She then asserts all of the assault and battery facts, claims, and counts within her intentional infliction of emotional distress count. It follows that Florida law governs, but Mr. Wardak can rely on authority from either state to demonstrate that Ms. Goolden has failed to state a cause of action. To state a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Silver v. Kuehbeck*, 2005 U.S. Dist. LEXIS 26956, at *22 (S.D.N.Y. Nov. 7, 2005). To state a claim for intentional infliction of emotional distress under Florida law, the plaintiff must allege that: "(1) the wrongdoer's conduct was intentional or reckless; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused

emotional distress; and (4) the emotional distress was severe." *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018).

The law requires that the alleged conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). "The requirements of the rule are rigorous, and difficult to satisfy. . . . Indeed, a plaintiff may recover only if the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lenhoff v. Getty*, 97 Civ. 9458 (LMM), 2000 U.S. Dist. LEXIS 9835, at *23 (S.D.N.Y. July 13, 2000). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Id.*

The facts as alleged by Ms. Goolden, even when taken as true, do not rise to this level as a matter of law. "Moreover, the conduct must not be actionable through the use of more traditional tort remedies, such as defamation or battery." *Wulach v. Bear, Stearns & Co.*, No. 86 Civ. 5644 (MBM), 1988 U.S. Dist. LEXIS 12634, at *14 (S.D.N.Y. Nov. 8, 1988) (*citing Fischer* v. *Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992, 373 N.E.2d 1215, 1217 (1978)). As emphasized by the fact that Ms. Goolden has asserted all of her claims for battery, assault, and defamation per se into her intentional infliction of emotional distress claim, the alleged conduct could be deemed actionable through other tort remedies.

As a matter of law, Ms. Goolden fails to state a claim for intentional infliction of emotional distress, and the claim should be dismissed.

### 3. Improper Venue

In addition to this Motion to Dismiss, Mr. Wardak is also filing a Motion to Transfer this case to the Southern District of Florida, premised, *inter alia*, on a preexisting related case. Notwithstanding Mr. Wardak's several arguments supporting a transfer, venue is not proper in this district, and dismissal is still an appropriate remedy.

> In diversity actions, venue is proper only in:
> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which action may otherwise be brought.

*Int'l Flavors & Fragrances, Inc. v. Van Eeghen Int'l B.V.*, 2006 U.S. Dist. LEXIS 45696, at *17-18 (S.D.N.Y. July 6, 2006). Ms. Goolden contends in her Complaint that venue is appropriate in this district through the second prong, though this contention is directly belied by the detailed factual allegations in her complaint in which she admits the events occurred in Miami, Florida. Cf. [D.E. 1 at ¶ 6], with [D.E. 1 at ¶ 18]. A district is a proper venue for a claim if "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b). "Courts have avoided applying [this language] so broadly as to locate venue in any of the many districts where some part, however small, of an alleged wrong has taken place." *Jones v. Trump*, 919 F. Supp. 583, 587 (D. Conn. 1996).

"[I]n a case of multiple claims, proper venue must be established with respect to each cause of action asserted." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010). "The Court, then, must address whether plaintiff has demonstrated proper venue with respect to each count in the Complaint." *Id.* (internal quotations omitted). In fact, almost all of the events giving rise to the alleged claims in this action arose out of Florida, and on the face of the Complaint it is

clear that no substantial part of the events or omissions giving rise to these claims occurred in New York.

      a)  <u>Count I – Assault.</u>

The only threats of physical bodily harm asserted in the Complaint were allegedly made in Miami Florida.[2] that Mr. Wardak threatened to inflict bodily injury upon her during their arguments while she was visiting him in his home in Miami, Florida. *See* D.E. 1 at ¶ 66. There is no specific allegation that Mr. Wardak made any threat of bodily injury to Ms. Goolden in New York. Any alleged threat that was not specifically identified as having taken place in Florida either did not threaten physical injury, did not cause imminent fear of harm, or was made to an individual other than Ms. Goolden. Therefore, the only substantial part of the events giving rise to Ms. Goolden's alleged assault claims occurred in Florida, and New York is not an appropriate venue.

      b)  <u>Count II- Battery</u>

The second claim Ms. Goolden brings against Mr. Wardak is battery. Every allegation in the Complaint asserting actual physical contact between Mr. Wardak and Ms. Goolden occurred in Miami, Florida. See D.E. 1 at ¶¶ 18-19, 24, 32, 51-55, 74, 103. There is not one allegation that Mr. Wardak ever touched Ms. Goolden in the state of New York, and therefore there is absolutely no basis to establish proper venue in this district on the battery claim.

      c)  <u>Count III – Defamation Per Se</u>

First, Ms. Goolden fails to properly state a cause of action for defamation.[3] But for purposes of determining proper venue, it is important to note that Ms. Goolden's defamation claims are prohibitively vague as to the location where the statements were made, received, or

---

[2] *See* argument, *supra*, that Plaintiff fails to state a cause of action for assault.
[3] *See* argument, *supra*, that Plaintiff fails to state a cause of action for defamation per se.

where they made an impact.  Therefore, it is impossible to establish that New York is an appropriate venue.

Specifically, Ms. Goolden casually lumps her causes of action together stating that in July 2018, Mr. Wardak began to "harass, stalk[,] and defame Ms. Goolden."  D.E. 1 at ¶ 76.  She then describes alleged 'harassment' to include making knowingly false statements to Ms. Goolden's brother and friend, posting public posts on social media, and sending emails and text messages directly to Ms. Goolden.  D.E. at ¶¶ 77-83.  Then, after multiple paragraphs intermingling defamation allegations with allegations of harassment, Ms. Goolden asserts that "this long-distance harassment was not enough for Defendant" and that "in September 2018 Defendant Wardak obtained an apartment in New York" where he "then began to stalk Ms. Goolden and bribe her family members."  D.E. 1 at ¶¶ 84-86.  There are no defamation claims alleged to have occurred after Mr. Wardak moved to New York.  There is nothing within the Complaint- even construing all of the factual allegations as true- indicating that a 'substantial part of the events' giving rise to the defamation claims occurred in New York.  Conversely, given Ms. Goolden's admission that the alleged assault and battery occurred in Miami and that Mr. Wardak allegedly made defamatory statements as part of his "long-distance harassment" between June and September while he still lived in Miami, there are facts sufficient to establish venue in Florida.

The "plaintiff bears the burden of proving that venue is proper in the forum state." *Saferstein v. Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 735 (S.D.N.Y. 1996).  Based on the allegations in the Complaint, Ms. Goolden fails to meet this burden. Venue is not proper in this district on the defamation claim.

d)  Count IV – Intentional Infliction of Emotional Distress

Ms. Goolden incorporates all of her allegations, including the three preceding counts, into her intentional infliction of emotional distress count.  D.E. 1 at ¶ 114.  This has the practical effect of bringing in the venue allegations of the assault and battery claims (both definitively establishing venue to be appropriate in Florida) as well as the venue allegations of the defamation claim (failing to establish New York as an appropriate venue) into her intentional infliction of emotional distress claim.  Though Ms. Goolden fails to properly state a cause of action for intentional infliction of emotional distress,[4] what she does assert fails to establish a that substantial part of the events giving rise to Ms. Goolden's alleged intentional infliction of emotional distress claims occurred in New York, citing only that Mr. Wardak had been engaged "long-distance harassment" from Florida, but then moved to New York where his "harassment continues."  [D.E. 1 at ¶¶ 84-85 and 93].

In light of the allegations in the Complaint as a whole, particularly as they relate to an intentional infliction of emotional distress claim, venue is not appropriate in this district.

## MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(F).

In Paragraph 1 of the Complaint, Ms. Goolden describes Mr. Wardak as a "merciless individual . . . who knows no bounds and has followed and attacked other women."  In Paragraph 10 of the Complaint, Ms. Goolden further alleges that Mr. Wardak "has a long, documented history of stalking and attacking woman."  *See* D.E. 1 at ¶¶ 1 and 10.  Both of these matters should be stricken from the Complaint, as they solely serve as an attack on Mr. Wardak's character and are immaterial, impertinent, and scandalous.

---

[4] *See* argument, *supra*, that Plaintiff fails to state a cause of action for intentional infliction of emotional distress.

Pursuant to Fed. R. Civ. P. 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." 'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005). "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, No. 04-CV-9413, 2006 U.S. Dist. LEXIS 7385, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006).

### a. The Matters are Immaterial and Impertinent

Motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (internal citations omitted). A Rule 12(f) motion to strike matter as impertinent or immaterial should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (emphasis added). Thus, "to prevail on a Rule 12(f) motion to strike, the movant must show (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (internal citations omitted).

First, these assertions about Mr. Wardak's character and alleged past wrongs are utterly false. Notwithstanding, even if they were true, the matters referenced in Paragraphs 1 and 10 of the Complaint are still wholly immaterial and impertinent. No evidence to support these

allegations would be admissible at trial, these allegations have no bearing on the issues raised in the Complaint, and allowing the allegations to stand would result in prejudice to Mr. Wardak.

Character evidence is explicitly inadmissible evidence. Pursuant to Federal Rules of Evidence Rule 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Furthermore, allegations of past wrongs is also explicitly prohibited. Pursuant to Federal Rules of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Complaint does not set forth a cause of action that is at all impacted by Ms. Goolden's assertion that Mr. Wardak has allegedly stalked or attacked other women or that Mr. Wardak is "merciless" and "knows no bounds." These statements are offered solely as an attack on his character and to imply conformity in the instant case with alleged prior bad acts. As such, any evidence supporting these matters would be *per se* inadmissible.

Not only are these matters irrelevant and inadmissible, but they are prejudicial to Mr. Wardak. Given the particular sensitive nature of the allegations- that Mr. Wardak sexually assaulted Ms. Goolden- any indication that Mr. Wardak has an alleged history of attacking or raping women has a high likelihood of eliciting an emotional response from a jury. Mr. Wardak would be greatly prejudiced if this matter is determined not on the merits of the case, but on an unfair judgment that he is a "bad person." Furthermore, given the pretrial publicity campaign Ms. Goolden has already engaged in, allowing these matters to remain in the Complaint unfairly prejudice Mr. Wardak because news outlets will likely continue to republish the allegations to the public, further prejudicing Mr. Wardak in this case. *See* Affidavit of Alexis Fields at ¶ 7 and

Exhibit D for the online commentary of people from the community who have read bout Ms. Goolden's accusations.

The allegation that Mr. Wardak is a "merciless individual . . . who knows no bounds and has followed and attacked other women" in Paragraph 1 of the Complaint and the allegation that Mr. Wardak "has a long, documented history of stalking and attacking woman" in Paragraph 10 of the Complaint are both immaterial and impertinent. They may not be supported by any admissible evidence, they have no bearing on the issues in this case, and allowing them to remain in the Complaint would be prejudicial. As such, they should be stricken.

### b. The Matters are Scandalous

Not only are these matters immaterial and impertinent, but they are also scandalous. "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 67 (E.D.N.Y. 2011) (quoting 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011)). The nature of the matters asserted in these statements are exactly the types of matters contemplated by the rule for striking scandalous matter. Because the allegations attack Mr. Wardak's character and are scandalous by the commonly understood meaning, they should be stricken for this additional basis.

"A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, No. 04-CV-9413, 2006 U.S. Dist. LEXIS 7385, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006). Courts will strike matters from a pleading which unfairly impugn a party's character. *See Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 617-18 (1st Cir. 1988)

(affirming the district court's decision to strike "repugnant" terms in a complaint that were aimed to impugn the defendant's character and "superfluous descriptions and not substantive elements of the cause of action. As such, they have no place in pleadings before the court").

Black's Law Dictionary defines scandalous as a "matter that is both grossly disgraceful (or defamatory) and irrelevant to the action or defense." Black's Law Dictionary 1372 (8th ed. 2004). The Oxford English Dictionary defines scandalous as, among other things, 'grossly disgraceful.' Oxford English Dictionary 575 (2d ed. 2001). Other dictionaries offer similar definitions. *See, e.g.*, Webster's New World College Dictionary 1279 (4th ed. 2005) ("offensive to a sense of decency or shocking to the moral feelings of the Community; shameful"). "Under ordinary usage, then, matter is 'scandalous' if it disgraceful, offensive, shameful and the like." *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 432 (9th Cir. 2011) (finding allegations of sexual assault against a priest to be scandalous under its commonly understood meaning).

The statements made in Paragraphs 1 and 10 are per se scandalous. They serve no purpose other than to impugn Mr. Wardak's character and are inflammatory (if not outright defamatory) in nature. Therefore, these allegations should be stricken from Ms. Goolden's Complaint.

### MOTION TO TRANSFER CASE TO THE UNITED STATES DISTRICT FOR THE SOUTHERN DISTRICT OF FLORIDA

Defendant, Hamed Wardak (Mr. Wardak"), pursuant to 28 U.S.C. § 1404, moves to transfer this case to the United States District Court for the Southern District of Florida. The Defendant states as follows:

### Introduction

Mr. Wardak first filed a lawsuit against the Plaintiff ("Ms. Goolden") in state court in Miami-Dade County, Florida, in the case *Hamed Wardak v. Sarah Goolden*, Case No. 2019-CA-

002220 (the "Pending Florida Case"), on January 23 2019.  *See* Affidavit of Alexis Fields at ¶ 4. Then on September 27, 2019, Mr. Wardak amended his pleading.  *See* Affidavit of Alexis Fields at ¶ 5.

In his lawsuit, Mr. Wardak alleges that the Florida state court had jurisdiction and was the proper venue because all of the actions giving rise to his claims occurred in Miami-Dade County. *See* Exhibit A at ¶¶ 4-5 and Exhibit B at ¶¶ 5-8.  The underlying claims against Ms. Goolden in the Pending Florida Case stem from her intentional fraudulent scheme implement a systematic, ongoing course of conduct with intent to defraud Mr. Wardak, subsequent cover-up attempts, and defamation.

Ms. Goolden removed the Pending Florida Case to federal court in the United States Southern District of Florida, as *Hamed Wardak v. Sarah Goolden*, Case No. 19-CV-21121, alleging diversity jurisdiction as the basis.  Ms. Goolden filed a motion to dismiss which was granted with Mr. Wardak having leave to amend.  Though it has been pending for more than ten months, due to various pre-Answer motions, Ms. Goolden has not yet filed an Answer or asserted any affirmative defenses or other claims within the Pending Florida Case.

Notwithstanding, rather than waiting for the procedurally appropriate time to assert her claims, Ms. Goolden filed the instant action against Mr. Wardak with this Court July 5, 2019 while there were pre-Answer motions pending.  The allegations made by Ms. Goolden in the instant case are directly responsive to claims made by Mr. Wardak in the Pending Florida Case.

The signature block on the complaint shows that Ms. Goolden is represented by the same counsel and law firm who represent her in the Pending Florida Case.  *See* Affidavit of Alexis Fields at Exhibit A.  Though Ms. Goolden asserts that the events giving rise to the claims occurred within the district of the Southern District of New York, this contention is directly belied by the detailed

factual allegations in her complaint in which she admits the events occurred in Miami, Florida. Cf. [D.E. 1 at ¶ 6], with [D.E. 1 at ¶ 18].  On its face, the allegations of assault and battery asserted by Ms. Goolden arise from the same facts and circumstances asserted by Mr. Wardak in the Pending Florida Case, specifically occurring the 4th of July weekend of 2018 during which Mr. Wardak and Ms. Goolden got engaged in Miami, Florida.

Ms. Goolden is a journalism major at Columbia University.  After filing the instant claim, but before even effectuating service on Mr. Wardak, Ms. Goolden engaged in a pretrial publicity campaign against Mr. Wardak in the state of New York, apparently giving a personal interview to the New York Post.  *See* Affidavit of Alexis Fields at ¶ 6.  Several other publications subsequently ran the New York Post Story, which has resulted in online commentators engaging in diatribes about Mr. Wardak's race, appearance, and the truth or falsity of the allegations in the underlying suit.  *See* Affidavit of Alexis Fields at ¶ 7.

The stories highlight that Mr. Wardak is the wealthy son of a former Defense Minister of Afghanistan and come amidst the relevant social backdrop known as the "MeToo Movement."  All of the stories either completely omit or downplay the fraud and defamation allegations against Ms. Goolden that were filed seven months prior to her claims of sexual assault.  The New York Post article quotes counsel for Ms. Goolden, Bruce Harman, as stating, "Wardak is a sick person … and he needs to be stopped."  *See* Affidavit of Alexis Fields at Exhibit C.

In truth, the claims in the instant case are effectively counterclaims to the contentions brought by Mr. Wardak in the Pending Florida Case, and both cases should be heard in concert in the Southern District of Florida, where the alleged events took place.  If this Motion to Transfer is granted, Mr. Wardak intends to move to consolidate this case with the Pending Florida Case.  *See* Affidavit of Alexis Fields at ¶ 8.  Further, based on the pretrial publicity campaign championed by

Ms. Goolden, Mr. Wardak would not get a fair trial in the state of New York, and therefore this case should be transferred on this additional basis.

### Argument

**1. This case should be transferred to the Southern District of Florida because of the preexisting Pending Florida Case.**

    **a. Transfer will avoid duplicative litigation.**

"The court should not countenance the simultaneous litigation of essentially identical claims in two federal courts." *Coleman Co. v. Black & Decker Corp.*, No. 95 C 7379, 1996 U.S. Dist. LEXIS 986, at *13 (N.D. Ill. Jan. 29, 1996). Federal courts have "an interest in preventing litigants from circumventing procedural rules to gain an unfair advantage." *Roca Labs, Inc. v. Century Scis., LLC*, 2014 U.S. Dist. LEXIS 189308, No. 14-60123-CIV-ALTONAGA, at *7 (S.D. Fla. June 16, 2014) (citing *Greene v. H&R Block E. Enters., Inc.*, 727 F.Supp.2d 1363, 1367 (S.D. Fla. 2010); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007)). And federal courts "have an interest in conserving judicial resources." *Roca Labs, Inc.*, 2014 U.S. Dist. LEXIS at *7 (citing *Greene*, 727 F.Supp.2d at 1367; *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011)). To determine whether a later-filed suit is "duplicative," courts "examine whether the two proceedings involve the same (1) parties or their privies and (2) transactions or series of transactions." *Roca Labs, Inc. v. Century Scis., LLC*, 2014 U.S. Dist. LEXIS 189308, No. 14-60123-CIV-ALTONAGA, at *8 (S.D. Fla. June 16, 2014) (internal citations omitted).

Here, the parties are obviously the same: Ms. Goolden and Mr. Wardak. And the claims arise from the same purported acts that occurred in Florida during the same exact holiday weekend. Ms. Goolden is attempting to circumvent procedural rules in order to gain an unfair advantage stemming from her ability to litigate this matter on multiple fronts and by way of the media circus she has turned this matter into by virtue of the discussion in the New York Post Story. What's

more, allowing her to manipulate the court system in this manner would go directly against this Court's interest in conserving judicial resources.  As a result, Ms. Goolden's behavior should not be countenanced and this case should be transferred to the Southern District of Florida.

**b.  Transfer will serve the interests of justice**

Ms. Goolden admits in the complaint that the acts giving rise to her cause of action took place, if at all, in Miami-Dade County, Florida.  D.E. 1 at ¶ 18.  The Pending Florida Case is already currently pending in a forum connected to the witnesses and documents relating to the claim.

"The interests of justice concern the efficient functioning of the courts. The court does not consider the private interests of the parties." *Coleman Co. v. Black & Decker Corp.*, No. 95 C 7379, 1996 U.S. Dist. LEXIS 986, at *15-16 (N.D. Ill. Jan. 29, 1996).  "In weighing the interests of justice, the court considers the possibility of consolidation with related litigation." *Id.* (*citing Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir. 1986) ("related litigation should be transferred to a forum where consolidation is feasible")).  The court in *Kuliga v. Mass Mut. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 193773, No. 13-81270-CIV-RYSKAMP/HOPKINS, at * 12-13 (S.D. Fla. 2014) explained the interest of justice in transferring a case:

> The seventh factor enumerated in Ott—the public interest—as well as the interests of justice, judicial economy, and "the other practical problems that make trial of the case easy, expeditious, and inexpensive" strongly favor transfer to New Jersey. *Meterlogic*, 185 F. Supp. 2d at 1300. Related litigation in the transferee court is an important factor in finding that the interests of justice warrant transfer to another district. *See id*. at 1303 ("[t]o allow this case and the Missouri litigation to proceed simultaneously would contravene the policy of statutory transfer, which is to avoid duplicative litigation, inconvenience, and unnecessary expenses."); *Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1202 (S.D. Fla. 1987) (finding the interest of justice favored transfer to Central District of California where four related cases were pending).

(The *Meterlogic* case short-cited therein is *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F.Supp.2d 1292, 1299 (S.D. Fla. 2002), in which the court applies 28 U.S.C. § 1404.)

The only question is where the case should be consolidated. Where there is an "absence of connections" between a controversy and the court in which it is brought, "including the fact that all the witnesses and documents relating to the claims alleged in the" complaint are "located in" another state, the "interest of justice" requires the court to "transfer" the claims to a relevant court in which another action "is pending." *See Dillworth v. Rohalmin (In re Rohalmin)*, 598 B.R. 900 (Bankr. S.D. Fla. 2019). *See also Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 973 (11th Cir. 2012); 28 U.S.C. § 1412. This requirement exists in part because it "is in the interest of justice to transfer a case to a jurisdiction with pending, related litigation involving the same parties where such transfer will result in more efficient pretrial discovery, the avoidance of duplicative litigation and inconsistent results, and will also save time and money for the parties." *Daoud Inv. Holdings, Inc. v. Cole*, 2015 U.S. Dist. LEXIS 187358, No. 15-62014-CIV-COHN/SELTZER, at * 6 (S.D. Fla. Oct. 30, 2015) (internal quotations omitted). *See also Kuliga v. Mass Mut. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 193773, No. 13-81270-CIV-RYSKAMP/HOPKINS, at * 12-13 (S.D. Fla. 2014); *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F.Supp.2d 1292, 1299 (S.D. Fla. 2002).

In the interest of justice, this case should be transferred and consolidated with the Pending Florida Case. The litigation is inexorably related to the Pending Florida Case, involving the same facts, circumstances, parties, witnesses, location, and weekend. All of the purchases and fraudulently obtained wire transfers asserted by Mr. Wardak in the Pending Florida Case occurred in Miami-Dade, Florida, and all of the defamatory statements are alleged to have been made in Florida, to a person in Florida, or had the greatest impact in Florida. Therefore Mr. Wardak reasonably anticipates having to gather records from businesses located in Florida and calling

third-party witnesses residing in Florida.  Furthermore, even Ms. Goolden's assault allegations are alleged to have occurred in Miami-Dade County.  The practical problems of trying the case in New York are self-evident, in light of the claims' nexus with Miami, Florida.  For these reasons, in the interest of justice, this case should be transferred and ultimately consolidated with the Pending Florida Case.

### 2. This case should be transferred because venue is not proper in the Southern District of New York

"Moreover, this forum does not bear a reasonable relationship to the events that form the basis of the action." *Coleman Co. v. Black & Decker Corp.*, No. 95 C 7379, 1996 U.S. Dist. LEXIS 986, at *15 (N.D. Ill. Jan. 29, 1996).  "the chosen forum lacks significant connection with the case. Accordingly, for purposes of a motion to transfer venue, the court simply weighs and considers the chosen forum with other factors." *Id*.  And in so considering the chosen forum, the court may only examine "'the events that directly give rise to'" the claim.  *Bennett Eng'g Group, Inc. v. Ashe Indus.*, 2011 U.S. Dist. LEXIS 30043, 2011 WL 836988, No. 6:10-cv-1697-Orl-28GJK, at (M.D. Fla. Mar. 8, 2011) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

Nothing about this case bears a reasonable relationship to this forum, apart from the fact that Ms. Goolden would prefer to litigate in a well that she has poisoned.  The events that form the cause of action occurred, if at all, in Miami-Dade County, Florida.  This forum lacks a de minimis connection to this case, let alone a significant connection.  Especially in consideration of the events that directly give rise to the claim, it is apparent that venue is improper in this forum, because those events, over the course of that weekend, occurred in Miami-Dade County, Florida.

### 3. This case should be transferred because of Ms. Goolden's improper pretrial publicity campaign

"[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 1522 (1966). "Although most cases involving the assessment of the impact of pre-trial publicity are not civil actions but, rather, criminal cases and petitions seeking habeas relief, there is a constitutional right to a fair trial in the non-criminal context." *Nat'l Fuel Gas Co. v. U.S. Energy Sav. Corp.*, No. 07-CV-440A(F), 2008 U.S. Dist. LEXIS 46038, at *14-15 (W.D.N.Y. June 11, 2008) (quoting *Koch v. Koch Industries, Inc.*, 2 F.Supp.2d 1409, 1412 (D.Kan. 1998) (internal quotations omitted). *See also Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996) (quoting *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) for the proposition that there "is a constitutional right to a fair trial in a civil case"). This fairness includes the right to a trial in which any verdict or judgment would be untainted by pretrial publicity. *See Powers v. McGuigan*, 769 F.2d 72, 76 (2d Cir. 1985) (requiring the demonstration of a nexus between pretrial publicity and the claimed unfairness of a trial).

A potential connection between fundamental fairness and pretrial publicity is even entombed in the Code of Professional Responsibility, which prohibits a lawyer in a civil matter from making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in that matter. *Doe v. Zeder*, 5 Misc. 3d 574, 579, 782 N.Y.S.2d 349, 353 (Sup. Ct. 2004). The statement made by Ms. Goolden's attorney, "Wardak is a sick person … and he needs to be stopped" qualifies as such an extrajudicial statement.

"Courts also have authority to issue a civil 'gag' order where the party protesting pretrial publicity demonstrates a 'reasonable likelihood' that media attention or extrajudicial commentary will prejudice a fair trial." *Nat'l Fuel Gas Co. v. U.S. Energy Sav. Corp.*, No. 07-CV-440A(F), 2008 U.S. Dist. LEXIS 46038, at *14-15 (W.D.N.Y. June 11, 2008) (citing *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969)). And while a gag order is possible, it may not be sufficient in this case because the damage has already been done.

Ms. Goolden, as a journalism major at Columbia University, knew what she was doing. Ms. Goolden's immediate pretrial publicity campaign against Mr. Wardak in the state of New York has already resulted in polemics regarding Mr. Wardak's race, appearance, and the truth or falsity of the allegations in the underlying suit. Ms. Goolden's attachment to the #MeToo movement and courting of racial and cultural atavism will prevent Mr. Wardak from receiving a fair trial in this forum- regardless of whether a gag order is issued after the fact because the New York Post Story has already been published. The remedy that makes the most sense, and is in line with the underlying facts of the case, would be to transfer the case to the court in the Pending Florida Case.

### 4.  In the alternative, this case should be dismissed.

As argued above, Mr. Wardak has included improper venue as a basis for dismissal. Should this Court be disinclined to transfer this case to the court in the Pending Florida Case, this case should be dismissed. A district court has discretion to dismiss a lawsuit for improper venue. *See Duenas v. Wells Fargo Bank, N.A.*, 705 Fed. Appx. 837, 838 (11th Cir. 2017). This discretion is abused where a court "fails to apply the proper legal standard or to follow proper procedures in making the determination, or makes findings of fact" that are clearly erroneous. *Heffner v. Blue Cross & Blue Shield of Al., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (internal quotations

omitted).  And this discretion exists even where the court also has the discretion to transfer the case, as an alternative to dismissal.  *Amerisure Ins. Co. v. Auchter Co.*, 2016 U.S. Dist. LEXIS 195354, 2016 WL 9506024, No. 1:15cv235-MW/GRJ, at * 8-9 (N.D. Fla. Apr. 4, 2016) (reasoning, "At its discretion, a district court may either transfer or dismiss an action for improper venue").

Dismissal in this instance would not be the result of a failure to apply the proper legal standard or to follow proper procedures. The state of the case as described herein and alleged in the complaint demonstrates the issues as applied against the correct legal standard, and this motion is a proper vehicle to move to dismiss for improper venue, given that no forum-selection clause in a contract guides the venue analysis herein.  Any finding of fact would be in harmony with the facts, which are simple: all acts, occurrences, or omissions, if any, occurred outside of the venue of this forum. As an alternative to transferring this matter to the court in the Pending Florida Case, this Court may dismiss the action for improper venue.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 15th day of October, 2019.

> **KOPELOWITZ OSTROW**
> **FERGUSON WEISELBERG GILBERT**
> *Attorneys for Plaintiff*
> One West Las Olas Blvd., Suite 500
> Ft. Lauderdale, Florida 33301
> Telephone No.: (954) 525-4100
> Facsimile No.: (954) 525-4300
>
> By:___*/s/ Alexis Fields*_____
> ALEXIS FIELDS
> Florida Bar Number:  95953
> Fields@kolawyers.com