UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH GOOLDEN,

                              Plaintiff,

            -v-

HAMED WARDAK,

                              Defendant.

19-CV-6257 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this action, Plaintiff Sarah Goolden sues her ex-fiancé Hamed Wardak for assault,
battery, intentional infliction of emotional distress, and defamation *per se*.  (Dkt. No. 1
("Compl.").)  Wardak moves to dismiss Goolden's claims, and, in the alternative, to transfer the
case to the Southern District of Florida.  (Dkt. No. 13.)  Wardak also moves to strike portions of
Goolden's complaint.  (*Id.*)  Goolden opposes the motions and, in the alternative, seeks leave to
amend the complaint.  (Dkt. No. 19 at 21.)  For the reasons that follow, the motion to dismiss is
granted in part and denied in part, the motion to transfer and the motion to strike are denied, and
Goolden is granted leave to amend.

I.      **Background**

The following facts are drawn from the complaint and are presumed true for the purpose
of these motions.

Plaintiff Sarah Goolden, a resident of New York, "is a working model and student."
(Compl. ¶¶ 8, 11.)  At the time she filed suit, she was "in her late 20s."  (Compl. ¶ 11.)
Defendant Hamed Wardak "is a resident of . . . Puerto Rico."  (Compl. ¶ 9.)  He also has a
residence in New York, "a few blocks from Ms. Goolden."  (Compl. ¶ 85.)  He is a
"multi-millionaire" with, Goolden alleges, a "long, documented history of stalking and attacking
wom[e]n."  (Compl. ¶ 10.)

Goolden and Wardak met in 2010.  (Compl. ¶ 12.)  During their friendship, Wardak would buy Goolden gifts, at first claiming that "he purchased [them] 'as a friend' and that there were 'no strings attached.'"  (Compl. ¶¶ 14, 15.)  In 2018, however, Wardak began "pressur[ing] . . . Goolden into a romantic relationship."  (Compl. ¶ 13.)  Goolden succumbed, agreeing to "forge a closer relationship" with Wardak.  (Compl. ¶ 17.)  Things took a turn for the worse, though, when Goolden traveled to Miami to attend Wardak's Fourth of July party.  (Compl. ¶ 18.)  There, the day after the party, Wardak accused Goolden of sleeping with one of her friends who had accompanied her on the trip.  (Compl. ¶ 20.)  Wardak threatened Goolden and her friend, then left to go to a nightclub.  (Compl. ¶ 21.)  Fearful of being alone in Wardak's room when he returned, Goolden slept with her friends in Wardak's guest room.  (Compl. ¶ 22.)

Early the next morning, Goolden awoke to "Wardak screaming and pulling her by her hair."  (Compl. ¶ 23.)  Wardak "forcibly pulled . . . Goolden out of bed," "carried her to his bedroom," and "threw her onto his bed."  (Compl. ¶ 24.)  He resumed the argument from the night before, while "throwing glasses and plates at her" and threatening to "ruin her life if she did not stay with him and agree to do what he wanted."  (Compl. ¶¶ 25, 26.)  Goolden and her friends tried to leave, but — "having no other place to stay at 5:00 a.m." and in light of Wardak's promise to calm down (Compl. ¶¶ 30–31) — they decided to stay.  (Compl. ¶¶ 30–31.)  After a few hours of sleep, Goolden awoke to Wardak lying on top of her (Compl. ¶ 32), "demand[ing]" that they "work things out."  (Compl. ¶ 33.)

Later that day, "Wardak treated . . . Goolden, her friends, and his entourage to food and drinks."  (Compl. ¶ 35.)  During the course of the dinner and drinks, Wardak proposed [to] Goolden in front" of everyone.  (Compl. ¶ 38.)  Because of the "public[] pressure[]" and her fear that "Wardak would retaliate by physically assaulting her if she declined" (Compl. ¶ 39),

Goolden accepted his proposal.  Shortly thereafter, Goolden tried to explain to Wardak that she "could not go through with the marriage" (Compl. ¶ 41), but he brushed her off (Compl. ¶ 42). Later that evening, Wardak began to voice his displeasure with Goolden for her lack of affection for him.  (Compl. ¶¶ 45, 46.)  Although Goolden tried to sleep, Wardak demanded that she "make love to" him.  (Compl. ¶ 50.)  Goolden alleges that Wardak then "climbed on top of" her and "sexually assaulted" her (Compl. ¶¶ 51, 53), despite Goolden "loudly cr[ying]" and "repeatedly beg[ing] him to stop" during the course of the attack.  (Compl. ¶¶ 54, 55.)

The next morning, Goolden told Wardak "that what happened last night 'was not okay'" (Compl. ¶ 59) and that she "wanted nothing to do with him and did not want to be engaged." (Compl. ¶ 60.)  This led to another argument, resulting in Goolden and one of her friends leaving.  (Compl. ¶ 61.)  Another friend forgot something at Wardak's residence, but Wardak refused to permit her to retrieve her belongings.  (*Id.*)  Goolden returned to Wardak's home to help her friend retriever her belongings and was met by Wardak threatening to "sue her and force her into bankruptcy with legal fees, murder her and her entire family, tap her phones, and have her followed and watched."  (Compl. ¶¶ 65, 66.)  Wardak also allegedly admitted to raping her. (Compl. ¶ 73).  Goolden, feeling "traumatized and disturbed," left for New York.  (Compl. ¶ 74.)

Upon her return to New York, "Wardak began to severely harass, stalk, and defame [her]."  (Compl. ¶ 76.)  Wardak allegedly told Goolden's family and friends that she "suffered from a drug addiction" (Compl. ¶ 77), even though he knew she did not (Compl. ¶ 78), and would make "public posts on social media regarding drug addiction, knowing that associates of Ms. Goolden could view them."  (Compl. ¶ 79.)  He also "accused [her] via text messaging and email of being an escort, a sex trafficker, and a racist" (Compl. ¶ 82), and "posted a message on his social media page that falsely insinuated [she] was sleeping with her lawyer" (Compl. ¶ 83).

In September of 2018, Wardak moved into a New York apartment "a few blocks from Ms. Goolden." (Compl. ¶ 85.) He began "stalk[ing] Ms. Goolden and brib[ing] her family members" (Compl. ¶ 86) in the hope that they would encourage Goolden to make amends with Wardak (*see* Compl. ¶ 87). Goolden became so distraught that she began seeing a therapist. (Compl. ¶ 92.) To date, Goolden has filed multiple reports against Wardak and has blocked his number and multiple email addresses. (Compl. ¶ 93.) But, she claims, the "harassment continues." (*Id.*) As a result, Goolden alleges she has been "isolate[ed] . . . from her family, . . . [has suffered] severe emotional and psychological trauma," and has had her "reputation and career" ruined. (Compl. ¶ 95.)

On January 23, 2019, Wardak sued Goolden in Florida state court, alleging fraud and defamation. (Dkt. No. 13 at 15–16.) After removing the case to federal court (Dkt. No. 13 at 16), Goolden filed a motion to dismiss and, in the alternative, a motion to transfer the case to this district (Dkt. No. 19 at 19). That case was voluntarily dismissed in May 2020. *See Wardak v. Goolden*, No. 19 Civ. 21121 (S.D. Fla.), Dkt. No. 105.

On July 5, 2019, Goolden sued Wardak in this district, alleging assault, battery, intentional infliction of emotional distress, and defamation *per se*. (Compl. ¶¶ 2–4.) Wardak has moved to dismiss for failure to meet Federal Rule of Civil Procedure 8(a)'s pleading requirements and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 13 at 2.) Wardak also moves to dismiss for improper venue, presumably pursuant to Federal Rule of Civil Procedure 12(b)(3). (Dkt. No. 13 at 8.)[1] In the alternative, Wardak moves

---

[1] Under Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, "all motions shall include . . . [a] notice of motion . . . which shall specify the applicable rules or statutes pursuant to which the motion is brought." Here, Wardak's notice of motion makes no mention of Rule 12(b)(3). (Dkt. No. 12.) But the Second Circuit has indicated that "[a] district court has broad discretion to determine whether to

to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 13.)  Wardak also moves to strike portions of Goolden's complaint pursuant to Federal Rule of Civil Procedure 12(f).  (*Id.*)  Goolden opposes the motions and, in the alternative, seeks leave to amend the complaint.  (Dkt. No. 19 at 21.)

## II.   Legal Standard

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper."  *Cartier v. Micha, Inc.*, No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr 20, 2007).  If the court declines to hold an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue."  *Gulf Ins. Co v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alteration omitted) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).  "In analyzing whether the plaintiff has met this burden, courts must 'view all the facts in a light most favorable to [the] plaintiff.'"  *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725, 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)).  Further "in a case of multiple claims, proper venue must be established with respect to each cause of action asserted."  *Nelson v. Wells Fargo, N.A.*, 17-CV-4045, 2019 WL 2514229, at *6 (S.D.N.Y. June 18, 2019) (quoting *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).  Because the substance of the accompanying memorandum of law "allow[s] the Court to consider [the] proposed motion," the Court overlooks Wardak's noncompliance with Local Rule 7.1.  *Gigantino v. Turner Constr. Co.*, No. 14-CV-3619, 2016 WL 5107062, at *1 n.1 (S.D.N.Y. Sept. 19, 2016).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all of the allegations in the complaint

are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citation and footnote omitted).  In

assessing a Rule 12(b)(6) motion, "[c]ourt[s] must . . . 'draw . . . all inferences in the plaintiff's

favor."  *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013)

(quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).

## III.   Discussion

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  Plaintiff is a

citizen of New York; Defendant is a citizen of Puerto Rico; and the matter in controversy

exceeds $75,000, exclusive of interest and costs.

Wardak challenges Goolden's tort claims on various grounds.[2]  Each set of Goolden's

claims is discussed in turn.

---

[2] Resolution of some of these issues occasions a choice-of-law analysis.  This Court sits in New York and therefore applies New York choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The "first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y. 1993)).  "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam).

Although Wardak contends that Florida law should apply because some of the alleged torts took place in Florida (Dkt. No. 13 at 2), Wardak does not identify any relevant conflict between the tort law of Florida and that of New York.  The Court similarly perceives no conflict.  Accordingly, the Court applies New York law.

A.      **Improper Venue**

At the outset, the Court addresses Wardak's argument that venue is improper in the

Southern District of New York.  (Dkt. No. 13 at 8.)  Under 28 U.S.C. § 1391, venue is proper in

any judicial district in which a "substantial part of the events or omissions giving rise to the

claim occurred."  28 U.S.C. § 1391.

Wardak contends that venue is improper because "almost all of the events giving rise to

the alleged claims in this action arose out of Florida, and on the face of the Complaint it is clear

that no substantial part of the events or omissions giving rise to these claims occurred in New

York."  (Dkt. No 13 at 8–9.)  Goolden counters that "a substantial part of the claims arose in

New York" because "[t]he claims arise out of [Goolden and Wardak's] relationship, which began

and evolved in New York City; attacks in Florida during a vacation; and Defendant's defamation

and stalking of Plaintiff in New York City."  (Dkt. 19 at 12.)  Further, Goolden asks the Court to

apply the doctrine of pendent venue to any claims for which venue would otherwise be improper.

(*See id.*)  The venue analysis is performed claim by claim.

1.      **Intentional Infliction of Emotional Distress and Defamation**

Goolden has adequately alleged that a substantial part of the events giving rise to the

intentional infliction of emotional distress and defamation claims occurred in this District.

Specifically, Goolden avers that Wardak's harassment, stalking, and defamation all began after

her return to New York in July 2018.  (Compl. ¶ 76.)  Further, Wardak's harassment of Goolden

escalated after he moved to New York.  (Compl. ¶ 85.)  "'[V]iew[ing] all the facts in a light most

favorable to" Goolden, *Peerless Network, Inc.*, 2018 WL 1478047, at *2 (quoting *Phillips*, 494

F.3d at 384), she has made "a *prima facie* showing of venue," *Gulf Ins. Co.*, 417 F.3d at 355

(alteration omitted) (quoting *CutCo Indus.*, 806 F.2d at 364), with respect to her intentional

infliction of emotional distress and defamation claims.

2.        **Assault and Battery**

Goolden's assault and battery claims are a different story.  All of Wardak's conduct giving rise to Goolden's assault and battery claims occurred in Florida.  (Compl. ¶¶ 23–25, 51–55).  Nonetheless, Goolden asks the Court to "hear th[e]se claims under the doctrine of pendent venue."  (Dkt. No. 19 at 12.)

"Under the pendent venue doctrine, 'a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative facts as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie.'"  *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205, 2017 WL 4997838, at *7 (S.D.N.Y. Oct. 20, 2017) (quoting *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)).  "In making its decision, a court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants."  *Basile*, 717 F. Supp. 2d at 387 (quoting *Hsin Ten Enters. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)).

The Court will exercise pendent venue over Goolden's assault and battery claims.  This conclusion best serves the interests of "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants."  *Basile*, 717 F. Supp. 2d at 387 (quoting *Hsin Ten Enters.*, 138 F. Supp. 2d at 462).  Splitting up Goolden's claims will lead to piecemeal litigation because the Court will not be transferring her case to the Southern District of Florida, as discussed below.  And allowing Goolden's claims to proceed in this District — where she and Wardak both have residences, where the bulk of her claims against

him have taken place, and where the evidence for those claims can be found — will further

judicial economy, convenience to the court system, and fairness to the parties.[3]

Accordingly, because the Court will exercise pendent venue over Goolden's assault and

battery claims, Wardak's motion to dismiss for improper venue is denied.

### B.      Rule 8(a)'s Pleading Requirement

Wardak next argues that Goolden's complaint should be dismissed because of its failure

to comply with Federal Rule of Civil Procedure 8(a)'s pleading requirement.  (Dkt. No. 13 at 2.)

Specifically, Wardak asserts that because each of Goolden's causes of action incorporates all of

the preceding factual allegations, in addition to "adopting all of the allegations of each preceding

count," it is impossible to discern which facts support which causes of action.  (*Id.*)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief' . . . ."  *Twombly*, 550 U.S. at 555 (quoting

Fed. R. Civ. P. 8(a)(2)).  "[T]he principal function of pleadings under the Federal Rules is to give

the adverse party fair notice of the claim[s] asserted" against her.  *Salahuddin v. Cuomo*, 861

F.2d 40, 42 (2d Cir. 1988)).  Thus, dismissal is typically warranted only if a complaint is "so

confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised."  *Cohen v. Capers*, No. 16-CV-6090, 2017 WL 2455132, at *3 (S.D.N.Y. June 6,

2017) (quoting *Salahuddin*, 861 F.2d at 42).

Although Goolden's complaint is a bit awkward, it cannot be said to be so "vague [or]

incomprehensible," *Salahuddin*, 861 F.2d at 43, that Wardak is unable to "divine the nature of

the claims against" him.  *Cohen*, 2017 WL 2455132, at *3.  After all, Wardak was able to

---

[3] Relevant to this decision is the fact that neither Goolden nor Wardak lives in Florida, although Wardak is alleged to have a residence there.  (Compl.  ¶¶ 8–9.)

identify and respond to the specific allegations made against him in his answer.  (Dkt. No. 13.)

That alone is evidence that Goolden's "allegations [we]re sufficiently clear and specific to give

[Wardak] notice" and permit him to respond accordingly.  *Salahuddin*, 861 F.2d at 43.

Thus, the Court denies Wardak's motion to dismiss for failure to meet Federal Rule of

Civil Procedure 8(a)'s pleading requirement.

### C.      Failure to State a Claim

Wardak next attacks the sufficiency of the complaint as to each of Goolden's claims.

Each claim is discussed in turn.

#### 1.      Assault and Battery

Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of

imminent harmful or offensive contact.  A 'battery' is an intentional wrongful physical contact

with another person without consent."  *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)

(quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir.

1993)).

Here, the complaint adequately pleads both causes of action.  According to the complaint,

on the morning of July 6, Wardak pulled Goolden "by her hair," "picked her up," "carried her,"

and "threw her onto his bed."  (Compl. ¶ 24.)  He also started "throwing glasses and plates at

her."  (Compl. ¶ 25.)  Later that night, Wardak allegedly sexually assaulted Goolden, despite her

telling him earlier that "she did not want to engage in any sexual activity" (Compl. ¶ 49) and her

"repeated[]" pleas for "him to stop" during the attack (Compl. ¶ 5).  These allegations state a

claim for assault and battery.  *See, e.g.*, *Girden*, 262 F.3d at 203 (quoting *United Nat'l Ins. Co.*,

994 F.2d at 108) (concluding that "'a rape is an undisputed assault and battery' under New York

law").  Wardak's motion to dismiss is denied.

2.        **Intentional Infliction of Emotional Distress**

Under New York law, "intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).   "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* (citing *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)).   "[T]he conduct in question must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Medcalf v. Walsh*, 938 F. Supp. 2d 481, 488 (S.D.N.Y. 2013) (quoting *Murphy*, 448 N.E.2d at 90).

Further, an intentional infliction of emotional distress claim "may be invoked only as a last resort to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal quotation marks omitted) (first quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014); then quoting *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351 (App. Div. 1st Dep't 2004)).   As a result, New York courts have held that intentional infliction of emotional distress claims cannot "be brought where the challenged conduct falls well within the ambit of other traditional tort liability." *Id.* (internal quotation marks omitted) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)); *see also id.* (collecting cases).

Save for two allegations, Wardak's alleged conduct is not sufficiently outrageous, atrocious, or intolerable to sustain an intentional infliction of emotional distress claim.  Further, most of his conduct falls "within the ambit of other traditional tort liability." *Salmon*, 802 F.3d

at 256 (quoting *Fischer*, 373 N.E.2d at 1217).  That includes the allegation of sexual assault, which — although "atrocious[] and utterly intolerable in a civilized community,'" *Medcalf*, 938 F. Supp. 2d at 488 (quoting *Murphy*, 448 N.E.2d at 90) — "falls well within the ambit of other traditional tort liability" *Salmon*, 802 F.3d at 256 (quoting *Fischer*, 373 N.E.2d at 1217).

The same cannot be said, as a matter of law, of Wardak's alleged campaign to "severely harass, stalk, and defame" Goolden "with the intent to ruin her life and reputation."  (Compl. ¶¶ 76, 85.)  Accepting as true all factual matter in the complaint and drawing all reasonable inferences in Goolden's favor, the Court concludes that Wardak's continued harassment and stalking of Goolden, via social media and in person, are sufficiently "extreme and outrageous conduct" to state a claim for intentional infliction of emotional distress.  *Bender*, 78 F.3d at 790 (quoting *Howell*, 612 N.E.2d at 702).[4]  Cases where New York courts have sustained claims for intentional infliction of emotional distress have — like the allegations here — "involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy."  *Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999).  Thus, Wardak's motion to dismiss this claim is denied.

### 3. Defamation

"To establish a claim for defamation under New York law, a plaintiff must prove that: (1) the defendant published a defamatory statement of fact to a third party, (2) that the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4)

---

[4] Goolden has also plausibly pleaded that Wardak's "intent [in harassing and stalking her was] to cause severe emotional distress" and that there is a "causal connection between" his conduct and her "severe emotional and psychological trauma."  *See Bender*, 78 F.3d at 790. (Compl. ¶ 95.)

either the false statement was defamatory per se or caused the plaintiff special harm." *Medcalf*,

938 F. Supp. 2d at 485.  If the false statements "tend to injure another in his or her trade,

business, or profession," they are defamatory per se.  *Liberman v. Gelstein*, 605 N.E.2d 344, 347

(N.Y. 1992).  Critically, however, such statements "must be made with reference to a matter of

significance and importance for that purpose, rather than a more general reflection upon the

plaintiff's character or qualities."  *Id.* at 348 (quoting Prosser and Keeton, Torts § 112, at 791

(5th ed. 1984)).

Goolden's complaint raises multiple allegations of defamation.  Wardak's statements to

"Goolden via text messag[e] and email" accusing her "of being an escort, sex trafficker, and a

racist" (Compl. ¶ 82) fail because they were not made to "a third party."  *Medcalf*, 938 F.Supp.2d

at 485.  Wardak's statements to Goolden's brother and friend suggesting she "suffered from a

drug addiction," as well as Wardak's "public posts on social media regarding drug addiction"

(Compl. ¶¶ 77, 79), also fail because Goolden has not pleaded any facts indicating that these

statements injured her in her "trade, business, or profession."  *Liberman*, 605 N.E.2d at 347.  In

fact, the complaint fails to allege what precisely was said or how precisely the statements

affected her.  Absent such allegations, Goolden's bare assertion that the statements damaged her

"business relationships" must be disregarded as conclusory.  (Compl. ¶ 111.)  The same is true

for Wardak's social media posts "falsely insinuat[ing] [that she] was sleeping with her lawyer.

(Compl. ¶ 83.)  Once again, the complaint fails to allege precisely how such statements injured

her business relationships.  Accordingly, the Court cannot conclude that these statements were

statements with "significance and importance" to Goolden's trade or business, rather than mere

"general reflections upon [Goolden's] character."  *Liberman*, 605 N.E.2d at 348 (quoting Prosser

and Keaton, Torts § 112, at 791).

Because of the aforementioned defects, the motion to dismiss is granted with respect to Goolden's defamation claims.

### D.    Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," and may do so either *sua sponte* or "on motion made by a party."  Fed R. Civ. P. 12(f).  "Motions to strike under Rule 12(f) are rarely successful."  *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (collecting cases).  To succeed, the movant must show "(1) that no evidence in support of the allegation would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Koch v. Dwyer*, No. 98-CV-5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000).

Wardak seeks to strike two statements made by Goolden in her complaint.  The first describes him as a "merciless individual . . . who knows no bounds and has followed and attacked other women."  (Compl. ¶ 1.)  The second describes him as someone who "has a long, documented history of stalking and attacking woman."  (Compl. ¶ 10.)  Wardak claims these statements are "immaterial, impertinent, and scandalous" (Dkt. No. 13 at 11), as well as "offered solely as an attack on his character."  Such statements, he argues, are therefore inadmissible character evidence under the Federal Rules of Evidence.

Although Wardak is correct that the Federal Rules of Evidence prohibit character evidence, *see* Fed. R. Evid. 404, he has not demonstrated that Goolden could not use the statements for some other admissible purpose — for example, as evidence tending to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Because Wardak has not demonstrated "that the

allegations have no bearing on the issues in the case," *Koch*, 2000 WL 1458803, at *1, his motion to strike is denied.

### E.    Motion to Transfer

In the alternative, Wardak asks the court to exercise its discretion to transfer the case pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 13.)

Under 28 U.S.C. § 1404(a), a district court may transfer the suit to another district if "the transferee district [is] one where jurisdiction over the defendant could have been obtained at the time the suit was brought" and if "the transfer [is] in the interest of justice and convenience of the parties and the witnesses."  *In re CenturyLink, Inc. Sec. Litig.*, No 13-CV-3839, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014).  In deciding a § 1404(a) motion to transfer, the Court considers the following factors, where no single factor is determinative: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice."  *Steck v. Santander Consumer USA Holdings Inc.*, No 14-CV-6942, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat'l Ass'n*, No., 14-CV-8513, 2015 WL 1611391, at *4 (S.D.N.Y. Apr. 10, 2015)).  The plaintiff's choice of forum "should not be disturbed unless the balance of [the] factors tips decidedly in favor of a transfer."  *John Wiley & Sons, Inc. v. Swancoat*, No. 08-CV-5672, 2009 WL 2486048, at *4 (S.D.N.Y. Aug. 14, 2009) (quoting *Wildwood Imp. v. M/V Shanghai*, 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005)).  The Court discusses each factor in turn.

### 1.   Convenience of the Parties

"[T]he traditional starting point" of the analysis "is the residence of the parties."  *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*, 245 F. Supp. 2d 523, 526 (S.D.N.Y. 2003). This factor weights against transfer, because neither party lives in Florida.  Goolden resides in New York City (Compl. ¶ 8), while Wardak resides both in Puerto Rico (Compl. ¶ 9).

### 2.   Convenience of the Witnesses

The convenience of the witnesses is "the single most important factor in the transfer analysis."  *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003). "Because of the importance of this factor, the party seeking transfer 'must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *Id.* (quoting *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). Here, though Wardak has listed potential witnesses, he does not provide any indication of what their testimony will cover.  (Dkt. No. 21 ¶ 37.)  Accordingly, this factor weighs against transfer. (In any event, it appears that critical questions in this case pertain to conduct that took place in New York, not Florida.)

### 3.   Location of Relevant Documents

Because "document production is not expected to be particularly voluminous in this case," and any documents "can be easily transmitted" regardless of where the lawsuit is brought (Dkt. No. 19 at 16), this factor is neutral.  *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is a largely neutral factor in today's world of faxing, scanning, and emailing documents.").

### 4.      Locus of Operative Facts

The locus of operative facts is a "primary factor" in determining whether to transfer venue. *Mattel, Inc. v. Procount Bus. Servs.,* No. 03-CV7234, 2004 WL 502190, at *4 (S.D.N.Y. Mar. 10, 2004).  In this case, aside from the Fourth of July trip to Miami, all relevant events occurred in New York.  This factor therefore weighs against transfer.

### 5.      Availability to Compel Attendance of Unwilling Witnesses

"In determining whether a transfer motion is appropriate, courts also examine the ability to compel the attendance of witnesses."  *Excelsior Designs*, 291 F. Supp. 2d at 187.  Because neither party has alleged that potential witnesses would refuse to appear in New York, this factor is neutral.

### 6.      Relative Means of the Parties

This factor considers "the relative means of the parties where an economic disparity between the parties exists."  *Id.* at 186 (alterations and internal quotation marks omitted) (quoting *KPMG Consulting, Inc. v. LSQ II, LLC*, No 01-CV-11422, 2002 WL 1543907, at *4 (E.D.N.Y. July 12, 2002)).  Goolden has alleged that Wardak "is a multi-millionaire" (Compl. ¶ 10), while she "is a working model and student" (Compl. ¶ 11).  Accordingly, this factor weighs against transfer.

### 7.      The Forum's Familiarity with Governing Law

"All federal courts are presumed to be fully capable of ruling on nationally applicable legal principles."  *TM Claims Serv. V. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001) (quoting *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998)).  Accordingly, this factor is neutral.

### 8.     The Weight Accorded to the Plaintiff's Choice of Forum

"[T]he plaintiff's choice of forum is given substantial deference especially if it is the plaintiff's home state . . . ." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 615, 620 (S.D.N.Y. 2016).  Because New York is Goolden's home, this factor weighs against transfer.

### 9.     Trial Efficiency and the Interests of Justice

When an "action is in its infancy, a transfer . . . would not cause an undue delay."  *MBPC Peerlogic LLC v. Critical Path, Inc.*, No. 02-CV-3310, 2002 WL 3172926, at *6 (S.D.N.Y. Dec. 5, 2002).  Accordingly, this factor weighs in favor of transfer.

\* \* \*

Considering the factors together — of which all but one weigh against transfer — the Court concludes that Wardak has not satisfied his burden of "demonstrating by a clear and convincing showing that convenience and justice would support transfer" to the Southern District of Florida.  *Excelsior Designs*, 291 F. Supp. 2d at 188.  Wardak's motion to transfer is denied.

### F.     Leave to Amend

Finally, in the event of dismissal, Goolden requests leave to amend the complaint.  (Dkt. No. 19 at 21.)  Leave to amend should be granted "when justice so requires."  Fed. R. Civ. R. 15(a).  Here, Goolden has indicated that she wishes to "make [her] defective allegations more definite and precise."  (Dkt. No. 19 at 21 (quoting *Glint Factors v. Schnapp*, 126 F.2d 207, 209 (2d Cir. 1942).)  Accordingly, leave to amend is granted.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendant's motion to strike is DENIED.  Defendant's motion to transfer is DENIED.

Plaintiff's motion for leave to amend is GRANTED. Plaintiff is directed to file an amended complaint on or before August 13, 2020. If no amended complaint is filed on or before that date, the claims dismissed in this Opinion and Order will be dismissed with prejudice.

The Clerk of Court is directed to close the motions at Docket Number 13.

SO ORDERED.

Dated: July 23, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge