**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SARAH GOOLDEN,

                              Plaintiff, Counterclaim-Defendant

          -against-                                          **19-CV-6257 (ALC) (VF)**

HAMED WARDAK,

                              Defendant, Counterclaim-Plaintiff.

---

**DEFENDANT/COUNTERCLAIM-PLAINTIFF HAMED WARDAK'S MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS**

---

YANKWITT LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 487-5000
*Counsel for Defendant/*
*Counterclaimant Hamed Wardak*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

I.     BACKGROUND ...................................................................................................... 2

    A.  Procedural Background ...................................................................................... 2

    B.  Relevant Exchange of Discovery Requests and Productions ............................ 3

    C.  The Late Disclosure of the Recording ............................................................... 6

    D.  Discovery and Investigation Subsequent to Production of the Recording ........ 7

    E.  Plaintiff's Deposition Testimony About the Withheld Recording ..................... 8

II.    LEGAL STANDARD ............................................................................................... 9

III.   ARGUMENT. .......................................................................................................... 13

IV.    CONCLUSION ........................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                           **Page(s)**

*Beverly Hills Teddy Bear Company v. Best Brands Consumer Products, Inc.*,
  2020 WL 7342724 (S.D.N.Y. 2020) ........................................................................ 10

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ................................................................................. 12

*Izzo v. ING Life Ins. & Annuity Co.*,
  235 F.R.D. 177 (E.D.N.Y. 2005) ........................................................................... 13

*Lee Valley Tools, Ltd. v. Industrial Blade Co.*,
  288 F.R.D. 254 (W.D.N.Y. 2013) ........................................................................... 12

*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees
  Intern. Union*,
  212 F.R.D. 178 (S.D.N.Y. 2003) ...................................................................... 10, 12

*Peerless Network, Inc. v. AT&T Corp.*,
  2022 WL 3700141 (S.D.N.Y. 2022) ........................................................................ 13

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) .............................................................................. 12, 13

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*,
  280 F.R.D. 147 (S.D.N.Y. 2012) ...................................................................... 11, 13

*Sept. 11th Liab. Ins. Coverage Cases*,
  243 F.R.D. 114 (S.D.N.Y. 2007) ........................................................................... 12

*Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*,
  118 F.3d 955 (2d Cir. 1997) .............................................................. 13, 14, 15, 16

**Statutes**

Fl. Stat. Ann. § 934.03 ........................................................................................ 14

**Rules**

Fed. R. Civ. P. 26(g)(1) ......................................................................................... 10

Fed. R. Civ. P. 26(g)(3) ......................................................................................... 10

Fed. R. Civ. P. 37(c)(1) ................................................................................................ 11, 16

Federal Rule of Civil Procedure 26(e) ............................................................................ 9

Federal Rule of Civil Procedure 26(g) ........................................................... 10, 11, 12, 14

Federal Rule of Civil Procedure 37(c) ........................................................................... 11

Rule 26(a) or (e) ......................................................................................................... 11, 16

Rule 37(b)(2)(A)(i)-(vi) ............................................................................................... 11, 12

Defendant/Counterclaim Plaintiff Hamed Wardak ("Defendant") respectfully submits this memorandum of law in support of his motion for discovery sanctions (the "Motion") against Plaintiff/Counterclaim Defendant Sarah Goolden ("Plaintiff"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's willful violation of her discovery obligations comprises a scheme by Plaintiff to withhold and purposely not disclose a video recording (the "Recording") – which was in her possession during the entirety of the litigation – until moments after Defendant's deposition, thereby attempting to trap Defendant into impeachable sworn testimony.   Plaintiff took the Recording surreptitiously, on or about July 8, 2018, on her iPhone ("Plaintiff's iPhone").   Plaintiff thereafter secretly kept the Recording on her iPhone, and, by her own admission, even took steps to preserve it for purposes of litigation.   Yet Plaintiff never produced the Recording in this case during numerous instances when such production was required.   Then, just moments after Defendant testified during his deposition, Plaintiff belatedly produced the Recording, which had been secretly undisclosed in her possession all along.

Plaintiff has had the iPhone, and thereby the Recording, in her possession for the entirety of this case, including in her possession when she initiated this case, on July 5, 2019.   Indeed, the iPhone on which she kept the Recording was then the phone she used daily, carrying it around with her at all times.   Plaintiff continued to have the Recording in her possession throughout document discovery in this case, during 2019, 2020, 2021, and 2022, during which her counsel produced other items from her iPhone, but not the Recording.

As set forth in more detail below, Plaintiff never produced the Recording during years of document discovery.   Indeed, Plaintiff's representations and productions during document

discovery, in light of the non-production of the Recording, were false and incomplete.  Each and every instance Plaintiff's counsel affixed her signature in responding to Defendant's numerous discovery requests, constituted a blatant abrogation of sworn duties, both to the Court and the Defendant.

It was not until after document discovery had concluded, after Plaintiff was deposed, and mere moments after Defendant completed the first day of his deposition, on June 28, 2022, when Plaintiff finally produced the Recording.  Since then, on behalf of Defendant, we have attempted to determine the facts regarding Plaintiff's non-disclosure of the Recording.  Based on our review, and as detailed further below, it is plain that Plaintiff's non-disclosure of the Recording for years until moments after Defendant's deposition was willful – a cynical scheme consonant with the cynical claims Plaintiff has brought, upon baseless allegations.

Defendant therefore respectfully requests that this Court grant Defendant's motion for sanctions and order such relief as requested.

## I.      BACKGROUND

### A.  Procedural Background

On July 5, 2019, Plaintiff filed suit against Defendant in this Court, asserting claims for assault, battery, defamation per se, and intentional infliction of emotional distress, stemming from allegations of sexual assault of the Plaintiff by the Defendant on or about July 6, 2018 (the "Complaint").  On October 15, 2019, Defendant moved to dismiss the Complaint, which the Court granted in part and denied in part.[1]

---

[1] The Court dismissed Plaintiff's defamation claim, leaving the remaining claims intact.  (*See* Dkt. No. 32.)  Plaintiff neglected to file an amended complaint by the Court-ordered deadline, and thus the dismissed claims were dismissed with prejudice.  (*See* Dkt. No. 33.)

### B. Relevant Exchange of Discovery Requests and Productions

On February 19, 2021, and March 26, 2021, respectively, Defendant served his first document requests ("First Document Requests") and first set of interrogatories ("First Interrogatories," and together, "First Requests") upon Plaintiff for documents and communications relevant to the allegations in the Complaint. (*See* Declaration of Benjamin Allee, Esq. (hereinafter "Allee Decl."), Exs. A, B.) In Defendant's First Document Requests, Plaintiff was specifically asked for the following, relevant here: "[a]ll documents and communications concerning Wardak, including all communications between Goolden and Wardak and all communications between Goolden and any other person concerning Wardak"; and "[d]ocuments sufficient to show every telephone number used by Goolden from January 1, 2010 to present." (*See* Ex. A at 5, 11-12.) Importantly, "document" was defined to include "audio or video recordings." (*See* Ex. A at 5.)

On March 19, 2021, Plaintiff provided her first responses to Defendant's First Document Requests ("Plaintiff's First Response to Document Requests"), including objections, and in response to the requests above, stated that "Plaintiff will produce any responsive non-privileged and non-work product documents that are in her possession and/or custody and can be located by a reasonable search," and objected to the Request concerning Plaintiff's telephone numbers, stating "[i]t would take an unreasonable time and unreasonable expense for Goolden to provide responsive items to this Request . . . [which] far outweigh[s] Defendant's reasonable need for these documents." (*See* Allee Decl., Ex. C. at 3-4, 22-23.) Plaintiff's counsel, Aurore C. DeCarlo, signed the response on behalf of the Plaintiff. (*Id.*)

On April 2, 2021, counsel for Defendant served a letter upon Plaintiff, detailing certain deficiencies in Plaintiff's First Response to Document Requests ("First Deficiency Letter"), and a second set of interrogatories ("Second Interrogatories"). (*See* Allee Decl., Exs. D, E.) Defendant's

First Deficiency Letter provided further insight into his request concerning Plaintiff's telephone numbers, stating the reason and relevance for some requests, and specifically that "these various numbers may be linked to phones or accounts that contain discoverable information and Goolden may not hide discoverable evidence by refusing to provide this information."  (Ex. D at 6-7.) Defendant's Second Interrogatories included one interrogatory constituting a request for Plaintiff to "[i]dentify each and every telephone number that has been associated with Plaintiff from January 1, 2010 to present."  (Ex. E at 5.)

On May 7, 2021, Plaintiff provided her first responses to Defendant's First and Second Interrogatories ("Plaintiff's Responses to First and Second Interrogatories").  (*See* Allee Decl., Ex. F.)  In response to Defendant's Second Interrogatories, Plaintiff stated that "from approximately May 2018 through present Goolden has been associated with [one phone number] through service provider AT&T . . . [and] reserves her right to supplement this response to this interrogatory as her investigation . . . continue[s]."  (Ex. F at 16.)  Plaintiff's counsel, Aurore C. DeCarlo, signed the response on behalf of the Plaintiff.  (*Id.*)

Subsequently, on June 29, 2021 in response to Plaintiff's Responses to First and Second Interrogatories, Defendant served a second deficiency letter upon Plaintiff ("Second Deficiency Letter"), detailing the various deficiencies in Plaintiff's responses to interrogatories.  (*See* Allee Decl., Ex. G.)  Specifically, in response to Plaintiff's Response to Second Interrogatories, Defendant objected stating Plaintiff "fail[ed] to meet her obligation," as Plaintiff "communicated with Mr. Wardak from numerous devices connected to numerous different phone numbers as she moved around the country and the world . . . [and] [a]ny of these accounts may have discoverable information relevant to . . . claims and defenses in this case."  (Ex. G at 3.)

4

On July 2, 2021, Plaintiff responded to Defendant's Second Deficiency Letter ("Plaintiff's Response to Second Deficiency Letter"), and affirmatively stated "**Ms. Goolden does not have access to any other devices**." (*See* Allee Decl., Ex. H at 2.)  Similarly to the above responses, Plaintiff's counsel, Aurore C. DeCarlo, signed Plaintiff's Response to Second Deficiency Letter on behalf of the Plaintiff.  (*Id.*)  Between July 2, 2021 and July 21, 2021, counsel for Plaintiff and former counsel for Defendant exchanged e-mail correspondence regarding Plaintiff's production and responses to Defendant's outstanding discovery requests, where Defendant's counsel asked Plaintiff's counsel to "explain the process . . . used to identify, preserve, collect, and search Ms. Goolden's devices and electronically stored information."  (*See* Allee Decl., Ex. I at 2.)  In response to this email, on July 23, 2021, Ms. DeCarlo stated that "[p]er your request, we will provide the method of identification, search, and collection of her devices after further consultation with our client and her previous counsel.  (*See* Allee Decl., Ex. J.)  We are unaware of any further response that Plaintiff's counsel provided to this inquiry.

On August 6, 2021, Defendant served upon Plaintiff his second request for the production of documents ("Second Document Requests"), including a request for "documents and communications concerning [a phone referenced in Plaintiff's document production as 'Old Phone from London'], including all . . . efforts by Goolden in or around May 2020 to preserve, collect, and search the electronically stored information on the Phone to produce [responsive] documents."  (*See* Allee Decl., Ex. K.)  On September 29, 2021, in response to the Second Document Requests ("Plaintiff's Response to Second Document Requests"), Plaintiff objected to the request concerning the "Old Phone from London" on privilege grounds, (Allee Decl., Ex. L), and by deficiency letter dated December 8, 2021 ("Third Deficiency Letter"), Defendant objected to this response, stating that review of documents indicated "that this phone was in Ms. Goolden's

possession approximately one week after [Plaintiff's counsel's firm] entered its appearance."
(Allee Decl., Ex. M.)

On May 9 and 10, 2022, Plaintiff was deposed by Defendant's counsel ("Plaintiff's Initial Deposition"). (*See* Allee Decl., Exs. N, O.)  During the course of her deposition, Plaintiff provided testimony regarding her search for documents, stating that she searched on her "phone, computer, email," and that she had four (4) electronic devices: a personal iPhone, work iPhone, computer, and iPad. (*See* Ex. N at 87:5-87:25; 88:19-88:25; 89:6-89:25.)

Throughout the discovery period, and specifically between May 2021 and June 2022, Plaintiff made numerous productions of documents, totaling over approximately tens of thousands of pages of documents.  However, over this years-long period, Plaintiff failed to produce both the Recording at issue, and the iPhone upon which it was taken, until the night after Defendant's first day of deposition, on June 28, 2022.

### C.  The Late Disclosure of the Recording

On June 27, 2022, Plaintiff's counsel deposed Defendant, which deposition was scheduled to continue on the following day. (*See* Allee Decl., Ex. P.)  The following day, June 28, 2022, was also the fact discovery deadline.  However, subsequent to Defendant's deposition on June 27, 2022, at approximately 11:34 p.m., Plaintiff's counsel texted Defendant's former counsel, Rhett Millsaps, Esq., to say, "We have to postpone the second day of the deposition.  I will explain tomorrow and will call you in the morning.  (No one is sick.)"  (*See* Dkt. No. 152).

The next day, approximately twenty-one minutes prior to the expected start of Defendant's second day of deposition, Plaintiff's counsel produced the Recording for the first time, a surreptitiously taken video depicting a conversation between Plaintiff and Defendant that took place on or about July 2018.  (*See* Allee Decl., Ex. Q.)

Upon receipt of the Recording, Defendant filed a letter with the Court requesting a Local Rule 37.2 Conference. (*See* Dkt. No. 152.) In response, Plaintiff filed letters on June 29, 2022 and July 11, 2022, joining Defendant's request for a conference with the Court and laying forth Plaintiff's version of the issue at hand. (*See* Dkt. Nos. 153, 156.) On September 8, 2022, the undersigned entered an appearance in this matter on behalf of Defendant, and former counsel subsequently withdrew from representation of Defendant upon Order of the Court on September 13, 2022. (*See* Dkt. No. 168.)

Since June 28, 2022, and upon the undersigned appearing in this matter on behalf of the Defendant in September 2022, the undersigned has attempted to determine the circumstances of the egregiously-late disclosure of the Recording, and identify whether Plaintiff violated her discovery obligations.

### D. Discovery and Investigation Subsequent to Production of the Recording

On September 13, 2022, Plaintiff and Defendant attended a conference with the Court to discuss anticipated motions and next steps regarding the investigation of the late-produced Recording. After the conference, on September 14, 2022, Defendant served a letter upon Plaintiff requesting information about the provenance and late production of the Recording, to which Plaintiff declined to respond. (*See* Dkt. No. 171 [attachment to September 27, 2022 letter].) Therefore, on September 27, 2022, prior to the next conference with the Court on September 28, 2022, Defendant filed a letter updating the Court on the status of the discovery dispute, clarifying that the Parties agreed that the Court's intervention was necessary to resolve the dispute. (*See* Dkt. No. 171.)

Between September 28, 2022 and July 31, 2023, on behalf of Defendant, the undersigned conducted an investigation to attempt to determine the facts regarding Plaintiff's non-disclosure

of the Recording until moments after Defendant testified, to determine the appropriate and warranted level of sanctions to request for Plaintiff's discovery violation.  Said investigation included the following, and is detailed further below: (1) requesting from Plaintiff's counsel materials from the iPhone at issue; (2) in response to an expert retained by Plaintiff regarding her use of the iPhone, retaining and consulting with a forensic expert regarding the iPhone and Recording; (3) conducting a deposition of Plaintiff over two days regarding the recording; and (4) meeting and conferring numerous times with Plaintiff's counsel regarding the matter.

**E.  Plaintiff's Deposition Testimony About the Withheld Recording**

On May 1 and 5, 2023, the undersigned deposed Plaintiff regarding the non-production and late-disclosure of the Recording.  Plaintiff's testimony in response to questions showed, among other things: (1) that she had the Recording in her possession during the entirety of the litigation; (2) that she was aware of her obligation to preserve and produce the Recording, and took steps to save it on her iPhone; (3) that she ultimately kept the iPhone in her closet, and accessed it specifically one or two months prior to the deposition of Defendant and yet made no disclosure; and (4) that promptly following Defendant's deposition, she got the iPhone and pulled up the Recording.  Plaintiff's testimony also included numerous answers that were contradictory, evasive, and/or implausible, and made further plain that Plaintiff's non-disclosure of the Recording for years until moments after Defendant's deposition was willful.

For example, during her deposition, Plaintiff admitted, among other things, that: (1) she was aware of the Recording on her iPhone and took steps to preserve it [*see* Dkt. No. 194, Exhibit A at 36:18-38:1] (Q: "You understand that you have a duty to preserve relevant evidence? A: I do, yes. Q: And, therefore, you did not delete these items that you're referring to, including the video recording, but you, instead, put them in a hidden folder? A: Yes."); (2) she did not get rid of the

8

iPhone when she changed phones [*id.* at 55:6-55:18; 66:3-66:5]; (3) even after she changed phones, she specifically located the iPhone weeks before Defendant's deposition and yet did nothing with it [*id.* at 31:18-33:8; 33:19-34:9; 35:7-10; 116:12-118:7] (Q: "What, if anything, did you do with your old phone when you noticed it there when you were looking for summer clothes? A: I just left it there"; Q: "When you saw your iPhone 10 [in or about April or May of 2022] . . . did you contact your counsel? A: No."); and (4) immediately following Defendant's deposition, she promptly pulled up the Recording on the iPhone in her possession [*id.* at 35:11-36:5; 38:21-40:18]. In addition, (5) Plaintiff gave numerous senseless, incomprehensible, and inconsistent answers regarding her memory of the Recording and iPhone [*see e.g.*, *id.* at 43:5-45:9; 70:4-71:8; 106:4-109:19]; and (6) ultimately described the inquiry into the details of her discovery failure as, in her opinion, "mundane." [*id.* at 103:18-104:11; 118:2- 119:5] (Q: "Did you, in searching for relevant documents and items in the case for purposes of discovery, search your iPhone 10 prior to June 28th, 2022? A: I don't know. Q: Why don't you know? A: I mean, you're asking me, like, things from a long time ago that are pretty mundane.").

Therefore, as detailed below, Plaintiff has perpetrated a calculated abuse of the discovery rules and must be sanctioned accordingly.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(e) provides that any "party who has . . . responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Additionally, "every discovery request, response, or objection must be signed by at least one attorney of record . . . [and] [b]y signing, an attorney . . . certifies that the best of the person's knowledge, information,

and belief formed after a reasonable inquiry: . . . (B) with respect to a discovery request, response, or objection, it is: (i) consistent with [the Federal Rules] and warranted by existing law," and "(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 26(g)(1).  Federal Rule of Civil Procedure 26(g) also provides for mandatory sanctions "if a certification violates this rule without substantial justification," and "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).

Rule 26(g) "imposes on counsel an affirmative duty to engage in pretrial discovery responsibly and 'is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions,'" as it "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection." *See Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Intern. Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) citing Fed. R. Civ. P. 26(g) Advisory Committee Notes to 1983 Amendment.  This duty requires that counsel "make a reasonable inquiry into the basis of their discovery responses," and sanctions can follow from both formal certifications to the Court and responses to document requests, as well as from "false statements in letters about completeness of disclosure." *Id.* at 221 fn. 28.  While "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request," it is important to note that "the discovery rules do impose an obligation on counsel to monitor compliance so that all sources of discoverable information are identified and searched."  *See Beverly Hills Teddy Bear Company v. Best Brands Consumer Products, Inc.*, 2020 WL 7342724, at *13 (S.D.N.Y. 2020) ("after implementing a litigation hold, a party's counsel is obligated to become fully familiar with her client's document retention policies . . . and ensure that searches are properly conducted" – it is not enough for Counsel to "implement

a litigation hold and then sit on [their] hands, hoping that parties retain and produce all relevant information.") (internal citations omitted).

Federal Rule of Civil Procedure 37(c) provides that where "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). In addition to the preceding sanction, courts have "broad discretion to determine the nature of any sanction that should be imposed under Rule 37," and Rule 37(c) affords courts discretion to add or substitute the following sanctions: "(A) payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) . . . inform the jury of the party's failure; and (C) . . . impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.*; *see also Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012). Rule 37(b)(2)(A)(i)-(vi), includes a range of sanctions, as follows:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part; [or]
>
> (vi) rendering a default judgment against the disobedient party.

*See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

Similar to Rule 26(g), Rule 37 "is intended to encourage and enforce strict adherence to the 'responsibilities counsel owe to the Court and to their opponents.'" *See Metropolitan Opera*,

212 F.R.D. at 219.  Importantly, both Rules 26 and 37 do not require a finding of bad faith to issue

sanctions – rather, sanctions are warranted for "negligence or tactical intransigence as well as

willful or intentional wrongs," though the severity of the violation is considered and "actions taken

in bad faith, or grossly negligent behavior justify severe disciplinary measures."  *Id.*; *see also*

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (discovery

sanctions "may be imposed upon a party that has breached a discovery obligation not only through

bad faith or gross negligence, but also through ordinary negligence."); *Design Strategy, Inc. v.*

*Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (same).  Initially, the party seeking Rule 37 sanctions

"bears the burden of showing that the opposing party failed to timely disclose information," and

"[a] failure to disclose under Rule 37 encompasses the untimely production of documents and

information required to be produced."  *See Lee Valley Tools, Ltd. v. Industrial Blade Co.*, 288

F.R.D. 254, 260 (W.D.N.Y. 2013) citing *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114,

125 (S.D.N.Y. 2007).[2]

Overall, the importance of discovery sanctions is to "prevent the practice of 'sandbagging'

an adversary with new evidence," and "the burden is on the party facing sanctions to prove that

---

[2] "To determine whether to grant sanctions under Rule 37 when a party withholds evidence, the Court employs a three-factor test and evaluates: (1) whether the party with control of the evidence 'had an obligation to timely produce it,' (2) whether that party had a 'culpable state of mind,' and (3) whether the withheld documents are 'relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'"  *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  "To satisfy the first element of this test, the moving party must show that the respondent breached its obligations, either as set forth in Rule 26, Fed. R. Civ. P., or as provided in court orders regulating discovery.  The 'culpable state of mind' element is satisfied by a showing that 'a party has breached a discovery obligation . . . through bad faith or gross negligence [or] ordinary negligence.'  With respect to the third element, a finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced or destroyed evidence as a matter of law; a finding that a party breached its obligations through gross negligence is 'frequently' sufficient."  *Id.*

the late disclosure was harmless or that there was a substantial justification for the delay." *See Peerless Network, Inc. v. AT&T Corp.*, 2022 WL 3700141, at *4 (S.D.N.Y. 2022).

Once a determination has been made that sanctions are warranted, the Court must determine which sanctions are appropriate, considering the following factors: "(1) the party's explanation for the failure to comply with the discovery requirement; (2) the importance of . . . the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (the "*Softel* Factors"). While the Court's discretion is broad, "it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking . . . discovery sanctions." *Ritchie Risk-Linked Strategies*, 280 F.R.D. at 157 quoting *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 188 (E.D.N.Y. 2005) (categorizing costs and attorney's fees as the "mildest" of the sanctions afforded by Rule 37).

### III.   ARGUMENT

Plaintiff's withholding of the Recording from the inception of the action, in 2019, through document discovery in 2021 and 2022, until moments after Defendant testified at his deposition in June 2022, requires sanctions. *See* Fed. R. Civ. P. 26, 37; *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107. The appropriate sanctions in this case, pursuant to Rules 26(g) and 37(c) and application of the *Softel* factors, are (1) preclusion of Plaintiff's claims to which the Recording relates; (2) preclusion of Defendant's deposition testimony for all purposes;[3] (3)

---

[3] Relatedly, the Court should preclude any further attempt by Plaintiff to depose Defendant. Such attempt would not only represent an absence of appropriate sanctions for Plaintiff's conduct, but an actual reward for such conduct, providing Plaintiff a proverbial "second bite at the apple" which is wholly undeserved.

preclusion of the Recording; and (4) reimbursement by Plaintiff of Defendant's costs and legal fees arising from the discovery violation.

*First*, the absence of any plausible, good faith explanation for Plaintiff's withholding of the Recording supports sanctions. *See Softel*, 118 F.3d at 961. Plaintiff appears to assert, through counsel, that she forgot she had either the Recording and/or the iPhone on which she had recorded and saved the Recording. This assertion does not withstand scrutiny, given the undisputed facts and admissions Plaintiff makes:

- Plaintiff made the Recording, surreptitiously.

- The making of such Recording was a crime. *See* Fl. Stat. Ann. § 934.03.

- The Recording is of a conversation between Plaintiff and Defendant in the midst of the events that are the subject of the instant litigation.

- Plaintiff made the Recording on her iPhone, which she used regularly and daily at the time.

- Plaintiff continued to use the iPhone for years, through the initiation and more than a year of the instant litigation, and the Recording remained on the iPhone.

- Plaintiff was aware of the need to preserve the Recording and went out of her way to save it on her iPhone.

- Plaintiff kept her iPhone, and the Recording which was saved on the iPhone, when she switched to a new phone.

- Plaintiff continued to keep in her possession the iPhone during the ensuing years of litigation, including during the exchange of records in discovery in the case.

- Plaintiff's counsel engaged in communications with Defendant's former counsel about devices to which Plaintiff had access, during which Plaintiff and Plaintiff's counsel surely discussed all devices to which she had access which would include the iPhone.

- During the litigation, Plaintiff repeatedly moved her iPhone, by her own account, into and out of a storage location.

- Plaintiff ultimately stored the iPhone in her closet in her apartment.

- Plaintiff, promptly upon the conclusion of Defendant's deposition testimony on June 27, 2022, went to her closet, got her iPhone, and pulled up the Recording.

- When asked what efforts Plaintiff had made before that day to search the iPhone, Plaintiff was unable or unwilling to answer:

  o Q: Did you, in searching for relevant documents and items in the case for purposes of discovery, search your iPhone 10 prior to June 28th, 2022?

  o A: I don't know.

  o Q: Why don't you know?

  o A: I mean, you're asking me, like, things from a long time ago that are pretty mundane." (*See* Dkt. No. 194, Exhibit A at 103:18-104:5.)

*Second*, the Recording's value as evidence does not outweigh the gravity of the discovery violation in this case. *See Softel*, 118 F.3d at 961. Plaintiff clearly concluded that the value of the Recording as evidence was insufficient to merit its timely disclosure, and was less than the value of the Recording as collateral impeachment material once the Defendant, through failure of memory or otherwise, was trapped into contrary testimony. Plaintiff withheld the Recording to ambush the Defendant, which is precisely the reason the rules of discovery are in place: to prevent such ambush and ensure that both parties are on equal footing regarding access to relevant records.

*Third*, Defendant has suffered prejudice as a result of the discovery violation. *See Softel*, 118 F.3d at 961. Plaintiff's deposition was taken before the disclosure of the surreptitious Recording, and therefore before disclosure of the fact that Plaintiff had violated Florida criminal law and withheld evidence during discovery, which is prejudicial. Additionally, Defendant appeared for a deposition without Plaintiff having met her discovery obligations. In addition, Defendant has had to investigate the circumstances of the non-production of the Recording, which investigation began with Plaintiff refusing to answer Defendant's questions regarding the Recording, and continued through deposition of Plaintiff and the instant motion practice. The legal

fees and costs associated with these efforts have been prejudicial.  Moreover, any further litigation necessitated by Plaintiff's discovery violation, such as retaking of depositions, will likewise give rise to costs and legal fees that are prejudicial.

*Fourth*, the possibility of a continuance does not offer a solution to Plaintiff's discovery violation.  *See Softel*, 118 F.3d at 961.  As discussed above, Defendant has suffered prejudice in multiple ways already.  Moreover, a mere continuance would comprise tacit approval of Plaintiff's conduct in withholding relevant evidence until moments after Defendant's deposition.  "[Where] a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  Here, there is no substantial justification and the failure is not harmless; thus, irrespective of any possible continuance, the Recording must be precluded.

Accordingly, Plaintiff's conduct in withholding the Recording in violation of her obligations under Rules 26 and 37 merits serious sanctions.  This Court should preclude claims to which the Recording relates, preclude the Recording, preclude use of Defendant's deposition testimony for all purposes, preclude further attempts to depose Defendant, and require Plaintiff to reimburse Defendant the costs and attorney's fees arising from Plaintiff's discovery violation.  In the event that the Court determines further evidence or testimony is necessary to resolve fact disputes on this motion, we respectfully request an evidentiary hearing on these matters.

## IV.    CONCLUSION

For the reasons stated herein, Defendant respectfully moves the Court to award sanctions against Plaintiff, as outlined herein.

16

Dated: White Plains, New York
      October 19, 2023

YANKWITT LLP

By: _____

Russell M. Yankwitt
Benjamin Allee
Connor Hilbie
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.: (914) 686-1500
Fax: (914) 487-5000
*Attorneys for Defendant/Counter-*
*Claimant Hamed Wardak*