**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SARAH GOOLDEN,

                     Plaintiff, Counterclaim-Defendant,

    -against-                                   **19-CV-6257 (ALC) (VF)**

HAMED WARDAK,

                     Defendant, Counterclaim-Plaintiff.

---

**PLAINTIFF/COUNTERCLAIM DEFENDANT SARAH GOOLDEN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR RULE 37 DISCOVERY SANCTIONS**

---

                                      C.A. GOLDBERG PLLC

By: _____
                                      Aurore C. DeCarlo
                                      16 Court Street, 33rd Floor
                                      Brooklyn, New York 11241
                                      Tel. (646) 666-8908
                                      aurore@cagoldberglaw.com
                                      *Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

    I.    PROCEDURAL BACKGROUND .................................................................................... 2

    II.   RELEVANT DISCOVERY PRODUCTION ..................................................................... 3

ARGUMENT .......................................................................................................................... 5

    I.    LEGAL STANDARD ..................................................................................................... 5

    II.   DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED IN ITS ENTIRETY ................... 6

        A.    Plaintiff's Disclosure of the Recording was Timely and Not Made in Bad Faith ...... 6

        B.    Under the Softel Factors, the Recording Should Not be Precluded ........................... 9

CONCLUSION ....................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Ali v. Dainese USA, Inc.,*
   577 F.Supp.3d 205 (S.D.N.Y. 2021) ........................................................................................8

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.,*
   769 F.Supp.2d. 269 (S.D.N.Y. 2011)........................................................................................5

*Design Strategy, Inc. v. Davis.,*
   469 F.3d 284 (2d Cir. 2006) ....................................................................................................7

*Google LLC v. Starovikov.,*
   2022 WL 16948296 (S.D.N.Y. 2022)......................................................................................6

*Hassoun v. Searls.,*
   524 F.Supp.3d 101 (W.D.N.Y. 2021) ...................................................................13, 16, 17

*Johnson v. H.K. Webster, Inc.,*
   775 F.2d 1 (1st Cir. 1985) ......................................................................................................17

*Lujan v. Cabana Management, Inc.,*
   284 F.R.D. 50 (E.D.N.Y. 2012)...............................................................................................6

*Outley v. New York,*
   837 F.2d 587 (2d Cir. 1988) ....................................................................................6, 13, 17

*Peerless Network, Inc. v. AT&T Corp.,*
   2022 WL 3700141 (S.D.N.Y. 2003).......................................................5, 7, 9, 17, 18

*Rao v. City of New York,*
   2023 WL 3688107 (E.D.N.Y. 2023) ....................................................................................13

*Raymond v. Mid-Bronx Haulage Corp.*
   2017 WL 1251137 (S.D.N.Y. 2017)......................................................................................18

*Ritchie Risk-Linked Strategies Trading (Ir.) Ltd. v. Coventry First LLC,*
   280 F.R.D. 147 (S.D.N.Y. 2012) .......................................................................................5, 6

*Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.,*
   118 F.3d 955 (2d Cir. 1997) ..........................................................................................5, 9, 18

*Update Art, Inc. v. Modiin Publ'g, Ltd.,*
   843 F.2d 67 (2d Cir. 1988) ......................................................................................................6

**Rules**

Fed. R. Civ. P. 26...................................................................................................5

Fed. R. Civ. P. 26(e)...............................................................................................5

Fed. R. Civ. P. 37.............................................................................................5, 6, 8

Fed. R. Civ. P. 37(c)................................................................................................7

Fed. R. Civ. P. 37(c)(1) .........................................................................................13

Plaintiff/Counterclaim Defendant Sarah Goolden ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant/Counterclaim Defendant Hamed Wardak ("Defendant")'s motion for discovery sanctions (the "Motion").

## PRELIMINARY STATEMENT

Defendant fails to demonstrate any basis for the extraordinary remedy of sanctions surrounding Plaintiff's disclosure of a video recording ("The Recording") that Plaintiff alleges she discovered towards the conclusion of fact discovery. Defendant's request that the Court preclude the Recording and the claims to which the Recording relate would be patently unfair, as the Recording is significantly relevant to Plaintiff's claims and to Defendant's Counterclaim. It is indisputably an important piece of evidence. The Recording, attached as Exhibit Q to Defendant's Declaration in Support (Dkt. No.201), consists of an apparent exchange between the parties, Ms. Goolden and Mr. Wardak, on July 8, 2018, a short time after Plaintiff alleges that Defendant raped her in the early hours of July 7, 2018.  In the Recording both parties make statements that are clearly relevant to the facts at issue in this case.

Now Defendant seeks to preclude this important piece of evidence based on Plaintiff's late production of same.  Defendant's distorted depiction of the circumstances surrounding the production of the Recording is merely an attempt to divert the Court's attention and needlessly prolong this litigation. Defendant aims to skew the Court's focus towards a narrow and distorted narrative rather than an analysis of the broader context and history of this proceeding. This approach lies in contradiction to the courts' analyses when addressing the question of preclusion and/or sanctions in response to delayed discovery productions.  Further, Defendant overlooks

several crucial facts: Plaintiff provided the Recording while fact discovery was still open; Defendant has had over a year to evaluate the contents of the Recording; Defendant had an opportunity for forensic examination of the iPhone on which the Recording was made and stored; Defendant had the opportunity to review additional items produced from the iPhone, albeit some duplicative; and Defendant deposed Plaintiff at length about the Recording and the iPhone on which the Recording was found. All of this was accomplished well in advance, possibly years before the scheduling of any trial on this case.

More importantly, Defendant neglects to acknowledge that the Recording's contents do not introduce any new facts or evidence of allegations asserted by Plaintiff many times over many years. Defendant has had years to prepare his defense and counterclaim in light of these allegations, and in the face of other discovery productions that contain similar evidence. Plaintiff has produced thousands of documents for the Defendant's review and consideration. A number of these items presented similar evidence to that portrayed in the Recording. None of the Recording's contents could have been a surprise to Defendant, especially considering he himself is featured therein and would have undoubtedly been aware of his statements and actions at the time the Recording was created.

## BACKGROUND

### I.    Procedural Background

Plaintiff commenced the instant proceeding by Complaint filed on July 5, 2019. (Dkt. No.1) In her Complaint, Plaintiff seeks four causes of action against Defendant – Assault, Battery, Defamation Per Se, and Intentional Infliction of Emotional Distress. Plaintiff's claims against Defendant arise from allegations of sexual assault of the Plaintiff by the Defendant on or about

2

late in the night of July 6th or early morning hours of July 7, 2018. By Motion filed on October 15, 2019, Defendant sought dismissal of the Complaint, which the Court granted in part, dismissing Plaintiff's defamation claim but preserving Plaintiff's claims premised on the alleged sexual assault. After Plaintiff sought dismissal of Defendant's counterclaim, on or around May 25, 2021, Defendant filed a Third Amended Answer, denying the allegations from Plaintiff's Complaint, and filing a Counterclaim. (Dkt. No. 105). In his Counterclaim, Defendant seeks one cause of action, defamation per se. Defendant's claim for defamation per se is premised on the following allegations: (1) that in or around May 2019 Plaintiff went to music venues in New York and told managers at those venues that Defendant had raped her, that Defendant is an illegal arms dealer, and that Defendant had threatened to kill her like his father had killed his mother. Third Am. Ans. and C-C at ¶ 18.

Since the Spring of 2021 the parties have been engaged in fact discovery exchanges - that is until Plaintiff produced the Recording on or around June 28, 2022.


II.     <u>Relevant Discovery Production</u>

Throughout the course of this proceeding, Plaintiff fulfilled Defendant's discovery demands through multiple productions. Defendant, on the other hand, failed to meet many of Plaintiff's discovery requests and produced a number of documents with several deficiencies. <u>See</u>, DeCarlo Decl. ¶ 2 and Exhibit A – Deficiency Notices. Ironically Defendant conceded that in May 2020 he had "lost" the phone he had been using in 2018. Defendant confirmed that neither he nor his attorneys had preserved the contents of that phone despite the parties being embroiled in litigation since January 2019. <u>See,</u> DeCarlo Decl. ¶ 3 and Court Transcript annexed as Exhibit B (p. 15 lines 4-14).

3

With regard to the Recording: during discovery Plaintiff provided Defendant with many documents that reflected similar evidence as that introduced by the Recording – those documents namely consist of Plaintiff repeating the statements Defendant made in the Recording to third parties and during her testimony in a previous Family Court proceeding.  In addition to providing thousands of pages of WhatsApp messages, texts, emails, and social media activity, Plaintiff also provided every phone number that she has been associated with since 2010 and authorized her provider to release and deliver any and all of her cellular phone and messaging records to Defendant, including those records covering the time period during which the Recording was created. See, DeCarlo Decl. ¶ 4 and Exhibit C - Plaintiff Authorization. On May 9 and 10, 2022, Plaintiff was initially deposed by Defendant's counsel.  On June 27, 2022, Plaintiff found and immediately produced the Recording while fact discovery was still open. Then, almost a year later, on May 1 and 5, 2023, Plaintiff was deposed at length specifically about the disclosure of the Recording. Despite the suboptimal timing of the production, Defendant still had the opportunity to review the Recording, examine its production, and prepare his defense accordingly with sufficient time.  Moreover, during a discovery hearing on September 14, 2023, Plaintiff's counsel consented to the preclusion of Defendant's deposition transcript, and any reference thereto, and offered to begin Defendant's deposition anew, so that Defendant could testify with the benefit of knowing the contents of the Recording. See, DeCarlo Decl. ¶ 6.  This would have placed Defendant in the exact same position he had been in prior to production of the Recording with ample time to have reviewed the Recording and related evidence and to prepare his defenses and counterclaim accordingly.

As such, Defendant has failed to demonstrate why the severe remedy of sanctions is justified.

**ARGUMENT**

I.    <u>Legal Standard</u>

Defendant has filed a motion for discovery sanctions pursuant to Fed. R. Civ. P. 37, based on Plaintiff's alleged violation of discovery obligations under Fed. R. Civ. P. 26.

Fed. R. Civ. P. 26(e) "requires a 'party who has made a disclosure … or who has responded to an interrogatory, request for production,  or request for admission' to 'supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or correct information has not otherwise been made known to the parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1) *Peerless Network, Inc. v. AT&T Corp.,* No. 15-CV-870 (VM) (VF), 2022 WL 3700141 at 4 (S.D.N.Y. Aug. 26, 2022). "Courts have 'broad discretion to determine the nature of any sanction that should be imposed under Rule 37, based on all the facts of the case.'" *Id.* (*quoting Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC,* 280 F.R.D. 147 (S.D.N.Y. 2012)).

Among other sanctions Defendant seeks to preclude claims to which the Recording relates and to preclude the Recording itself. "When determining whether to preclude late discovery, 'courts must consider: (1) the reasons for the delay in providing evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance.' (i.e. the *Softel* Factors). Fed. R. Civ. P. 37. *Id.* at *4 (quoting *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.,* 769 F.Supp.2d 269, 278 (S.D.N.Y. 2011)) (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997)).

The sanction of precluding evidence for failure to make disclosure or cooperate during discovery is a harsh remedy that should only be imposed in rare situations. Fed. R. Civ. P. 37, *Lujan v. Cabana Management, Inc.,* 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988)). More importantly, "before [granting] the extreme sanction of preclusion, the Court 'should inquire more fully into the actual difficulties which the violation causes and must consider less drastic responses.'" *Ritchie Risk-Linked Strategies* 280 F.R.D. at 157 (quoting *Outley v. New York,* 837 F.2d 587, 591 (2d Cir. 1988)).

II.   <u>Defendant's Motion for Sanctions Should be Denied in its Entirety</u>

A.  **Plaintiff's Disclosure of the Recording was Timely and Not Made in Bad Faith**

Defendant alleges that Plaintiff breached discovery duties due to the timing of the production of the Recording. Plaintiff promptly notified her counsel as soon as she became aware of the Recording. <u>See</u>, DeCarlo Decl. ¶ 5 and Exhibit D at 17:12-19. Plaintiff's counsel then immediately produced the Recording to Defendant. <u>See</u>, DeCarlo Decl. at ¶ 5. Defendant was given ample time to review the Recording and inquire about its disclosure.

In contrast, the court in *Google LLC v. Starovikov* imposed monetary sanctions when Defendants' attorney did not promptly alert the opposing party when he became aware of material evidence. Instead, the attorney purposefully misrepresented this information to leverage his client's position in settlement discussions and in discovery negotiations, knowing that the opposing party would not be able to meet his requests. No. 21CV10260 (DLC), 2022 WL 16948296 at 13 (S.D.N.Y. Nov. 15, 2022). The Court found that Defendants' attempt to negotiate a discovery plan which they knew could not be reciprocated was evidence of bad faith. The Court also found that throughout the course of litigation, Defendants had "engaged in a willful campaign to resist discovery and mislead the Court." *Id.* Consequently, due to their failure to

promptly disclose new material facts and their consistent pattern of willful conduct indicative of bad faith, the Court granted sanctions as warranted.

Sanctions are not appropriate when new material evidence is immediately disclosed to the opposing party upon discovery and there have been no previous acts indicating that Plaintiff was resisting discovery or misleading the Court. Defendant fails to demonstrate – because they cannot – that Plaintiff's conduct was willful, contumacious, or in bad faith. Although Rule 37(c) sanctions do "not require a showing of bad faith by the offending party," Defendant attempts to state that "Plaintiff withheld the Recording to ambush the Defendant" and prevent both parties from being on "equal footing regarding access to relevant records." *Peerless Networks, Inc.* at 4 (quoting *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296 (2d Cir. 2006)). This contradicts not only Plaintiff's deposition testimony, as detailed below, but also overlooks the rationale for withholding evidence that only strengthens Plaintiff's claims. Moreover, in *Peerless Networks, Inc.* Plaintiffs filed a motion to enforce a settlement agreement after fact discovery had closed and in support of the motion submitted an expert report that had material evidence not previously disclosed. *Id*. at 2. Defendants argued that they were prejudiced by Plaintiffs' untimely disclosure of the report and sought to have portions of the report precluded. *Id.* at 3. For the reasons further outlined below, Defendant cannot similarly argue that he has been prejudiced by Plaintiff's production of the Recording.

Plaintiff also complied with Defendants discovery requests detailing phone records. Plaintiff gave Defendant authorization to have any and all of Plaintiff's cellular phone records from July 3, 2018 through July 17, 2018. See, DeCarlo Decl. ¶ 3. and Exhibit C – Plaintiff's Authorization. The Recording falls within this time frame as it is purportedly from July 8, 2018. Plaintiff's willingness to comply with Defendant's discovery requests and her production of

thousands of documents - some of which contain evidence similar to the contents of the Recording itself - simply has no indication of bad faith.

Court decisions have illustrated that, even in cases where a party intentionally deletes relevant evidence, imposing a sanction to preclude that evidence is deemed excessively severe. Instead, a milder sanction may be considered appropriate. In *Ali v. Dainese USA, Inc.*, the Plaintiff deleted relevant notices, yet the Court considered several critical factors that weighed against the preclusion of the evidence. 577 F.Supp.3d 205, 227 (S.D.N.Y. 2021). The Court recognized that the plaintiff had deleted the relevant notices prior to filing her claims but noted the plaintiff had produced a substantial number of similar notices, and therefore, the circumstances did "not evince an intent to deprive Defendants or the Court of relevant evidence." *Id.* The Court deemed that imposing a lesser sanction by reopening discovery was sufficient to serve the purpose of Rule 37. *Id.* at 227-28.

Likewise, in the instant proceeding Plaintiff previously produced evidence similar to the contents of the Recording. Plaintiff did not delete the Recording or keep it hidden from disclosure until trial or through the entire life of the case, but instead produced the Recording to Defendant and the Court immediately upon its discovery. Thus, there is no indication that Plaintiff tried to deprive Defendant or the Court of relevant evidence. Moreover, the lesser sanction of reopening discovery is not an issue here as Plaintiff provided the Recording and the iPhone data on which the Recording was found while fact discovery was still open and was thoroughly deposed by Defendant about it.

Based on these facts, the Court should find that Plaintiff's disclosure of the Recording was timely, and that Plaintiff's conduct does not imply bad faith.

B.  **Under the Softel Factors, the Recording Should Not be Precluded**

If the Court finds that Plaintiff's disclosure of the Recording was untimely, then the Court

must consider the *Softel* Factors when determining whether to preclude the evidence: "(1) the

reasons for the delay in providing evidence; (2) the importance of the evidence precluded; (3) the

prejudice to the opposing party from having to address the new evidence; and (4) the possibility

of a continuance." *Peerless Network, Inc.* at 4 (citing *Softel, Inc.* 118 F.3d at 961).

*First*, Plaintiff sufficiently explains in her deposition testimony why she found the

Recording at the time she did. Defendant attempts to misrepresent several of Plaintiff's

statements about the Recording and the iPhone on which it was found. However, Plaintiff clearly

states and repeats the same facts. In her deposition testimony, Plaintiff repeatedly and

categorically stated that she was unaware that the iPhone holding the Recording was still in her

possession; (Q. If you had sought to get [the iPhone], what would you have needed to do? A.

You're asking me to speculate about something that didn't happen, so I'm not comfortable

speculating. A. I would have needed to know where it was or that I even had it. [114:10-24]; Q.

In or about July 2nd of 2021… did you look for the iPhone 10? A. I don't remember. Q. Did you

go to storage? A. No, but I didn't know my phone was in storage. [116:5-11]; Q. [W]hat did you

do to continue to search your records in or about August of 2021? A. I don't remember

specifically. Q. Did you look for your iPhone 10? A. I don't think so. Like, I didn't even know

that I had the phone. [120:1-9]; Q. [O]n February 15th of 2022… did you search for your iPhone

10? A. No, because I didn't know that I had the phone. [121:2-7].

Plaintiff also repeated and clearly stated that she didn't know that the Recording itself

still existed. (Q. Did you provide your counsel with the video recording? A. Not that I recall, no.

Q. Why not? A. I don't think I had it. I don't think that I knew that I had it. Q. What do you

mean you don't think you knew that you had it? A. I forgot that I had the video. I thought it

had been deleted. Q. What do you mean you forgot you had the video, you thought it had been

deleted? A. Exactly that. Like, I didn't think that I had this video anymore. [70:23-24-71:12];

Q. Did you understand that [the Recording] that's something that would need to be produced in

the case? A. Yes. But I wasn't aware that I had it. Q. Why were you not aware that you had it?

A. I just, like, didn't know that I had it. [77: 12-16]; Q. Did you search for [the Recording]

anywhere else, besides the hidden folder? A. I wouldn't say I was searching for the video

because I didn't think the video existed …. It wasn't until I was in the hidden folder that I came

across the video. [45: 3-9]).

      And Plaintiff repeated that she wasn't aware that the Recording, which she thought didn't

exist, could be found on the iPhone that she thought was missing. (Q. When did you put them

[incl. the Recording] in a hidden folder? A. I don't remember. Q. Was it after you came across

the phone when you were searching for summer clothes? A. Oh, no. No. No. This was, like,

years prior. Like, years prior. Q. [D] you recall having a moment where you sort of did this,

like, "I'm going to move them to a hidden folder" or was it just, like, sort of as each thing

popped up? A. I don't recall. I, like, completely forgot that there even was a hidden folder. I

don't recall. [37:15-38:11]; Q. What did you look in on the phone before you looked in the

hidden folder? A. I looked at, like, everything. I looked at the text messages because then I

thought, "Oh. It must have been a text message." And then I looked through the pictures. There

was nothing there and I – I didn't think I could find it. And then I looked a few times and I

didn't even realize there was a hidden folder. And then, eventually, I found the hidden

folder and then I came across the contents." [35:18-36:5]).

*Second*, the Recording is undeniably an important piece of evidence that directly supports Plaintiff's claims and refutes allegations made in Defendant's Counterclaim. In the Complaint, Plaintiff states that she told Defendant "that the proposal was a bad idea, and that she could not go through with the marriage." Compl. ¶ 41. Defendant "brushed off [Plaintiff's] feelings and concerns, and told [Plaintiff] as-a-matter-of-fact, that she was 'locked in now' because she had already said, 'Yes.'" Compl. ¶ 42. After the night of the proposal, Defendant yelled at Plaintiff, "It's a romantic night," and, "You should want to be alone with your fiancé." Compl. ¶ 45. Defendant also screamed at Plaintiff, "telling her that she was a terrible person because she did not show him any affection." Compl. ¶ 46. These facts are directly supported by statements Plaintiff made in the Recording: "I changed my mind. I got freaked out and stressed out. It was a lot at once and I needed, I need time to think about everything. It's too much. It was really irrational. It was really intense. And I just need a little bit of time. I feel really bad. I don't feel right accepting the ring right now." (00:09). Defendant becomes increasingly angry and threatens to sue Plaintiff because he wants to teach her a lesson and force her to accept the engagement: Plaintiff: "Can you sue me? Like you told me your intentions were normal and now you're using this and like trying to hold me hostage and blackmail me." Defendant: "I'm sorry. You made me do this. You said, you're sorry. You're gonna try to make this work in the morning. You're fucking crazy. Again. I'm going to teach you a fucking lesson now." (00:51-1:00).

The most critical point in the Recording is when Plaintiff explicitly says to Defendant, "You raped me." (03:53). Defendant does not deny this. Instead, Defendant responds with, "I'm sorry. You raped me. You didn't give me. You, like, you never gave me love. You held me hostage." (03:57). Disturbingly, Defendant attempts to assert that Plaintiff's refusal to have sex with him correlates to Plaintiff raping him. He further tries to turn Plaintiff's own words about

11

being held hostage by Defendant to state that it was Plaintiff who was holding Defendant hostage

because she did not want to have sex. Defendant continues to question Plaintiff, making it

abundantly clear that he was frustrated and upset that Plaintiff did not want to have sex with him:

"Why didn't you give me sex? Why didn't you wanna have sex with me?" (04:05). Not once

after being told "you raped me" did Defendant deny the allegation as he does several times in his

Counterclaim. These statements from the Recording validate several critical facts of the

Complaint and refute Defendant's repeated denial of rape, sexual assault, or battery.

Additionally, in support of his Counterclaim for defamation *per se*, Defendant alleges that

statements Plaintiff allegedly made to others, including that Defendant's father killed his mother,

were part and parcel of a "whole-cloth fabrication by [Plaintiff]." Third Am. Ans. and C-C at ¶

18.  However, his own words in the Recording prove otherwise: "my father killed my mother"

(09:55); "I recognize my father's moral failures. I don't excuse it. He killed my mother, Sarah

Goolden." (20:46). These statements clearly underscore the profound significance of this

Recording as it relates to Plaintiff's and Defendant's allegations.

Finally, Defendant has made a concerted effort to create the impression that Plaintiff was

solely interested in his financial resources. Throughout his Counterclaim, Defendant repeatedly

emphasizes that Plaintiff purposefully fled with the engagement ring after breaking off the

engagement and specifically states the exact price of the ring numerous times. Third Am. Ans.

and C-C at ¶ ¶ 1, 5, 9, 38, 41. However, as established in the Recording, Plaintiff tried to give

Defendant back the ring, but he refused: (Plaintiff: "I think you hold onto this ring. (03:06) …

Defendant: "Oh no. That's not helpful." (03:09))

Considering the importance of this Recording, which substantiates all of Plaintiff's

assertions and contradicts those of Defendant, it is unsurprising that Defendant is prolonging

litigation in an effort to prevent the admission of the Recording and its contents. The Recording significantly weakens Defendant's claims while strongly backing Plaintiff's allegations.

The Recording not only offers evidence in what was essentially a test of Plaintiff's word against Defendant's but also enhances Plaintiff's credibility. Identical to *Outley*, the Court found that because the witness testimony would examine Plaintiff's word against Defendant (who has alleged that the incident never occurred) and bolster Plaintiff's credibility, the evidence "was so important, only extreme misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion in this case." *Outley* at 590-91. There is no evidence of extreme misconduct on Plaintiff's part and Defendant does not suffer extreme prejudice by the inclusion of the Recording. Therefore, the Recording is an important piece of evidence that should not be excluded.

*Third*, the most critical factor in determining whether to preclude evidence is whether Defendant suffered any prejudice. *Rao v. City of New York,* No. 14CV7422RPKLB, 2023 WL 3688107 at 2 (E.D.N.Y. May 26, 2023). "Rule 37(c)(1) allows for the imposition of sanctions based on the failure to timely supplement 'unless the failure is substantially justified or harmless.'" Fed. R. Civ. P.(c)(1). (quoting *Hassoun v. Searls*, 524 F. Supp. 3d 101, 111 (W.D.N.Y. 2021). Harmless means an absence of prejudice. *Id.* As detailed above, Plaintiff's disclosure of the Recording was timely given that it was produced immediately upon its discovery. However, if the Court finds disclosure of the Recording to be late, it should also find that the late disclosure is harmless since Defendant cannot demonstrate any prejudice. Defendant has had more than a year to assess and review the contents of the Recording and has had the opportunity to forensically examine the iPhone's data on which the Recording was discovered

13

and of the Recording file itself. Defendant has deposed Plaintiff at length about the production of the Recording and the iPhone on which the Recording was found on.

Moreover, the contents of the Recording reflect similar allegations that Plaintiff has repeated in previous litigations between the parties and throughout the history of this proceeding. The contents of the Recording are also reflected in some previous productions Plaintiff and non-party witnesses provided for Defendant's review during fact discovery.

For example, in June 2019 Plaintiff testified during a family offense proceeding she had commenced against Defendant in January 2019. In that testimony, Plaintiff stated:

> I explained to him that I did not want to be engaged to him. That it was
> a really extreme thing to get engaged. I wasn't comfortable. I did not want
> to be engaged. I tried to speak to him calmly. He did not accept that. He
> became enraged ….[t]hen he proceeded to blackmail me. Told me that I
> had two choices. Either I could marry him and be in his life in a good way,
> or I would not marry him, and be his enemy forever; that he would never
> stop harassing me. That he would ruin my life..
> <u>See</u>, DeCarlo Decl. ¶ 8 and Exhibit E, Goolden004340 (lines 15-23)

In various portions of the Recording taken on July 8, 2018, the Parties make statements similar to those described by Plaintiff in her family court testimony. In the Recording Plaintiff talks of her discomfort with the sudden engagement: "I changed my mind. I got freaked out and stressed out...Its too much. It was really irrational ...I don't feel right accepting the ring right now (00:09) … I understand that this looks bad. I changed my mind about wanting to get married right now (02:50) … I think you hold onto this ring (03:06) …I changed my mind about wanting to be in a serious relationship right now. It's not right. It's too much (06:41)".

In response to Plaintiff's desire to end their brief engagement and return the engagement ring, Defendant responds with refusals and threats: "No I'm sorry (00:37) ...You're not leaving me. I'm sorry (00:40) ... No, it goes this way or we're fucking going to war (03:34) … I'm not letting you do this ...You're gonna do this right. We're here. I'm not letting you embarrass me

14

(04:25) ...You're about to find out what my attorneys look like. I took on the Pentagon. It's fine. You shame me. I'm gonna show you … We go to court then … So you can see who got violated … You're criminal (09:55) … You fucked with the wrong family. You don't know who we are and this is not that's too much for me now … You need to respect me and know who I am and what my family is to this country and to the world. We're a very fucking important family. I'm from an important family. I'm an important person … You need to show me respect (14:56)".

Defendant has long been aware of Plaintiff's perception of the day and conversation during which Plaintiff alleges she ended the engagement and tried to return the engagement ring. Plaintiff's family court testimony was taken over four years ago in Defendant's presence and the transcript was produced during discovery. See, DeCarlo Decl. ¶ 8. Defendant had ample opportunity to prepare his defenses and counterclaim with knowledge of Plaintiff's prior testimony.

During discovery Plaintiff produced other documents that similarly reflect the substance of some of the conversation captured by the Recording. For example, in texts between Plaintiff and her father on July 10, 2018, labeled as Goolden007827-007828, Plaintiff texts "I have the ring still though ughhh … he would not let me return it … he freaked out." See, Exhibit F (Text at 4:07 pm). In a subsequent text Plaintiff repeats what Defendant had said to her during the July 8th recorded conversation - "His father murdered his mother." Id. (Text at 4:23 p.m.) see, Recording at 09:55 ("I don't care! My father killed my mother"); and at 21:04 (referencing his father, "he killed my mother").

Similarly, in a document production submitted to Defendant by non-party witness Alexandra Wu, text exchanges between Ms. Wu and Plaintiff on July 7, 2018 the morning after "the engagement" and the night during which Plaintiff alleges Defendant raped her, Plaintiff

writes to Ms. Wu: "I can't do this … This was a mistake … I am leaving now … I just can't do this … I'm leaving the ring and leaving … I can't do this … I can't this was a mistake … I don't like him … I'm scared … I'm going to leave the ring …" See, Exhibit G, WU 0006-0007.

When Ms. Wu inquires "Did you guys have sex?", Plaintiff responds "I literally cried … And told him to stop … And I was scared he was trying to get me pregnant bc (sic) he's that crazy." Id.

Defendant has had the texts between Plaintiff and her father since October 2021 and the Wu documents in his possession since November 2021, when Ms. Wu produced them. See, DeCarlo Decl. ¶¶ 9-10. Defendant has long been aware that Plaintiff alleged he sexually assaulted her after the night of the "engagement", that Plaintiff intended to return the engagement ring, that Plaintiff was scared of Defendant, and that Defendant had told her that his father had killed his mother. The Recording does not unveil any new allegations or new facts that would have taken Defendant by surprise or that he would have otherwise not been able to prepare for throughout the course of this litigation.

In *Hassoun*, supra, the petitioner asked the Court to impose sanctions on the respondent because of respondent's late disclosure of evidence that called into the credibility of a witness and the severe violation of failing to preserve video evidence contradicting Respondent's claim that Petitioner had threatened him. *Hassoun* at 112. Petitioner contended that further factual inquiry through testimony at deposition was "necessary to determine how [the spoilation] occurred and whether it was attributable to bad faith." *Id.* at 113. The Court did not order such additional discovery and did not impose sanctions because there was no prejudice to Petitioner since Petitioner would have had to prepare in the same way even if the evidence of the witness's credibility was disclosed beforehand. *Id.* The Court found that "Respondent's counsel's conduct

16

was, at a minimum, extremely careless, [but] the current posture of this litigation [did] not warrant the expenditure of judicial resources urged by Petitioner." *Id.*

Similarly, here Defendant would have had to prepare identical defenses and/or counterclaim even in the timely production of the Recording since the contents of the Recording did not allege any new fact or reveal any evidence that has not already been alleged for years by Plaintiff. See, *Peerless Network, Inc.* at 6 (finding that Defendant was prejudiced because if the evidence had been provided earlier then Defendant could have prepared differently since the contents had not been previously disclosed). Additionally, unlike in *Hassoun*, Defendant had the ability to depose Plaintiff about the Recording and the iPhone on which it was found and did so at length. The Recording was produced during fact discovery, long before any trial has been calendared on the case. Therefore, Defendant fails to demonstrate any prejudice suffered.

*Lastly*, a continuance is clearly available here, rendering Defendant's request for preclusion of the Recording unjustifiable. "The rules of discovery were not designed to encourage procedural gamesmanship, with lawyers seizing upon mistakes made by their counterparts in order to gain some advantage." *Outley* at 3. Identical to the facts in *Outley*, the Defendant seeks the most drastic remedy, preclusion, rather than requesting a recess or continuance. *Id.* See, *Johnson v. H.K. Webster, Inc.,* 775 F.2d 1, 8 (1st Cir. 1985) ("Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess…"). Likewise, Defendant's request for preclusion of the Recording and alleging that continuance is not possible is completely irrational given that the Recording was produced while fact discovery was still open and likely many months if not years before the scheduling of a trial date. Defendant simply cannot demonstrate how the preparation of his defenses and counterclaim would be altered in any way by the production of the Recording during fact discovery.

17

In *Peerless Network, Inc.*, the Court found that striking the relevant evidence "is a particularly harsh result…given the potential relevance of the information" as it relates to the claims at hand. *Peerless Networks, Inc.* at 6. The Court found that since a continuance to allow Defendant additional time to review the evidence and file a response was an adequate remedy, preclusion was not merited. *Id.* citing *Raymond v. Mid-Bronx Haulage Corp.,* No. 15-CV-5803, 2017 WL 1251137, at *10 (S.D.N.Y. Mar. 31, 2017) (finding preclusion of evidence "unwarranted" given "the availability of a brief and limited continuance" and the fact that the evidence at issue was "critically important"). It is also necessary to reiterate that here Defendant thoroughly deposed Plaintiff about the production of the Recording and the iPhone on which it was found. Whereas, in *Peerless Network, Inc.,* the Court denied Defendant's request to reopen depositions to allow questioning about the late disclosure of evidence. *Id.*

As detailed above, all four of the *Softel* factors weigh exceedingly in favor of not precluding the Recording or the contents of the Recording.

**CONCLUSION**

For the reasons outlined above, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety.

Dated: Brooklyn, New York
      November 30, 2023

Respectfully submitted,
C.A. GOLDBERG PLLC

By: _____

Aurore C. DeCarlo
16 Court Street, 33rd Floor
Brooklyn, NY 11241
Tel. (646) 666-8908
Email: aurore@cagoldberglaw.com
*Attorneys for Plaintiff*