UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SARAH GOOLDEN,

                             Plaintiff/
                             Counterclaim
                             Defendant,

          -against-

HAMED WARDAK,

                             Defendant/
                             Counterclaim Plaintiff.
------------------------------------------------------------------X

**19-CV-6257 (ALC) (VF)**

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge**

       Defendant/Counterclaim Plaintiff Hamed Wardak moved for sanctions against Plaintiff/Counterclaim Defendant Sarah Goolden pursuant to Federal Rules of Civil Procedure 26 and 37 for a discovery failure that Defendant contains was willful and egregious. See Def. Mot. for Sanctions, ECF No. 199. Plaintiff opposes motion. See Pl. Opp., ECF No. 202. For the following reasons, the motion is **GRANTED in part** and **DENIED in part**. Plaintiff is ordered to pay the reasonable costs and fees incurred by Defendant in filing the instant motion.

## BACKGROUND

A. Factual Background

       Sarah Goolden ("Plaintiff"), a resident of New York, was a working model and student at the time of the facts underlying this case. See Compl. ¶¶ 8, 11, ECF No. 1. Hamed Wardak ("Defendant") is a "self-made entrepreneur and an up-and-coming music producer." See ECF No. 105, at 12 ¶ 1. Plaintiff and Defendant met in 2010 and thereafter maintained a friendship for years. Compl. ¶ 12. In July 2018, Plaintiff and Defendant were in Miami for the Fourth of July. Id. ¶ 38.

1

On July 6, Defendant proposed marriage to Plaintiff "in front of his entourage." Id. ¶¶ 35, 38. Plaintiff felt "pressured" into accepting the proposal and feared that Defendant would physically retaliate against her if she declined, so Plaintiff publicly accepted his proposal. Id. ¶¶ 39-40. Shortly thereafter, Plaintiff tried to explain to Defendant that she "could not go through with the marriage." Id. ¶ 41. Defendant brushed her off, stating that she was "locked in now" because she had already said yes to his proposal. Id. ¶ 42. Later that evening, Defendant began to voice his displeasure with Plaintiff for her lack of affection towards him. Id. ¶¶ 45-46. Although Plaintiff tried to sleep, Defendant demanded that she "make love to" him. Id. ¶ 50. Plaintiff alleges that Defendant then "climbed on top of" her and "sexually assaulted" her. Id. ¶¶ 51, 53.

The next morning, Plaintiff confronted Defendant and told him that she "wanted nothing to do with him and did not want to be engaged." Id. ¶¶ 59-60. Later that day, Defendant told Plaintiff that he was going to "sue her and force her into bankruptcy with legal fees, murder her and her entire family, tap her phones, and have her followed and watched." Id. ¶¶ 65-66. Defendant also allegedly admitted to raping Plaintiff. Id. ¶ 73. After Plaintiff returned to New York, she claims that Defendant began to "severely harass, stalk, and defame" her. Id. ¶ 76. Defendant claims that Plaintiff defamed him by telling managers of music venues that Defendant had a "rape case" pending against him, that he is an illegal arms dealer, and that he threated to kill her like his father killed his mother. See ECF No. 105 at ¶ 18.

B. Procedural Background

Plaintiff commenced the instant action on July 5, 2019. See Compl. In her Complaint, Plaintiff asserts four causes of action against Defendant, all arising from Defendant's alleged sexual assault on or about July 6, 2018: (1) assault; (2) battery; (3) defamation per se; and (4) intentional infliction of emotional distress. See Compl. ¶¶ 2-4. On October 15, 2023, Defendant

2

filed a motion to dismiss. See ECF No. 13. On July 23, 2020, the Court dismissed Plaintiff's defamation claim but denied Defendant's motion as it pertained to Plaintiff's claims premised on the alleged sexual assault.[1] See ECF No. 32.

On October 7, 2020, Defendant filed his third amended answer and a counterclaim against Plaintiff for defamation per se. See ECF No. 105 at 16-17, ¶¶ 18-21. Defendant's defamation per se counterclaim alleges that Plaintiff maliciously, and with an intent to negatively impact Defendant's reputation, told club managers that Defendant had a "rape case" pending against him, that Defendant was an illegal arms dealer, and that Defendant's father killed his mother. See id. ¶ 18.

C. Relevant Discovery

In January 2021, the parties commenced fact discovery. On February 19, 2021, Defendant served his first document requests upon Plaintiff. See ECF No. 200 at 3. Defendant requested "[a]ll documents and communications concerning [Defendant], including all communications between [Plaintiff] and [Defendant] and all communications between [Plaintiff] and any other person concerning [Defendant]" and "[d]ocuments sufficient to show every telephone number used by [Plaintiff] from January 1, 2010 to present." See ECF No. 201-1 at 5, 11-12. In this request, "document" was defined to include "audio or video recordings." Id. at 5.

On March 19, 2021, Plaintiff responded to Defendant's document request. As is relevant here, Plaintiff indicated that she would "produce any responsive non-privileged and non-work product documents" in her possession that "can be located by a reasonable search." See ECF No.

---

[1] The Court granted Plaintiff leave to amend her Complaint, but informed Plaintiff that if no amended complaint was filed by the deadline, the defamation claim would be dismissed with prejudice. See ECF No. 32 at 19. Plaintiff did not file an amended complaint by the deadline and thus the defamation claim was dismissed with prejudice. See ECF No. 33.

3

201-3 at 3-4. Plaintiff's counsel, Aurore C. DeCarlo, signed the response on behalf of Plaintiff. Id. at 25.

On May 7, 2021, Plaintiff informed Defendant that "from approximately May 2018 through present [Plaintiff] has been associated with [one phone number] . . . [and] reserves her right to supplement this response to this interrogatory as her investigation . . . continue[s]." See ECF No. 201-6 at 16. Plaintiff's counsel, Aurore C. DeCarlo, signed the response on behalf of Plaintiff. Id. In response, Defendant sent a deficiency letter to Plaintiff noting that Plaintiff had "communicated with [Defendant] from numerous devices connected to numerous different phone numbers as she moved around the country and the world." See ECF No. 201-7. On July 2, 2021, Plaintiff responded that she did "not have access to any other devices." See ECF No. 201-8 at 2. This response was also signed by Aurore C. DeCarlo. Id.

On August 6, 2021, Defendant served Plaintiff with a second request for documents, including a request for "documents and communications concerning [a phone referenced in Plaintiff's document production as 'Old Phone from London'], including all . . . efforts by [Plaintiff] in or around May 2020 to preserve, collect, and search the electronically stored information on the Phone to produce [responsive] documents." See ECF No. 201-11. Plaintiff objected to the request on privilege grounds. See ECF No. 201-12. Defendant objected to this response. See ECF No. 201-13.

On May 9 and 10, 2022, Plaintiff was deposed by Defendant's counsel. See ECF Nos. 201-14, 201-15. During her deposition, Plaintiff testified that she had searched her "phone, computer, [and] email" for responsive documents and that she had four personal devices at the time of the document requests: a personal iPhone, work iPhone, computer, and iPad. See ECF No. 201-14 at 87-89.

4

On June 27, 2022, Plaintiff's counsel deposed Defendant for the first of two days. See ECF No. 201-16. Fact discovery was scheduled to close the next day, June 28, 2022. See ECF No. 151. After the completion of the first day of Defendant's deposition, at approximately 11:43 p.m., Plaintiff's counsel sent Defendant's former counsel a text message stating, "[w]e have to postpone the second day of the deposition. I will explain tomorrow and will call you in the morning. (No one is sick.)." See ECF No. 152. At 8:39 a.m. on June 28, Plaintiff produced an approximately 28-minute video recording that had not been previously produced by Plaintiff and had been on Plaintiff's old Apple iPhone X. See id. The recording is of a conversation between Plaintiff and Defendant that took place on July 8, 2018, approximately one day after the alleged sexual assault. See ECF No. 194-1 at 46; ECF No. 201-17.

After disclosure of the recording, Plaintiff and Defendant agreed to postpone the second day of Defendant's deposition. See ECF No. 156. Defendant requested a conference with the Court. See ECF Nos. 152, 156. The court held a conference on September 13, 2022, and September 28, 2022. See ECF Nos. 171-72. Following the September 28 conference, Plaintiff had a forensics expert examine the phone that contained the recording. See ECF Nos. 173, 175. The forensic expert concluded that Plaintiff's "Apple iPhone X was not in use after October of 2020." See ECF No. 175.

On May 1 and May 5, 2023, Defendant deposed Plaintiff regarding the late production of the recording. Id. At this deposition, Plaintiff described why she did not provide the recording earlier and how she discovered it in June 2022. Plaintiff testified that in October 2020, she had upgraded her iPhone X to the then-current iPhone model. See ECF No. 194-1 at 46; see also ECF No. 205-1. She migrated the data from her old phone to her new phone through the Apple migration process, where you place the old and new phone next to each other and the data is

5

transferred. See ECF No. 194-1 at 52-53. Plaintiff then put her iPhone X in a closet because she was no longer using it. Id. at 55. From October 2020 until the Plaintiff discovered the phone in May 2022, the phone moved from different apartments and storage units inside a suitcase with other stuff that belonged to Plaintiff. Id. at 26, 55. In May 2022, Plaintiff retrieved the suitcase where the iPhone X was stored from her storage unit, so that she could search for a particular dress that Defendant's counsel had asked about during her deposition. Id. at 32, 60-62. When she searched the suitcase for the dress, Plaintiff discovered the iPhone X. Id.

Upon finding the iPhone, Plaintiff did not turn it on or tell her attorney about it. Id. at 35. Plaintiff did not think the discovery of the iPhone was significant because she had already produced the files from her current phone, and she believed that "everything that was on" the old iPhone X "had transferred" to her current phone. Id. at 52, 104, 107. However, Defendant's deposition testimony on June 27, 2022, stating that he and Plaintiff had had intercourse prior to the engagement, "triggered" Plaintiff to remember having documented Defendant saying the opposite, that they had not had intercourse before their engagement. Id. at 17, 19. Plaintiff searched through a file of the documents provided to Defendant during discovery and then searched her pictures on her current iPhone for screenshots of texts or emails with Defendant. Id. at 22, 30-31. Plaintiff did not find anything in her current phone and then looked through her old iPhone X. Id. at 22-23. After searching through her pictures on the iPhone X, Plaintiff discovered that there was a "hidden" folder in her photo album. Id. at 21. Plaintiff found the recording in that hidden folder on her old iPhone X. Id. at 36. Upon discovering the recording, Plaintiff gave the recording to her attorneys. Id. at 40.

\* \* \*

On October 19, 2023, Defendant moved for sanctions against Plaintiff for her late production of the recording. See ECF No. 199. Plaintiff filed an opposition to the motion for

6

sanctions on November 30, 2023. See Pl. Opp. Defendant replied on December 14, 2023. See Def. Reply, ECF No. 204.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the duty to "supplement or correct" disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." See Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c) of the Federal Rules of Civil Procedure provides the applicable sanctions, if any, for a party's untimely disclosures under Rule 26. Under Rule 37(c), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 37(c) further provides that a court may "order payment of reasonable expenses, including attorney's fees, caused by the failure" to disclose or "may impose other appropriate sanctions." Fed R. Civ. P. 37(c)(1)(A), (C).

Despite the seemingly self-executing nature of the preclusion sanction contained in Rule 37, imposition of sanctions remains within the trial court's discretion; the text of the rule provides that, after affording the dilatory party an opportunity to be heard, the Court has the discretion to impose less severe sanctions. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006). Courts have "broad discretion" to determine the nature of any sanction that should be imposed under Rule 37, "based on all the facts of the case." AAIpharma Inc. v. Kremers Urb. Dev. Co., No. 02-CV-9628 (BSJ) (RLE), 2006 WL 3096026, at *5 (S.D.N.Y. Oct. 31, 2006) (citation omitted). When determining sanctions, courts properly consider a variety of factors, including the willfulness of the non-compliant party's violations, the efficacy of lesser sanctions, and the duration of the period of noncompliance. See Funk v. Belneftekhim, 861 F.3d 354, 366 (2d Cir. 2017).

The preclusion of evidence is a "harsh remedy," and thus "should be imposed only in rare situations." Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting Update Art, Inc. v. Modiin Publ'n, Ltd., 843 F.2d 67, 71 (2d Cir. 1988)); see also, e.g., Ebewo v. Martinez, 390 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."). "Before [granting] the extreme sanction of preclusion," a court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Outley v. City of N.Y., 837 F.2d 587, 591 (2d Cir. 1988).

It is Defendant's burden to show that the Plaintiff "failed to timely disclose information" to support Rule 37 sanctions. See Lee Valley Tools, Ltd. v. Indust. Blade Co., 288 F.R.D. 254, 260 (W.D.N.Y. 2013) (citing In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 124 (S.D.N.Y. 2007)). Plaintiff then bears the burden to prove that the late disclosure "was harmless or that there was substantial justification for the delay." See Peerless Network, Inc. v. AT&T Corp., No. 15-CV-870 (VM) (VF), 2022 WL 3700141, at * 4 (S.D.N.Y. Aug. 26, 2022).

## DISCUSSION

Defendant contends that the untimely production of the recording violated Federal Rule of Civil Procedure 26 and warrants sanctions under Federal Rule of Civil Procedure 37. See ECF No. 200. Defendant seeks preclusion of Plaintiff's claims; preclusion of his deposition testimony and a prohibition against any further attempt to depose Defendant; and preclusion of the recording.[2] See ECF No. 199 at 1. Defendant also seeks fees and costs. Id.

---

[2] Defendant requests that the Court preclude all of Plaintiff's claims that relate to the recording. See ECF No. 200 at 13, 16. Because the recording relates to the alleged sexual assault and because the remaining claims stem from the sexual assault, at bottom Defendant seeks the entry of a judgment in his favor.

8

The party seeking sanctions must show that its adversary failed to timely disclose information required by Rule 26. See In re September 11th Liab. Ins. Coverage Cases, 243 F.R.D. at 125. To meet this burden, the moving party must establish "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002)). Defendant claims that the production of the recording was untimely because Plaintiff failed to provide the recording for years despite repeated document requests seeking its production. See Def. Reply at 5. Plaintiff contends that her disclosure was timely because she produced the recording as soon as she was aware it existed, which was still while discovery was open. See Pl. Opp. at 6.

First, Defendant has established that Plaintiff had possession of the recording since the beginning of the discovery period. See ECF No. 194-1. Defendant issued document requests that would have required production of the recording, as early as March 19, 2021, 30 days after the service of Defendant's first request for production on February 19, 2021. See ECF No. 201-1 at 5, 11-12. Second, Plaintiff's untimely production was negligent, and negligence is sufficient to satisfy the requirement that she have acted with a culpable state of mind. See Residential Funding Corp., 306 F.3d at 108 (concluding that mere negligence satisfies "culpable state of mind" requirement for untimely disclosure of discovery); Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 330 F.R.D. 134, 138 (S.D.N.Y. 2019) (concluding that the non-compliant party acted negligently by failing to timely produce meeting minutes that were responsive to moving party's prior discovery requests). Third, as discussed further below, the

9

recording is plainly relevant to Plaintiff's claims. Accordingly, Plaintiff's disclosure of the recording on the morning fact discovery was scheduled to close was untimely. Cf. Semi-Tech Litig. LLC v. Bankers Tr. Co., 219 F.R.D. 324, 324-25 (S.D.N.Y. 2004) (finding that disclosure of experts on the eve of the expiration of the discovery period was untimely because it was not sufficiently early enough to permit the opposing side to complete any additional discovery the new disclosure prompted).

Although some type of sanction is appropriate for Plaintiff's untimely disclosure of the recording, an analysis of the Softel factors does not warrant the harsh sanctions Defendant seeks here. More specifically, preclusion of Plaintiff's claims, preclusion of the recording, and preclusion of Defendant's deposition are not appropriate sanctions. When determining whether to preclude late discovery, courts consider the so-called Softel Factors: (1) the reasons for the delay in providing evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997).

First, Plaintiff has offered a credible reason for her delay in producing the recording. Plaintiff testified that prior to hearing Defendant's deposition testimony, she simply did not realize that she had the recording in her possession or that the "video existed." See ECF No. 194-1 at 45, 70-71. As a result, she never specifically searched for the recording in response to Defendant's document requests. See id. at 45. The forensic expert's investigation corroborates Plaintiff's testimony. He confirmed that the iPhone X had not been used since October 2020, which is consistent with Plaintiff's testimony that she had stopped using the phone then because she had obtained a new iPhone and had transferred all her data to that new phone. See ECF No.

10

194-1 at 46, 49-50, 55; ECF No. 175. Further, even after finding the iPhone X in May 2022, when she was searching for a dress, Plaintiff credibly explained why she did not turn over the phone then. At that point, Plaintiff did not think to do anything with the phone because she believed that all of the data from that phone had been transferred to her new iPhone and she had already produced the data on her new phone to Defendant. See ECF No. 194-1 at 77, 102, 107-108. In short, at the time of Defendant's document requests, Plaintiff could not have been expected to look for a phone she did not realize she had in her possession or for a recording she had forgotten existed, and thus her explanation for the untimely disclosure is entirely plausible.

The second factor, the importance of the evidence, weighs against preclusion of the recording as well. This is a case involving an alleged sexual assault, which as Plaintiff rightly argues, will require a jury to weigh Plaintiff's credibility against Defendant's credibility. See Pavel v. Hollins, 261 F.3d 210, 221 (2d Cir. 2001) (describing sexual abuse trial as a "'credibility contest,' in which the word of the defendant's alleged victims . . . would be set against the word of the defendant"). Given that the allegations in the complaint relate to private moments between Plaintiff and Defendant, the credibility of the parties is a central issue in this case. Plaintiff claims that the recording directly supports her claims and refutes allegations made in Defendant's counterclaim. Pl. Opp. at 1, 11-12. A review of the recording supports Plaintiff's argument. The recording would thus be relevant to key claims and issues of credibility at trial and its significance weighs strongly against preclusion. See Outley, 837 F.2d at 590-91 (concluding that court erred in precluding witness testimony due to late disclosure by plaintiff where "credibility was the crucial issue" in case, witness testimony was important, and moving party had not shown either "extreme misconduct" by plaintiff or "extreme prejudice" suffered by defendants).

Third, the prejudice suffered by Defendant, if any, does not justify the extreme remedies he seeks. The fact that Defendant did not have the recording prior to the first day of his deposition does not suffice to establish real prejudice because defendant was a participant in the conversation depicted in the recording. Defendant should thus have been aware of what he said on July 8, 2018. See Ampong v. Costco Wholesale Corp., 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021) (stating that "there will be no real prejudice" to receiving video footage of the incident at issue after the Plaintiff's deposition because "Plaintiff herself was present") (citing Hui Wang v. Omni Hotels Mgmt. Corp., No. 18-CV-2000 (CSH), 2019 WL 3852590, at *11 (D. Conn. Aug. 16, 2019) ("Plaintiff was necessarily present at her own 'slip and fall' . . . so has personal knowledge of the relevant facts giving rise to her claims)). Additionally, even though the recording was produced late, the recording itself does not change Plaintiff's theory of the case and does not require Defendant to change his defense of Plaintiff's claims. See Peerless, 2022 WL 3700141 at *5 (discussing how moving party was prejudiced because it could have prepared differently if the evidence was provided earlier); Softel, 118 F.3d at 962 (finding the late disclosure prejudicial because it would force the defendant to accommodate potentially significant shifts in the theories being offered against them at a very late date in the case).

Defendant also argues that he was prejudiced by the late disclosure because it caused him to have to investigate the recording and the circumstances of its non-production, which created additional costs. See ECF No. 200 at 15-16. But the costs incurred by Defendant in having to investigate the late production of the recording can be remedied with lesser sanctions short of preclusion.

Finally, the availability of a continuance weighs against preclusion. The fourth Softel factor "requires the Court to consider the appropriateness of granting a continuance, rather than

12

defaulting to the harsh remedy of dismissal." Gidora v. Howmedica Osteonics Corp., No. 16-CV-5774 (KMK), 2019 WL 1129127 at *4 (S.D.N.Y. Mar. 12, 2019). Here, discovery had not yet closed, and no trial date had been set at the time the recording was produced by Plaintiff. Additionally, Defendant has had 22 months to review the recording and was afforded an opportunity to depose Plaintiff about the recording over two days. See Raymond v. Mid-Bronx Haulage Corp., No. 15-CV-5803 (RJS), 2017 WL 1251137, at *10 (S.D.N.Y. Mar. 31, 2017) (finding preclusion of evidence "unwarranted" given "the availability of a brief and limited continuance" and the fact that the evidence at issue was "critically important") (citing Batstys v. Rothschild, 154 F. App'x. 260, 263 (2d Cir. 2005)).

In sum, given Plaintiff's credible explanation for the untimely disclosure as well as the other Softel factors, the harsh remedies sought by Defendant—the preclusion of Plaintiff's claims, the preclusion of the recording, and the preclusion of Defendant's deposition—are unwarranted. See Ali v. Dainese USA, Inc., 577 F. Supp. 3d 205, 225 (S.D.N.Y. 2021) (stating that dismissal of claims would be excessive even where misconduct was significant); see also Ayinola v. Lajaunie, 855 F. App'x at 30, 33-34 (2d Cir. 2021) (finding that district court abused its discretion by "issuing harsh sanctions where lesser efficacious alternatives are available"). Indeed, precluding Plaintiff's claims, which in effect would result in the entry of judgment in Defendant's favor, would provide an unfair windfall to Defendant given what was a negligent and inadvertent discovery failure. See Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO, No.18-CV-4476 (LJL) SLC), 2021 WL 1750866, at *12 (declining to impose a sanction

that "would amount to a disproportional 'windfall'"). Instead, any prejudice to Defendant can be remedied with an award of attorneys' fees and costs.[3]

The Court has the authority to shift discovery costs to Plaintiff, "so as to avoid burdening Defendant[ ] with costs [it] would not have incurred, but for Plaintiff['s] non-compliance with the discovery rules." Ritchie Risk, 280 F.R.D. at 162. The Court has broad discretion to impose sanctions, including reasonable expenses and attorneys' fees when a party without substantial justification fails to disclose information required by Federal Rule of Civil Procedure 26. Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274, 321-22 (S.D.N.Y. 2008) (awarding fees and costs incurred in connection with the sanctions motion, and explaining that "[c]ourts in this circuit have often awarded attorney's fees to sanction a party who disregards [its] discovery obligations") (collecting cases); Ritchie Risk, 280 F.R.D at 188 ("It is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking . . . discovery sanctions.").

Because Plaintiff's disclosure was untimely, Defendant is entitled to an award of costs and attorneys' fees in connection with the deposition of Plaintiff concerning the recording and in connection with the instant motion. And because Defendant's entire deposition will have to be redone, Defendant is also entitled to be reimbursed for the costs associated with the first day of his deposition on June 27, 2022.[4]

---

[3] Because Defendant has already been afforded a continuance to investigate the recording and depose Plaintiff, an additional continuance is unnecessary.

[4] At a discovery hearing held on September 14, 2023, Plaintiff consented to the preclusion of the deposition testimony given by Defendant on June 27, 2022. See Decl. of Aurore C. DeCarlo, ECF No. 203 ¶ 7. Plaintiff's counsel agreed to begin Defendant's deposition anew. Id.

## CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED** to the extent it seeks preclusion of the recording, preclusion of Plaintiff's claims, and preclusion of another deposition of Defendant. The motion is **GRANTED** to the extent it seeks preclusion of Defendant's deposition on June 27, 2022. Defendant's deposition will be redone in its entirety. Defendant's request for an award of attorneys' fees and costs is **GRANTED**. Plaintiff is ordered to pay the reasonable attorneys' fees and costs as discussed herein.

**SO ORDERED.**

DATED:   New York, New York
         May 8, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge