UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sarah Goolden, | **PLAINTIFF'S DECLARATION IN OPPOSITION** |
| Plaintiff, | **TO COUNSEL'S MOTION TO WITHDRAW AS COUNSEL** |
| V. | Case No.: 19-CV-6257 (ALC) (VF) |
| Hamed Wardak | |
| Defendant | |

**INTRODUCTION**

Plaintiff Sarah Goolden, appearing pro se for purposes of this motion only, respectfully opposes attorney Carrie Goldberg's, C.A. Goldberg PLLC, motion to withdraw as counsel of record in this case. Withdrawal should be denied because counsel has not demonstrated the "satisfactory reasons" or just cause required under Local Civil Rule 1.4 and governing case law. The record shows no irreconcilable breakdown in the attorney-client relationship beyond counsel's sudden and unilateral attempt to renegotiate the contingency fee agreement at this late stage of the proceeding. The purported breakdown is a fee dispute that counsel herself created. Fee disputes are not proper or valid justification for counsel of record to withdraw from a contingency case and counsel has no valid grounds for withdrawal under New York law. Counsel voluntarily took this case on a contingency basis and cannot withdraw due to a fee dispute that arose from counsel's attempt to unilaterally alter an established contingency contract. Allowing counsel to abandon the case at this late stage after five years of productively and cooperatively working together and with discovery nearly complete would severely and irreparably prejudice Plaintiff by jeopardizing case deadlines and forcing Plaintiff to secure new representation on the eve of dispositive motions and trial preparation. Plaintiff believes that securing a new counsel at such a late stage would be extremely difficult if not impossible and made even more impossible by counsel's unreasonable and audacious requests for a charging lien attached to this case. Any request by counsel to attach a lien to this case upon her withdrawal should be denied as a matter of law based on counsel's unjustified and unreasonable request to withdraw. For these reasons, the motion to withdraw should be denied in its entirety.

**STATEMENT OF FACTS**

1. Attorney Carrie Goldberg has been an attorney of record on this case since April 28, 2020.

2. In April, 2020 Plaintiff retained C.A. Goldberg PLLC as counsel on a contingency fee basis. The signed retainer agreement states "The scope of the representation will include representing

plaintiff in SDNY case Goolden v Wardak Case No. 1:2019cv06257." The retainer can be provided for in camera review.

3. Under this contract, in exchange for legal services C.A. Goldberg PLLC required Plaintiff to agree to pay a significant 40% of any recovery plus all expenses incurred.

4. A motion to withdraw due to a fee dispute is not permitted, arbitration is the appropriate remedy. As required by Part 137 of the Rules of the Chief Administrator of the Courts, the contract includes an arbitration clause for fee disagreements. "You have the right to arbitrate any fee disputes."

5. Attorney Aurore DeCarlo was also an attorney of record on this case through C.A. Goldberg PLLC until she left the firm in January 2024.

6. Following DeCarlo's departure, in early 2024 Aaron Stark was introduced as the new attorney handling the case with Carrie Goldberg on behalf of C.A. Goldberg PLLC.

7. On May 8, 2024, this Court issued an Opinion and Order directing Plaintiff to pay Defendant's reasonable Attorney's Fees related to Plaintiff's discovery violation in her delayed production of a video recording found in 2022 (for an additional deposition of Plaintiff, for the reimbursement of discovery costs associated with Defendants first day of deposition, and an instant motion). C.A. Goldberg PLLC has worked on handling all aspects of this discovery matter pursuant to the legal services contract.

8. Plaintiff worked in good faith to assist Aaron Stark of C.A. Goldberg PLLC with case matters, including the opposition to the Defendant's motion for attorneys' fees. After Stark's request in July 2024, plaintiff contributed hours of work over the course of the attorney's fee dispute matter to assist Stark; more details can be provided in camera.

9. In October 2024, Plaintiff retained Aurore DeCarlo through Incendii Law for the limited purpose of conducting a deposition. The scope of the retainer reads "solely to the extent of preparing for and conducting the deposition of Defendant and Counter-Plaintiff Hamed Wardak." This was done to assist Aaron Stark in getting up to speed on the case and to give him and Carrie Goldberg more time to focus on handling the fee dispute. This was done with the agreement of C.A. Goldberg PLLC. This contract can be provided in camera.

10. On March 3, 2025 the Defendant submitted a motion for attorney's fees. This motion was expected as the parties have submitted filings and held conferences about this matter, and a scheduling order had already been set.

11. On March 4, 2025, almost immediately after Defendant filed his motion for attorney fees, Plaintiff received an email from Aaron Stark and Carrie Goldberg with the subject line "Need to Pay Hourly– Motion for Attorney Fees," demanding that Plaintiff pay an hourly rate for their further legal work on this discovery matter, despite their existing contingency legal contract.

12. Plaintiff declined to alter their existing contract and pay an hourly rate for legal services. This was not a breakdown in relationship. Plaintiff responded promptly and courteously and in two emails suggested speaking on the phone in an attempt to solve the matter, to which counsel declined. Plaintiff wrote in an email on March 4th at 10:05 a.m. "If you guys would like to discuss anything happy to jump on a call let me know." In her next email at 10:21 a.m. Plaintiff wrote, in regard to the fee disagreement, "I'm happy to talk about this issue, if you would like to figure out next steps about how to move forward." Emails can be shared for in camera review.

13. On March 6, 2025, less than 48 hours after Plaintiff declined to alter their contract and pay C.A. Goldberg PLLC on an hourly basis, Attorney emailed Plaintiff to inform her that she would be moving to withdraw from the case, in an email citing a "breakdown in attorney-client relationship." In the Attorney's email to Plaintiff she acknowledges that this decision was unexpected stating, "it may come as a surprise to you." She also stated that it was "a final decision" and that there was no room for negotiation. This email can be shared for in camera review.

14. The decision was sudden and shocking as no such breakdown occurred—Plaintiff has always responded promptly, professionally, followed instructions, and cooperated fully with counsel. There are no disagreements in terms of litigation or strategy. Plaintiff simply refused to unilaterally change the agreed-upon contingency pay structure. The conflict that Attorney notes in her filing by her own admission occurred after she alerted Plaintiff that she was withdrawing from the case.

15. On March 7, 2025 Attorney Carrie Goldberg filed a motion to be relieved as counsel along with Aaron Stark of C.A. Goldberg PLLC.

**LEGAL STANDARD**

Pursuant to Local Civ. R 1.4, an attorney of record may withdraw or be replaced "only by order of the Court," which will be granted **"**only upon a showing…of satisfactory reasons for withdrawal" along with consideration of "the posture of the case, including its position on the calendar, and whether or not the attorney is asserting a…charging lien." Whether to permit withdrawal is committed to the Court's sound discretion. In exercising that discretion, courts analyze both the reasons for withdrawal and the impact withdrawal will have on the timing and progress of the case. Even where an attorney articulates a facial reason – e.g. "irreconcilable differences" with the client – the court must assess if the reason rises to the level of *good cause* or "satisfactory" cause required by Rule 1.4. Courts also consider whether permitting withdrawal would disrupt the proceedings or prejudice any party. If withdrawal is allowed, the court may impose conditions to protect the client's interests, including denial of any charging lien where the withdrawal is without good cause.

**ARGUMENT**

# I. COUNSEL LACKS "JUST CAUSE" OR SATISFACTORY REASON TO WITHDRAW

Attorney Goldberg has not shown the required good cause for withdrawal. The sole basis offered – an alleged "irreconcilable breakdown" in the relationship – is belied by the circumstances. The timing and origin of the conflict demonstrate it is nothing more than a fee dispute of counsel's own making, not a fundamental disagreement over case strategy or client conduct. Counsel moved to withdraw only after Plaintiff refused counsel's demand to modify the agreed-upon and well-established contact. This type of dispute does not constitute "just cause" under New York law.

In Welch v. Niagara Falls Gazette "98-CV-0685E(M) " *Welch v. Niagara Falls Gazette*, 98-CV-0685E(M), (W.D.N.Y. Nov. 17, 2000) As the Western District of New York has explained, a client's refusal to accept an attorney's advice on a monetary matter – such as whether to settle a case – "is not good cause for an attorney to withdraw," since the decision ultimately belongs to the client.

Likewise here, Plaintiff's decision to hold counsel to their existing contract cannot be grounds for withdrawal. An attorney may not abandon a case simply because the amount of time spent litigating this case is taking longer than expected. *"An attorney may not withdraw simply because he later comes to believe that his client's case is [less valuable] than his evaluation when he first took the case."* The possibility that a client's case is taking longer and thus requiring more hours of work or additional expenses is a risk that an attorney takes when they agree to represent the client.

In the United States District Court for the District of New Jersey Camden Vicinage, McDaniel v. Sankyo Civil No. 17-3495(RBK/JS) the attorney's motion to withdraw from a contingency fee case was denied for this very reason, the opinion states:

"An attorney does not have the right to withdraw as counsel for his or her client at his or her whim. "A sudden disenchantment with a client or a cause is no basis for withdrawal." Rusinow, 920 F. Supp. at 72. An attorney has certain obligations and duties to a client once representation is undertaken, and the obligations in this respect "do not evaporate because the case becomes more complicated or work more arduous or a retainer not as profitable as first contemplated or imagined." Kriegsman, 150 N.J. Super. at 479-80. The fact that it will be expensive to litigate the case is not a surprise to counsel. They knew this when they undertook to represent Plaintiff. If counsel is now "scared off" by the prospect of paying for trial, counsel should not have undertaken the representation of plaintiff in the first instance. The Court will not countenance a situation where a lawyer is permitted to abandon a client who chooses not to settle."

An attorney who enters into a contingency fee contract must accept the inherent risk that the case may require more time and effort than initially anticipated. They cannot fabricate a "breakdown"

in the attorney-client relationship as a pretext to renegotiate the fee structure or withdraw from representation.

New York courts routinely distinguish between genuine cause for withdrawal and mere disputes that do not justify an attorney's departure. For example, withdrawal may be warranted when a client refuses to pay legal fees or willfully fails to cooperate to the point of sabotaging the representation. In those cases, courts have found an irretrievable breakdown because the client's conduct (nonpayment or noncooperation) fundamentally impedes the attorney's ability to continue. Here, by contrast, Plaintiff has not failed to meet any financial obligation – Plaintiff simply declined to accede to counsel's eleventh-hour attempt to alter the contingency contract and demand an hourly rate. This is not "nonpayment of legal fees" in any legally cognizable sense; it is enforcement of the very fee agreement both parties signed. Plaintiff has honored the retainer contract, and there is no claim that Plaintiff is refusing to pay costs or otherwise defaulting on any commitment. The only "breakdown" is that counsel's financial demands changed. Such a dispute, essentially over the attorney's compensation, does not rise to the level of just cause required to sever the attorney-client relationship. Indeed, courts have rejected withdrawal even when a client ignores an attorney's strategic advice or rejects a settlement, because ultimately the client controls those decisions and the attorney's remedy is not to quit absent serious cause.

Counsel's predicament here is entirely self-created and rooted in a fee disagreement, which is not the type of irreconcilable difference that warrants release from an attorney's obligations established in a contingency contract.

Moreover, counsel's generalized reference to "irreconcilable conflict" is too vague and unsupported to meet the burden of showing "satisfactory reasons." Local Civil Rule 1.4 requires a "showing by affidavit or otherwise" of adequate cause. Counsel's motion papers, however, do not detail any legitimate conflict that would make continued representation "unreasonably difficult" – the standard typically underpinning an irreparable breakdown. In her papers, Attorney Goldberg cites a conflict that arose after she notified the client of her decision to withdraw, with the ensuing dispute centering solely on the withdrawal itself.

Simply put, wanting a higher fee split is not a legally cognizable justification to withdraw from a case. If it were, any attorney could seek to abandon a contingent-fee client mid-litigation when a windfall fails to materialize, undermining the very premise of contingency arrangements. Both New York law and professional ethics forbid such an opportunistic withdrawal.

On this record, counsel has failed to demonstrate a *satisfactory reason* or good cause for withdrawal, as required. The Court should therefore deny the motion on this basis alone. In the matter of Jamie R., 30 A.D.3d 1008 (4th Dep't 2006) Attorneys may not abandon a case solely over a fee disagreement, particularly in contingency matters where the client depends on

representation for recovery. The court emphasized that withdrawal is only permissible for "good and sufficient cause," and a disagreement over fees does not meet this standard.

## II. ALLOWING WITHDRAWAL WOULD PREJUDICE PLAINTIFF AT A CRITICAL JUNCTURE

Even if counsel had a colorable reason, withdrawal should also be denied because it would severely prejudice Plaintiff given the advanced stage of this case. Discovery is nearly concluded (with the motion to oppose attorney's fee motion deadline looming) and the case is rapidly approaching the dispositive motion phase and trial preparation. Permitting counsel to withdraw now would likely delay the proceedings and place Plaintiff at an unfair disadvantage. Plaintiff would be forced to scramble to retain new counsel who must get up to speed on five years of complex legal work on the brink of its conclusion. This could require reopening or extending discovery, postponing motion practice, and generally disrupting the Court's schedule – all to Plaintiff's detriment. Courts in this Circuit have emphasized that withdrawal should be denied where it would cause such undue delay or prejudice. Indeed, when a motion to withdraw is made on the "eve of trial," it will "likely be denied" due to the prejudicial impact on the client and the proceedings. Even short of the trial stage, courts consider whether "the prosecution of the suit is likely to be disrupted by the withdrawal of counsel."

Here, the answer is yes. Withdrawal at this stage—after years of litigation, during the critical transition from discovery to trial preparation—would severely prejudice Plaintiff and make it extremely difficult if not impossible to secure new counsel. If a new counsel could be secured it would result in a delay in the case. Here, C.A. Goldberg PLLC has represented Plaintiff for five years and has been deeply involved in the case. Trial preparation is approaching, and finding new counsel at this stage is nearly impossible—especially with an outstanding lien on the case that counsel is seeking. A late-stage withdrawal during this critical stage of litigation leaves Plaintiff in a precarious position with little time to secure new counsel.

Importantly, the prejudice to Plaintiff is not speculative – it is all but certain. Plaintiff's current counsel has been involved throughout discovery and is intimately familiar with the facts, witnesses, and strategy. Replacing counsel now especially where the outgoing attorney has not identified successor counsel would leave Plaintiff temporarily unrepresented or with new counsel who must duplicate efforts already expended, potentially missing subtleties and losing momentum. Plaintiff may also incur additional expenses in securing new representation. Moreover, given that C.A. Goldberg PLLC has signaled an intent to enforce a lien on any recovery, Plaintiff would face extreme difficulty, if not impossibility, of obtaining substitute counsel. A new lawyer might be deterred by the prospect of splitting any eventual fee with prior counsel, or by the uncertainty of compensation if a lien clouds the recovery. This creates a further tangible prejudice to Plaintiff's ability to continue the case effectively. In short, granting withdrawal now would leave Plaintiff in the lurch at a pivotal stage, exactly the scenario the rules

are designed to prevent. Because Plaintiff's rights and the orderly progress of the case would be adversely affected, the Court should exercise its discretion to deny the withdrawal motion on prejudice grounds as well.

It bears noting that counsel's predicament is largely of her own making. The timing of this motion – coming right after Plaintiff refused to amend their existing contract, and near the close of discovery – suggests a strategic choice by counsel without regard to the case's schedule. Counsel could have sought to withdraw earlier if genuine issues existed, or, better yet, honored the fee contract through the completion of the case. To countenance withdrawal now would reward counsel's gambit at the expense of Plaintiff's case. Federal courts have refused to allow attorneys to walk away under similar circumstances. For example, in *Malarkey v. Texaco, Inc.*, counsel's motion to withdraw was denied because the case was ready for trial and withdrawal would prejudice the client. So too here: the late stage of the litigation militates strongly against relieving counsel.  In Cuadra v. Univision Communs., Inc., C.A. No. 09-4946 (JLL), 2012 U.S. Dist. LEXIS 48431, at *29 (D.N.J. Apr. 4, 2012) the motion to withdraw was denied in part because the case had been ongoing for three years and counsel was "uniquely aware of the facts, documents, and legal issues."

Plaintiff should not have to suffer a setback in the litigation or risk missing deadlines due to counsel's belated dissatisfaction with the fee contract. Equity and efficient case management both demand that counsel remain in the case through its conclusion (or until a smooth transition to new counsel can occur without harm).  Accordingly, the motion should be denied to avoid inequity and prejudice.

## III. IF WITHDRAWAL IS GRANTED, COUNSEL IS NOT ENTITLED TO A CHARGING LIEN

### Unjustified Withdrawal

Even if the Court were inclined to permit withdrawal (which it should not on the present showing), it should deny any request by withdrawing counsel for a charging lien or fee award. Under New York law, an attorney who withdraws from a case without good cause forfeits any right to compensation for services rendered, including the statutory charging lien under Judiciary Law § 475. The law is crystal clear on this point: where an attorney withdraws without good cause, his or her lien is forfeited. *Klein v. Eubank*, 87 N.Y.2d 459, 462–63 (1996). (Matter of Dunn, 205 N.Y. 398, 401; Fischer-Hansen v Brooklyn Hgts. R.R. Co., supra, at p 502; 3 N.Y. Jur 587, 588, Attorney Client, §§ 157, 158). "An attorney's charging lien may be lost if he voluntarily withdraws or is discharged for misconduct." *People v. Keeffe*, 50 N.Y.2d 149, 428 N.Y.S.2d 446, 405 N.E.2d 1012 (N.Y. 1980)

This rule prevents attorneys from abandoning clients for self-interested reasons and then reaping a financial reward for the work they chose to walk away from. Here, as discussed above,

Goldberg lacks just cause for her withdrawal – it is a voluntary departure prompted by a fee dispute. Accordingly, C.A. Goldberg PLLC has forfeited any claim to attorney's fees in this matter and should not be permitted to later assert a charging lien on any recovery Plaintiff obtains. Indeed, Local Civil Rule 1.4 itself anticipates this issue by requiring a withdrawing attorney's motion to state "whether or not the attorney is asserting a retaining or charging lien."

C.A. Goldberg PLLC has indicated an intention to preserve a lien on the case (per her motion papers and emails sent to client). However, given the lack of cause for the withdrawal, any such lien would be improper. Both New York state and federal courts consistently hold that an attorney who "without just cause neglects or refuses to proceed" with the representation cannot thereafter demand fees. Allowing a lien here would not only contradict that well-settled principle but also further prejudice Plaintiff. It would effectively reward counsel's unjustified departure by guaranteeing her a share of any eventual recovery, while Plaintiff and any new counsel bear all the ongoing risk and effort. This outcome would be fundamentally unfair.

By denying a charging lien, the Court will ensure that C.A. Goldberg PLLC does not profit from abandoning her client and will facilitate Plaintiff's ability to secure new counsel if necessary since the new attorney can undertake the case without fear of a reduced fee due to a prior lien. In sum, if withdrawal is allowed over Plaintiff's objection, the Court should expressly condition it on no charging or retaining lien attaching to Plaintiff's claims, and no fee recovery for C.A. Goldberg PLLC, consistent with New York law in cases of withdrawal without cause.

**An Attorney Who Withdraws Before Securing Any Recovery Should Not Be Entitled to a Charging Lien:**

A charging lien under Judiciary Law § 475 is intended to compensate attorneys for securing a financial recovery on behalf of their clients. Courts have ruled that an attorney who withdraws before obtaining a recovery may forfeit the right to assert a lien, particularly if the withdrawal is without just cause.

Here, C.A. Goldberg PLLC has not yet obtained a financial recovery in this case. Their withdrawal before securing a resolution weighs heavily against allowing them to maintain a lien. Moreover, this withdrawal appears to be voluntary and based entirely on a fee dispute, which is not a legally valid basis for withdrawal in a contingency-fee case under New York law. By attempting to alter the contract at the last minute and withdrawing when Plaintiff refused, C.A. Goldberg PLLC forfeited any right to assert a charging lien that would further harm Plaintiff's ability to secure representation and obtain a fair resolution.

**Charging Lien Would Prejudice Plaintiff's Ability to Secure Counsel:**

C.A. Goldberg PLLC has represented Plaintiff for five years, handling complex discovery disputes, motion practice, and key aspects of case preparation. Now, as the case transitions into

the trial preparation phase, the firm seeks to abandon representation at a critical juncture, leaving Plaintiff without legal counsel at a time when continued representation is essential while simultaneously placing a financial encumbrance on it that will make it virtually impossible for Plaintiff to secure new counsel.

Under New York law, an attorney's right to a charging lien is not absolute and may be denied or reduced if its enforcement would unfairly burden the client's ability to secure new counsel. Here, permitting a charging lien would create a substantial and unjust burden on Plaintiff's ability to retain new representation because:

### Timing of Withdrawal Severely Prejudices Plaintiff:

Trial preparation is one of the most resource-intensive stages of litigation. New counsel must review five years' worth of legal work, familiarize themselves with case strategy, and prepare for trial within a limited timeframe. The late-stage withdrawal makes it far more difficult to find an attorney willing to take on the case on a contingency basis, particularly when facing an existing lien that could diminish any potential recovery.

### A Charging Lien Will Deter Potential Attorneys from Taking the Case:

Attorneys considering taking over a contingency case at this stage must evaluate the financial viability of representation. If a lien remains in place, any potential recovery will first go toward satisfying C.A. Goldberg PLLC's claims, reducing the financial incentive for new counsel to take the case.Many attorneys will not assume representation if they are at risk of receiving little or no compensation due to a prior lien, particularly in a complex case approaching trial.

### Plaintiff Will Be Left Unrepresented at a Critical Moment in Litigation:

Without new counsel, Plaintiff will face extreme difficulty in litigating this matter alone, particularly given the demands of trial preparation, expert testimony, and evidentiary motions. Courts recognize that clients should not be placed in an impossible position due to an attorney's withdrawal, particularly when the withdrawal is not for just cause.

A charging lien in this case would effectively block Plaintiff from obtaining new counsel, forcing Plaintiff into an unfair and untenable position. Given that C.A. Goldberg PLLC has withdrawn voluntarily and without just cause, equity and precedent dictate that the Court should deny the lien entirely or significantly reduce it to avoid prejudicing Plaintiff's fundamental right to legal representation.

Even if this Court does not find that C.A. Goldberg PLLC acted in bad faith, the firm should not be permitted to maintain a charging lien because its enforcement would severely prejudice Plaintiff's ability to secure new counsel and fairly litigate this matter. In situations where an attorney withdraws after a lengthy representation and at a critical point in the litigation,

enforcing a charging lien would likely prejudice the client's ability to secure new counsel and proceed effectively with the case. Under such circumstances, courts may exercise their discretion to deny or reduce the lien to prevent unjust outcomes and ensure the client's right to fair representation is preserved.

## IV. C.A. GOLDBERG PLLC'S ARGUMENTS FOR WITHDRAWAL ARE UNFOUNDED

### Financial Hardship is Not Justifiable Cause:

C.A. Goldberg PLLC has asserted that ongoing litigation has imposed financial hardship on their "small law firm." However, they have not provided specific evidence demonstrating how this case has uniquely strained their resources. No significant new fees have been incurred in connection with this case for several years and the recent litigation has primarily involved the ongoing discovery dispute, with no substantial costs since the earlier stages of the case. Furthermore, the expenses incurred in this case align with those typically expected in discovery.

According to their official website, C.A. Goldberg PLLC describes itself as "the country's first law firm dedicated to justice for victims catastrophically injured by human maniacs and inhumane tech platforms." Since its founding in 2014, the firm has been "at the forefront shutting down some of the worst humans and platforms (e.g., Harvey Weinstein, Omegle, GirlsDoPorn) and have litigated some of the most influential cases – against Amazon, Snap, Meta – reining in the tech companies that thought they were above the law."

Given the firm's national prominence and history of securing substantial settlements, the claim of financial hardship due to this specific litigation lacks substantiation. Without concrete evidence detailing how this case has uniquely impacted their financial standing, the assertion appears inconsistent with their established reputation and resources.

Attorneys who agree to contingency fee contracts do so with the understanding that litigation can be prolonged, costly, and uncertain. By choosing this payment structure, they assume the financial risks in exchange for a potential payout if the case succeeds. Financial hardship alone is not "just cause" for withdrawal, as courts require that an attorney's departure not prejudice the client's ability to proceed, especially at critical litigation stages.

Under the New York Rules of Professional Conduct, an attorney seeking to withdraw must take reasonable steps to avoid foreseeable prejudice, including providing adequate notice and allowing time for the client to obtain new counsel. Instead of abandoning a case due to financial strain, attorneys should explore alternative solutions that do not jeopardize the client's representation. Given that contingency contracts inherently involve financial risk, an attorney cannot later cite financial hardship as a reason for withdrawal when those risks were knowingly assumed from the outset. Courts have consistently held that withdrawal is impermissible if it would result in material adverse effects on the client's interests.

## V. ATTORNEY'S ETHICAL OBLIGATIONS

New York law tightly regulates contingency fee contracts, and any midstream modifications to such agreements are subject to close scrutiny. Statutory law and court rules impose several requirements on contingent fee arrangements. Under New York's Rules of Professional Conduct (RPC), *"[a] fee may be contingent on the outcome"* of a matter (except where prohibited), but "promptly" after being retained, the lawyer must provide a writing stating the fee percentage for settlement, trial or appeal and other terms. Any modification of a contingent fee contract must still comply with these rules – an attorney cannot unilaterally impose a higher fee than allowed by law or the original contract. In fact, attempting to collect a fee not authorized by the retainer agreement is unethical, as it would be an "excessive" fee in violation of RPC 1.5(a) Agreements between attorney and client are strictly construed in the client's favor, so ambiguous or post hoc changes are not easily enforced.

Ethically, fee modifications during an ongoing attorney-client relationship are disfavored. New York case law has long held that when an attorney and client make a new agreement during the course of representation that benefits the attorney, the attorney bears the burden to show the arrangement is fair, reasonable, and fully understood by the client. This rule, originating in cases like *In re Howell* (Court of Appeals 1915) and *Baye v. Grindlinger*, recognizes the fiduciary nature of the relationship: once representation has begun, clients may be vulnerable to pressure from their lawyer. New York courts "carefully scrutinize" any midstream retainer changes that favor the lawyer.

The same is true here. Attorney attempted an eleventh-hour fee hike right after opposing counsel's motion for attorney's fees was submitted. Attorney has been representing Plaintiff about this ongoing dispute since 2022. If this dispute were subject to a new contract then counsel would have established a new retainer then, instead they continued to work on the matter for years.

The NYCLA and other ethics committees have routinely ruled that a lawyer may not unilaterally change the terms of a retainer agreement in a way that is disadvantageous to the client.

Attorney should be well aware of the ethical constraints governing attorney conduct, particularly in contingency cases. The Attorney's attempt to unilaterally change the pay structure and her decision to seek withdrawal and abandon the case at a critical stage, after five years of litigation, and her demand for a lien on the case despite her voluntary departure, demonstrate conduct inconsistent with her obligations under the law.  Given her knowledge, experience, and role as an officer of the court, she must be held to the highest standard of professional responsibility. Allowing an attorney to withdraw under these circumstances would set a dangerous precedent,

undermining the integrity of contingency fee contracts and unfairly prejudicing clients who rely on their counsel to see their cases through to completion.

Due to the reasons listed above, Plaintiff notified the Attorney of her consideration of filing a grievance complaint against her after the Attorney notified her of her decision to withdraw, but expressly stated that she would like to resolve the matter amicably instead.

### Arbitration clause of retainer for fee disagreements

The retainer agreement with C. A. Goldberg PLLC contains a clause about arbitrating fee disagreements. "You have the right to arbitrate any fee disputes pursuant to Part 137 of the Rules of the Chief Administrator of the Courts." "In the event of a fee dispute, you may have the right to seek arbitration; your attorney will provide you with the information regarding arbitration in the event of a fee dispute; or upon your request."

Arbitration over the fee disagreement was never sought, even though invoking the arbitration clause before considering withdrawal aligns with both contractual obligations and ethical standards. At the very least, arbitration should have been attempted prior to the attorney's abrupt and untimely withdrawal from the case.

## VI. REQUEST FOR RELIEF

C.A. Goldberg PLLC voluntarily entered into a contingency contract and continued to litigate this case for five years. The firm's attempt to unilaterally change the fee structure to an hourly rate was improper and unethical. Their decision to withdraw immediately after Plaintiff declined to alter their contract makes it clear that the fee dispute is the real reason for the withdrawal—which is not a valid legal ground. The timeline of events further demonstrates that C.A. Goldberg PLLC had no intention of withdrawing from the case prior to the demand to change the pay structure as Aaron Stark entered an appearance with the court as recently as January 29, 2024. C.A. Goldberg PLLC continued to actively litigate the attorneys fee dispute for nearly a year and sought the assistance of Plaintiff who happily obliged, further demonstrating that no breakdown in relationship occurred.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. **Deny the Motion for Withdrawal**, as there is no just cause for withdrawal in a contingency case. Additionally, abandoning this case at this critical point in litigation severely prejudices Plaintiff.
2. **If the Court Grants Withdrawal**, require C.A. Goldberg PLLC to complete the pending opposition to Defendant's motion for attorneys' fees before withdrawing.

3. **If Withdrawal is Granted, Deny the Request for a Charging or Retaining Lien**, as C.A. Goldberg PLLC's withdrawal is unjustified and would severely prejudice Plaintiff's ability to continue litigation.  The charging lien would severely prejudice the plaintiff by making it virtually impossible to secure new counsel at this late stage in litigation and severely prejudice Plaintiff's ability to fairly litigate the case. This would also reward an attorney for withdrawing at a critical stage of litigation and contradict established New York case law that limits charging liens when an attorney withdraws before securing a recovery.

4. **Schedule a Conference if Further Clarification is Needed**, where Plaintiff can provide supporting documentation in camera.

5. Plaintiff also asks for such other and further relief as the Court deems just and proper.

Respectfully submitted,

*Sarah Goolden*     3/12/2025

Sarah Goolden

Pro Se Plaintiff

215 Thompson St.

#125

New York, NY 10012

sarah.goolden@gmail.com

646-954-8077