UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SARAH GOOLDEN,**<br>Plaintiff/Counterclaim-Defendant,<br>V.<br><br>**HAMED WARDAK,**<br>Defendant/Counterclaim-Plaintiff. | **PLAINTIFF'S SUR REPLY IN FURTHER OPPOSITION TO COUNSEL'S MOTION TO WITHDRAW AS COUNSEL**<br>Case No.: 19-CV-6257 (ALC) (VF) |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO COUNSEL'S MOTION TO WITHDRAW**

**INTRODUCTION**

Plaintiff Sarah Goolden, appearing pro se for the limited purposes of this motion, submits this sur-reply solely to correct new misrepresentations and arguments introduced in Attorney Goldberg's reply brief. Plaintiff maintains that the original opposition fully addresses why this Court should deny the withdrawal motion or impose conditions to prevent undue prejudice. However, certain factual misstatements made in counsel's reply require clarification.

**I. THERE WAS NO "10-MONTH HISTORY OF THREATS"—THIS IS A FALSE ASSERTION**

1. Attorney Goldberg alleges that Plaintiff has been threatening arbitration for ten months. This is demonstrably false.
2. Plaintiff possesses written correspondence proving that arbitration was only mentioned once ten months ago in response to counsel's own fee dispute resolution clause in the retainer agreement.
3. Plaintiff never threatened arbitration but merely cited her contractual rights, as arbitration is the designated forum for resolving fee disputes per counsel's own contract.
4. The fact that Plaintiff and counsel continued working together for ten months after arbitration was first mentioned proves that no ongoing conflict existed. If there had been a true "breakdown," counsel would have sought withdrawal much earlier.
5. Counsel's continued work for nearly a year after the initial fee discussion proves that no irreparable breakdown existed until Plaintiff refused to pay an hourly rate again.

## II. THIS IS A FEE DISPUTE, NOT AN "IRRECONCILABLE BREAKDOWN"

1. Counsel is attempting to reframe a fee dispute as a fundamental conflict to justify withdrawal.
2. New York law does not allow attorneys to withdraw solely because they want to change the terms of a contingency fee contract.
3. Plaintiff refused to agree to counsel's request for hourly compensation—this does not constitute an "irreconcilable breakdown."

## III. ATTORNEY GOLDBERG'S HIRING OF AN "ETHICS ATTORNEY" IS MISLEADING

1. In her reply, Attorney Goldberg claims she had to hire an ethics attorney, seemingly implying that it was about concerns to Plaintiff's conduct in this proceeding. More details can be provided in camera.
2. However, this is misleading and serves to prejudice Plaintiff unfairly—Attorney Goldberg voluntarily retained an ethics attorney in 2022 and the concern was not about plaintiff's conduct in this proceeding.
3. Attorney consulted an ethics attorney three years ago and continued working on the case until present day. Any assertions that this led to a breakdown are untrue.

## IV. COUNSEL'S "DETOURS NOT A NORMAL PART OF LITIGATION" ARGUMENT IS INCORRECT AND MISLEADING

1. There is no "normal" course of litigation. Litigation is inherently unpredictable, and unexpected developments—including discovery disputes, newly found evidence, and procedural motions—are part of the legal process.
2. Discovery issues are common and arise in nearly every case. The Federal Rules of Civil Procedure provide extensive provisions for discovery disputes, sanctions, and supplemental disclosures, precisely because such disputes are a normal feature of litigation.
3. It is not unusual for parties to find evidence later in litigation.
    a. The Federal Rules explicitly allow for the supplementation of discovery under Rule 26(e), acknowledging that parties may later discover responsive information they had not previously identified.
    b. Courts have consistently ruled that late-discovered evidence, while sometimes sanctionable, does not constitute an "extraordinary" deviation from litigation. See Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988) (holding that late

   disclosures are sanctionable but "not unusual enough to be deemed outside the normal boundaries of litigation").
4. Attorney Goldberg continued working on this case for years after the discovery dispute—this undermines any argument that it was an unbearable "detour" warranting withdrawal.
5. If Attorney Goldberg truly believed this issue made continued representation untenable, she could have sought withdrawal at that time. Instead, she continued working on the case, confirming that this was not an insurmountable issue.

## V. COUNSEL'S "INDENTURED SERVITUDE" ARGUMENT IS LEGALLY AND FACTUALLY BASELESS

1. Attorney Goldberg voluntarily entered into a contingency fee agreement with Plaintiff—a contract she drafted and agreed to abide by.
2. Plaintiff is not demanding anything beyond what counsel contractually agreed to: to litigate this case on a contingency basis in exchange for 40% of any recovery.
3. The notion that requiring an attorney to honor their contractual obligations amounts to "indentured servitude" is absurd and legally unsupported.
4. An attorney has the duty of Zealous and Diligent Representation. New York Rules of Professional Conduct (NYRPC) Rule 1.3(a) states: *"A lawyer shall act with reasonable diligence and promptness in representing a client."* Commentary to Rule 1.3 explains that: A lawyer must "zealously advocate" for a client's interests. They cannot "abandon" a client simply because representation becomes difficult or unprofitable. Even in difficult cases, the lawyer has a duty to see the representation through to the end unless good cause exists for withdrawal.
5. Courts routinely deny withdrawal requests where an attorney attempts to walk away from a case simply because it has become more work than expected.
6. An attorney's dissatisfaction with the financial terms of a freely negotiated agreement does not constitute just cause for withdrawal.
7. If Attorney Goldberg's argument were accepted, every attorney handling a contingency case could unilaterally withdraw at will whenever a case became more time-consuming or expensive than initially expected, rendering contingency agreements meaningless.

## VI. WITHDRAWAL WOULD SEVERELY PREJUDICE PLAINTIFF, AND A CHARGING LIEN SHOULD BE DENIED IF WITHDRAWAL IS GRANTED

1. Withdrawal at this stage would leave Plaintiff unrepresented at a critical time in litigation and create severe prejudice.
2. Counsel's intention to assert a charging lien for "hundreds of thousands of dollars" would effectively prevent Plaintiff from securing new counsel, making withdrawal even more prejudicial.
3. New York law bars attorneys from asserting a charging lien if they withdraw without just cause. See Klein v. Eubank, 87 N.Y.2d 459 (1996) (finding that an attorney forfeits lien rights if they withdraw without justification).
4. If the Court permits withdrawal, Plaintiff respectfully requests that the Court deny any charging lien to prevent further harm.

---

**CONCLUSION**

Plaintiff reiterates her request that the Court **deny the motion to withdraw** in its entirety or, alternatively, **impose conditions**, including requiring counsel to:

- **Complete pending obligations** (such as opposing Defendant's attorney's fee motion).
- **Waive any charging lien** to allow Plaintiff a fair opportunity to secure new counsel.

Plaintiff thanks the Court for its consideration.

**Respectfully submitted,**

*Sarah Goolden* (signature)

**Sarah Goolden**
Plaintiff, Pro Se
215 Thompson St.
#125
New York, NY 10012
646-954-8077
sarah.goolden@gmail.com