UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH GOOLDEN,

        Plaintiff, Counterclaim-Defendant

-against-

HAMED WARDAK,

        Defendant, Counterclaim-Plaintiff.

19-CV-6257 (ALC) (VF)

AFFIDAVIT OF JOHN AARON STARK

John Aaron Stark, Esq. an attorney duly admitted to practice law in the State of New York, and before the Federal District Court of the Southern District of New York, does hereby make the following declaration pursuant to 28 U.S.C. § 1746:

1. I was formerly an attorney at the law firm C.A. Goldberg, PLLC, which is counsel for Plaintiff Sarah Goolden. I resigned my position as an attorney at C.A. Goldberg on October 28, 2025.

2. I submit this Affidavit in compliance with this Court's Order [ECF No. 271].

3. Incorporated herewith pursuant to this Court's Order [ECF No. 271] are the following:
   1. Exhibit 1— a listing of the cases cited in ECF No. 267 that I contend are correct citations.
   2. Exhibit 2—a listing of the cases cited in ECF No. 267 that are erroneous in some way, or do not exist at all.
   3. Exhibit 3—a table containing the contemporaneous time entries related to the drafting and filing of ECF No. 267.
   4. Exhibit 4—certificate of completion of CLE course re: use of AI.
   5. A Memorandum of Law in accordance with Local Rule 7.1.

4. On October 6, 2025, I filed a Memorandum of Law [ECF No. 267] in Opposition to Defendant's Motion For Attorney's Fees [ECF No. 236] pursuant to this Court's Order [ECF No. 266].

5. In preparing that filing, I employed the use of artificial intelligence, specifically the free program from *openai* known as Chat-GPT, to locate, and cite to, case law that purported to support Plaintiff's legal contentions.

6. On September 13, 2025, I began working on opposing Defendant's Motion for Attorney's Fees by reading Defendant's memorandum of law and beginning to conduct legal research by reading Federal Rule of Civil Procedure 37, and skimming cases cited by Defendant using our firm's standard electronic legal research tool, Westlaw Precision.

7. On September 14, 2025, I began drafting an opposition memorandum to Defendant's motion based on my understanding of the basic facts underlying the issue presented. I read this Court's Order granting attorney's fees (Doc. No. 208) and re-read Defendant's memorandum of law. I drafted a basic outline of the arguments to be made in opposing Defendant's motion based on my reading of this Court's Order, Federal Rule of Civil Procedure 37, Defendant's memorandum of law, and the cases that I had read on Westlaw.

8. On September 15, 2025, I continued working on the memorandum of law. In order to support the arguments I had begun drafting, I used the artificial intelligence application Chat GPT to locate cases that supported my legal arguments. I asked Chat-GPT to read Defendant's memorandum, which I copied and pasted into the application, and then asked it to draft an opposition memorandum making the arguments I had outlined and asked it to cite to cases from the Second Circuit and the Southern District of New York.

9. I copied several of the sections returned by Chat-GPT, which included the arguments I told it to make and case citations that purported to support my arguments, and pasted them into the Memorandum of Law I had begun drafting. I copied entire sections of argument and case summaries from what Chat-GPT generated and pasted them into my memorandum. From my recollection, I did a basic cite check of one or two of the cases cited by Chat-GPT, but did not cite-check the vast majority of the cases cited.

10. Next, I asked Chat-GPT to distinguish the cases cited by Defendant's memorandum from the discovery dispute. Chat-GPT returned a basic summary of several cases cited by Defendant's memorandum purporting to distinguish those cases, and I copied and pasted several of those summaries into my opposition memorandum.

11. On September 17, 2025 and September 19, 2025 I edited the drafted memorandum and reorganized and made formatting edits to the memorandum. I did not conduct any further reading or cite-checking of the cases cited.

12. On October 6, 2025, I conducted a final read over of the drafted memorandum. Again, I did not check any of the citations. I read over the Declaration of Aurore DeCarlo who was lead-counsel for Plaintiff at the time of the discovery violation and throughout the period in which litigation over the violation took place. I drafted a declaration of my own to submit with the memorandum and with Ms. Decarlo's declaration. I then sent the memorandum, my declaration, Ms. Decarlo's declaration, and the two exhibits to our firm's paralegal to be filed electronically through my PACER account.

13. I felt proud of myself that I had used a new technology tool to produce what I thought was a high-quality work product in an efficient manner that saved me a lot of time and

stress at a moment in my life and career when I was feeling emotionally overwhelmed having habitually ignored my own well-being for the sake of my clients.

14. On October 20, 2025, counsel for Defendant filed a Reply Memorandum [ECF No. 268] which indicated that a significant portion of the cases cited to in my memorandum [ECF No. 267] either misrepresented the cited case, or, did not exist at all.

15. On October 21, 2025, I first read Defendant's Reply memorandum and saw that Counsel indicated that my own filed Memorandum of Law [ ECF No. 267] was rife with incorrect and even fabricated citations. I immediately copied the case citation for one of the cases, pasted it into Westlaw and saw that the case did not even exist. I immediately felt sick as I realized what I had done and the implications it could have for my client, my employer's law firm, and my own professional career.

16. I immediately drafted a motion to strike my own filing, but before filing, Opposing Counsel agreed to stipulate to withdrawal of the offending document [ECF 267] and allow Plaintiff to file a corrected or proper memorandum. I agreed to compensate Defendant for the fees incurred in drafting their filed Reply memorandum [ECF 268] as well as the Reply memorandum they would have to re-draft. I immediately thereafter compensated Defendant $30,000.00, which Opposing Counsel indicated was and would be incurred as a result of my conduct. This amount is approximately 20% of my personal checking and savings.

17. On October 23 and 24, 2025 I drafted a substantially new Memorandum of Law in Opposition and had that draft reviewed by multiple attorneys at C.A. Goldberg before it was filed on October 27, 2025, in accordance with the stipulation agreed to by the parties. [ECF No. 270].

18. On October 28, 2025, I resigned from my position as an attorney at C.A. Goldberg and began to transfer the lead-counsel role of my caseload to other attorneys.

19. My conduct in utilizing an artificial intelligence application to locate and cite caselaw to this Court without appropriate review is a departure from the conduct expected of an officer of this honorable Court.

20. I have never used this method before in any other court filing and no other attorney at C.A. Goldberg has ever engaged in this prohibited conduct.

21. My conduct was also a violation of the policies of the law firm where I was employed. C.A. Goldberg has policies against using on AI for brief writing, and attorneys and staff often share reports and articles about court cases where other attorneys have used AI to their detriment. I never read those articles because I was too busy and knew I would never do something so ridiculous and stupid.

22. In preparing this Affidavit and accompanying Memorandum of Law I was forced to read several of these cases and have been demoralized to realize that had I read *any* of those

articles shared by my firm, this instant scenario would absolutely have been prevented.

23. As a Marine Corps Officer and an attorney of thirteen years, representing almost exclusively servicemembers and victims of sexual abuse, integrity is, and always will be, one of my most sacred values. This mistake has severely shaken me and is personally devastating.

24. I paid full financial compensation to Defendant, at significant personal financial detriment.

25. I enrolled in and completed a Continuing Legal Education (CLE) course specifically dedicated to the dangers of using Artificial Intelligence.

26. I re-engaged with a therapist to address my personal emotional health and have had three one-hour sessions as of this date.

27. I deeply regret this mistake and offer my most sincere apologies to my client, my former law firm, Opposing Counsel, and this honorable Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 13, 2025

At Milford, PA 18337

_____
John Aaron Stark, Esq.
Aaron@CAGoldbergLaw.com

Sworn to before me on this
13th day of November, 2025

_____
Notary Public, State of Pennsylvania, County of Pike.

Commonwealth of Pennsylvania - Notary Seal
MADELINE PORTUGAL - Notary Public
Pike County
My Commission Expires February 7, 2029
Commission Number 1305469