**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: April 29, 2026**

Plaintiff is directed to file the financial documentation provided to the Court on April 27, 2026, on the docket, under seal, with redactions to Plaintiff's social security number, Plaintiff's home address, Plaintiff's phone number, and the name and social security number of Plaintiff's dependent. Plaintiff's financial materials can only be viewed by the attorneys. Defendant's counsel is instructed that he cannot show his client this material. Plaintiff is directed to file by **May 1, 2026**.

April 28, 2026

**By ECF**

Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re:    **Sarah Goolden v. Hamed Wardak**
       **1:19 Civ. 06257 (ALC) (VF)**

Dear Judge Figueredo:

We represent the defendant and counter-claimant, Hamed Wardak ("Defendant"), in the above-referenced action.  We write in response to plaintiff Sarah Goolden's ("Plaintiff") April 20, 2026 letter (ECF No. 288), and the Court's memo endorsement filed on April 22, 2026, ("Memo Endorsement" (ECF No. 289)), granting "Plaintiff's request for an *in camera* submission of the financial documentation" supporting her claim of inability to pay the Court's Sanctions Payment Order.[1]  We further write in response to the e-mail communications between the parties' counsel and the Court on April 24, 2026 and April 27, 2026, in which the Court allowed Plaintiff to e-mail such financial documentation to the Court *ex parte*.  We further write in response to the Court's April 28, 2026, Order granting Plaintiff's motion for deferred enforcement of the Sanctions Payment Order until entry of a settlement or final judgment, based evidently on documents submitted to the Court *ex parte* (the "Deferment Order" (ECF No. 290)).

On April 9, 2026, Plaintiff filed a Letter Motion requesting that the Court stay indefinitely its order directing Plaintiff to make payment of the Sanctions Payment Order.  (ECF No. 286).  Defendant responded on April 16, 2026, opposing Plaintiff's Letter Motion.  (ECF No. 287.)  Plaintiff submitted a letter reply on April 20, 2026, requesting an *in camera* submission of her financial documents to be produced on an attorneys'-eyes-only basis, which the Court granted on April 22, 2026.  (ECF Nos. 288–89.)  On April 24, 2026, Plaintiff's counsel emailed the Court, requesting direction on how to send Plaintiff's financial documentation *ex parte* to the Court.  Defendant's counsel promptly objected to the *ex parte* submission.  On April 27, 2026, the Court permitted Plaintiff to e-mail Plaintiff's financial documentation "without opposing counsel copied." For the reasons set forth below, Defendant respectfully requests (i) reconsideration of the Deferment Order, and (ii) that the Court direct disclosure of the financial materials submitted *ex parte* by Plaintiff, subject to appropriate confidentiality protections and afford Defendant an opportunity to review and respond to such materials, or (iii) otherwise decline to consider any *ex*

---

[1] The "Sanctions Payment Order" refers to the Court's Order directing Plaintiff to make by payment of Defendant's attorneys' fees and costs awarded to him as a result of Plaintiff's discovery violation.  (ECF No. 285.)



*parte* submission and require any financial materials be submitted through a process that preserves Defendant's right to be heard.

First, the Court's Memo Endorsement was of a letter request to make an *in camera* submission of documents to be produced to defense counsel, not a request exclude Defendant from court proceedings in this case. Defendant understood the Court's Memo Endorsement to mean that the Court would review the materials under seal, but not that Defendant would be excluded from proceedings in his own case, and deprived of any opportunity to review or respond to Plaintiff's submissions and arguments to the Court. Plaintiff has not made a showing that would justify depriving Defendant of access to the materials underlying Plaintiff's request. To the contrary, Plaintiff requested that the documents be produced to Defendant's counsel on an attorney's eyes only basis. (*See* ECF No. 289 at 1 ("The information above is highly confidential and we designate it For Attorneys Eyes Only.").) That request is inconsistent with any claim that *ex parte* treatment is necessary.

Second, *ex parte* submissions are strongly disfavored outside narrow circumstances which are not present here. *See, e.g.*, *Aguilar v. Baton Corp.*, No. 25-CV-00880 (CM), 2025 WL 3523133, at *5–6 (S.D.N.Y. Dec. 9, 2025) (holding that *ex parte* review is "typically permitted only in narrow circumstances, including when statutory schemes require secrecy . . . or when national security or state secrets are implicated" and that "[o]utside the governmental context, . . . [*ex parte* submissions are] rare and generally involve unique circumstances where the court 'would have no basis upon which to resolve' the issue otherwise"). In *Aguilar*, the Court denied an *ex parte* request precisely because the movant failed to articulate a compelling basis to exclude the opposing party from reviewing and testing the submission. The same is true here. Plaintiff has made no showing, let alone the extraordinary showing required, that *ex parte* treatment of her financial documentation is necessary.

Plaintiff complains that she is "terrified" of Defendant having access to her "personal information," yet her own conduct belies any claim that extraordinary secrecy measures are warranted here. Plaintiff is pursuing false allegations against Defendant in an action that, as is betrayed further by her counsel's April 22 letter, comprises a cynical targeting of Defendant based on perception of his wealth. Plaintiff's actions undermine her claim. For example, as described in Defendant's Counterclaim (the "Counterclaim" (ECF No. 105)), Plaintiff sought out and traveled to various music clubs and venues where Defendant worked and had contracts with and "falsely and maliciously told managers and promoters that Wardak has raped her and that she had a pending rape case against him." (Counterclaim ¶¶ 57–60.) Whatever Plaintiff's position may be, those allegations at minimum undercut any suggestion that disclosure of financial records to counsel under a protective order creates some safety concern warranting *ex parte* treatment. Plaintiff's claim of fear of Defendant is further contradicted by the recording she withheld during discovery — for which this Court sanctioned her — that undermines the central allegation underlying her claimed fear.

In addition, Plaintiff's purported documentation and assertions already raise questions that require further scrutiny. She claims to lack resources, which claim appears at odds with travel she has undertaken during the litigation. She claims to lack family support, which claim appears at



odds with her marriage during the litigation.  An opportunity to receive and review any claimed evidentiary support for Plaintiff's claims is critical to determine the truth, or lack thereof, of such claims.

Third, there is no reason confidentiality concerns cannot be addressed through ordinary means, such as redactions, filing under seal, or producing the documentation on an attorneys' eyes only basis, under the Amended Stipulated Protective Order filed in this case (ECF No. 265). Further, Plaintiff has affirmatively placed her finances at issue in seeking relief from the Court's Sanctions Payment Order, yet information available to Defendant suggests Plaintiff's access to financial resources and support may be materially different from what has been represented.  For example, publicly available information reflects that Plaintiff's husband was recently indicted on charges involving alleged Medicare fraud.  Defendant does not raise those allegations for any purpose other than to note that they may bear on the existence, source, or disposition of financial resources potentially relevant to Plaintiff's claimed inability to pay.  At minimum, those circumstances underscore why Defendant should not be excluded from reviewing and testing Plaintiff's financial submissions through an *ex parte* process.

Lastly, Defendant has been previously excluded from proceedings in this case, with the result that, to an outsider so excluded, leaves questions unanswered.  During an *ex parte* communication with the Court, Plaintiff's counsel "indicated that she did not feel she could represent Plaintiff 'to a jury in a way that is going to lead to a successful outcome in this case . . .'"  Opinion and Order, at 8 (ECF No. 263).  Yet Plaintiff's counsel is continuing to litigate this case, per this Court's order, and presumably Plaintiff is not bearing the burden of any litigation costs, as Defendant bears to great extent by Plaintiff's continued obfuscation and delay.  The circumstances resulting from the prior *ex parte* proceedings have put Defendant in a position where he is burdened to defend false accusations from a Plaintiff for whom continuing litigation evidently poses no cost, per Court order.

For all of these reasons, Defendant respectfully requests (i) reconsideration of the Deferment Order, and (ii) that the Court direct disclosure of the financial materials submitted *ex parte* by Plaintiff, subject to appropriate confidentiality protections and afford Defendant an opportunity to review and respond to such materials, or (iii) otherwise decline to consider any *ex parte* submission and require any financial materials be submitted through a process that preserves Defendant's right to be heard.  We thank the Court for its consideration.

Respectfully submitted,

YANKWITT LLP

By: _____
Benjamin Allee

Cc:    All parties (by ECF)