# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | |
| GOOLDEN, SARAH, | : | Docket #1:19-cv-06257-ALC-DCF |
| Plaintiff, | : | |
| - against - | : | |
| WARDAK, HAMED, | : | New York, New York<br>March 15, 2022 |
| Defendant. | : | TELEPHONE CONFERENCE |
| -------------------------------------- | : | |

PROCEEDINGS BEFORE
THE HONORABLE DEBRA C. FREEMAN,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: C.A. GOLDBERG PLLC
BY: AURORE CIRCLE DECARLO, ESQ.
16 Court Street, Suite 2500
Brooklyn, NY 11241

For Defendant: LEX LUMINA PLLC
BY: RHETT OWEN MILLSAPS, II, ESQ.
745 Fifth Ave., Ste. 500
New York, NY 10151

CHAUDHRY LAW PLLC
BY: PRIYA CHAUDHRY, ESQ.
45 West 29th Street, Suite 303
New York, NY 10001

Transcription Service: Carole Ludwig, *Transcription Services*
155 East Fourth Street #3C
New York, New York 10009
Phone: (212) 420-0771
Email: Transcription420@aol.com

Proceedings conducted telephonically and recorded by electronic sound recording;
Transcript produced by transcription service.

same point, go ahead and stipulate to that. And you don't even need me to bless it. Okay?

MR. MILLSAPS: Okay. Thank you, your Honor.

THE COURT: Okay. If you want to move the deadline for the completion of all discovery, that might be another story.

Let's turn, then, to the more recent issue that came in about these earlier cases. I gather there were -- was it two earlier cases or three? There was a case --

MS. DECARLO: I believe --

THE COURT: -- there was case involving Ms. Marmand. There was a case involving Technologics, which may have been connected to that somehow. And is there -- oh, and with respect to Ms. Karsai, is that a separate lawsuit?

MS. DECARLO: Yes.

THE COURT: So it's three lawsuits, two of which might be connected?

MS. DECARLO: That's right.

THE COURT: Okay. All right, so let me start with this principle. If there is a protective order in another case, then before a party can do something that would violate that protective order, the Court that issued the

protective order should be involved. There should be a request to modify the protective order to allow the disclosure that's being sought. That application should be made to that Court that issues the order. All right? Another court should not get involved in saying, oh, yeah, yeah, yeah, that court's protective order doesn't matter. Okay? But that said, the protective order covers whatever the protective order covers. And generally, what a protective order covers, without having seen it, is information that may have been filed in that action. So whether it's filed under seal or just filed in general, whatever it is, there may be information that was filed in that case. It may cover information learned through discovery in that case that you would not have had in your possession or knowledge but for the discovery process in that case. It may cover testimony given in that case, so a transcript of testimony or something like that. But it generally would not cover facts, underlying facts that were known by a party to the case separate and apart from the case, not learned through the case, you know, not made available only through confidential documents but just in the person's knowledge, in the person's brain from beforehand because of lived experience.

So I'm not sure what the protective order -- what

the issue with the protective order really is when it comes to deposing someone about his own knowledge. If you were to ask questions, putting aside relevance and admissibility for a second, okay, if you were to ask a person a question like, "Tell me what was in this document that you got in discovery in that case," that would probably be a no if there's a protective order. Or, "Quote for me the testimony given in that case," also testimony is under seal, that's probably a no. But a question of, "What happened between you and this other person?" the facts that underlay the case, it seems to me is not something that would probably be covered by the protective order, anyway. You can't erase somebody's memory outside of -- you know, you can't erase somebody's memory. And you can ask about things, I would think, outside the parameters of what exactly is protected. All right? So you have to look at the protective order to see exactly what is protected. And if you have not sought relief from that protective order from another court, then in your questioning you would have to be careful that you are not impeding on that order, that you're not asking for something that would violate that -- cause Mr. Wardak to violate that order.

The separate question of relevance, this information may well be found to be inadmissible. I'm not

making that ruling. Okay? Propensity-type evidence in a civil case is generally not admissible, with limited exceptions. But admissibility does not determine discoverability. And in many, many cases we authorize discovery of topics that would ultimately be inadmissible or that may well be inadmissible. For example, in a case where -- this is just one of many examples -- in a case where somebody says, "I was the victim of an excessive use of force by a police officer upon my arrest," and they want to know every time that police officer had arrested anybody else and used force against anybody else, well, that may not be admissible at trial. But if it is substantially similar or, you know, we make a determination as to whether the alleged conduct was similar; you know, in both cases a person was lunged at and wrestled to the ground or something like that, if it looks sort of similar, we allow the discovery. What comes of it later is a matter for the trial judge to decide. But we, nonetheless, allow that type of similar conduct discovery in a civil case.

So it seems to me that with respect to allegations that bear some similarity to Ms. Goolden's accusations against Mr. Wardak, the discovery should be allowed even if it may not be admissible. But you should not be intruding on anything that's covered by a protective order

specifically without seeking relief from the other court that issued that order.

Now, I'm not sure what I'm leaving out of the mix with these three cases by giving you those general guidelines. Is there anything that would not be covered by what I just said where you would need additional clarity?

MS. CHAUDHRY: Thank you, your Honor. This is Priya Chaudhry for Mr. Wardak. And I appreciate the guidelines you've just given me, so I won't discuss with you the issues of relevance or admissibility. But one point that I believe the Court did not address in your analysis is that for the Marmand case, it is covered by a protective order. And the only reason that plaintiff is in the position to know about any of the underlying facts or even the existence of that case, and she has them, is they seem to have pierced the existing protective order. And so I think the analysis actually starts a step before, is when a party has gone around a valid court's valid protective order and has gotten fruits from that, there is, you know, something analogous to a fruit of the poisonous tree issue. They only have this information, things to ask about, is because they didn't go through the process and somehow got this information, anyway. And so that would be for both the -- for the Marmand case --

THE COURT: I don't know what information you're talking about. So the very fact that a lawsuit was filed is generally public. Okay? Usually it's public unless it's done as a Jane Doe, which maybe it was, but the fact that a lawsuit is filed is usually not itself confidential. So let's just assume for a moment -- or maybe somebody approached plaintiff and said, "I heard about your lawsuit. And I had an issue myself at some point in time," or something. Who knows? But if the information that plaintiff has was given to plaintiff's counsel or given to plaintiff, even if it's material that's under a protective order, the question is who violated the protective order and what should be the consequences of that.

It seems to me the Court that issued the protective order should be the one to enforce it and to sanction anybody if sanctions are warranted. It doesn't seem to me that you have -- maybe there is evidence -- it doesn't seem to me you have evidence that plaintiff, you know, went into the courthouse and copied documents that had a big flag on them that said "You shall not have these documents." And I don't know how counsel would have gotten access, anyway, that way because, presumably, if they're under seal, they're under seal. And just because you know about a case doesn't mean necessarily that you can't ask

questions about it.

Who do you think violated a protective order here? And how do you think that came to be? And what's your basis for thinking so?

MS. CHAUDHRY: Your Honor, in the Marmand case, in addition to the existence of that case, the plaintiff has already also turned over to us in discovery deposition transcripts which are the subject of the protective order. And we have no information that that court was addressed in receiving those. Mr. Wardak was certainly never given notice that anyone was seeking to unseal that case or gain access to the information that was sealed in that case. He certainly never went through any process through that, nor did he consent to that getting out. For that particular case we have asked Ms. DeCarlo how she came into possession of those.

And it is our position that unless she went to that court that sealed it, she cannot have possession of it and she cannot be using it in this case. I mean, I agree with the Court obviously that asking -- Mr. Wardak is always able to be asked, pursuant to legal process, any questions that he knows of outside of things he learned from that process. But the question is whether the details of that process, how it came to Ms. Goolden's lawyer's

firm, we don't know how it came to their firm. And, therefore, we don't think they should be able to ask about that. And sort of similarly with the --

THE COURT: Well, "ask about that," what do you mean "ask about that"? Let's say plaintiff's counsel, Ms. Goolden's counsel, came into possession of a deposition transcript and either knew at the time or now knows that it's subject to a protective order and is not supposed to be used outside of that case and they're not supposed to have it. Okay? Are you saying that now counsel should not be permitted to ask any questions whatsoever about the underlying subject matter of that case or can't ask questions about the testimony given in that case specifically?

MS. CHAUDHRY: Our position is that both the contents and the transcript were only discoverable to Ms. Goolden by basically circumventing another court's order. And that order would have said that Mr. Wardak gets to be informed if anyone goes to unseal it. So to the extent that she went around that and got it, I believe she had told us that she's gotten it from Ms. Karzai's, who's a separate person -- I'm sorry -- Dr. Karzai's lawyer. But I don't think they ever should have had it without having to go through that process. So they do know the contents of

it now, but they only know the contents because they circumvented a properly-in-place sealing order.

THE COURT: Well, let me hear from Ms. Goolden's counsel.

MS. DECARLO: Thank you. Well, this was -- obviously, our position is that we didn't circumvent certainly or try to circumvent any sealing order that was issued on the Marmand case. It's important to note that the sealing order on the Marmand case was issued after that case was resolved.

Prior to the sealing order on that case, Dr. Karzai had initiated a family court proceeding against Mr. Wardak. And the Marmand case was raised in the context of that family court proceeding, and the details of the Marmand case were testified to in the context of the Karzai case. It's our understanding that Dr. Karzai was able, prior to the sealing order that was issued in the Marmand case, was able to retrieve some documents, including a deposition transcript from the Marmand case.

In addition, the Marmand case --

THE COURT: I'm sorry, you're saying that the way that it came into your possession was from somebody who legitimately had access to it before a protective order was issued?

MS. DECARLO: Yes. Yes.

THE COURT: And does the protective order --

MS. DECARLO: Now, whether --

THE COURT: -- say anything about any retroactive effect, that if anybody --

MS. DECARLO: No.

THE COURT: -- has any material, it has to be returned, or anything like that?

MS. DECARLO: No, it does not. It's -- I don't have it in front of me, but from memory, it's just a -- to the, you know, a simple statement that the case records are sealed henceforth, from the order.

So, in addition, though, it's important, I think, also to point out that there was this third case, these dueling lawsuits between Mr. Wardak and his prior employer Technologics, Inc. And the Marmand case was raised in the context of those cases, as well. And the details, certainly the most relevant details of Ms. Marmand's accusations against Mr. Wardak were raised and discussed in those cases that were never sealed, obviously, and not subject to any protective order.

So we, you know, retrieved information about the Marmand case from various sources, none of which were under seal. And the deposition that counsel is now arguing

should be subject to the sealing order was retrieved prior to the sealing order being issued.

THE COURT: Counsel on the other side, do you want to respond to that?

MS. CHAUDHRY: Yes, your Honor. First, I'd just like to answer your question of what the actual sealing order says. In our letter filed on the docket at number 129 we attached at the end -- and Ms. DeCarlo's correct, it just has a bald reading that says, "It is hereby ordered that the entire contents of this case and the previously nonsuited case of [X,Y and Z] shall be placed under seal." It does not get into --

THE COURT: I see it.

MS. CHAUDHRY: As for what is being described here, this idea that a lawyer in a federal case in the Southern District of New York is aware that a case is under seal and then seeks to find those documents through other sources without going through the process that is there for whenever a case is sealed, we all have to --

THE COURT: Well, aren't you making some assumptions there about timing and about where things came from and about how they were obtained? It sounds like what you're describing is, Oh, I've learned of a case, I see that it's under seal; let me go about trying to get documents from

that case through any other kinds of means that I can find. And I'm not sure if that is in fact the timeline.

But even assuming that it was, if the documents were obtained from other people who had them in a context other than that case, had them in the context of another case which is not sealed, then even there, what would be so unlawful about that?

MS. CHAUDHRY: Well, so, to answer the first part of your Honor's question, I believe that from the emails sent by Ms. DeCarlo to Mr. Millsaps, that these documents were emailed to Ms. Goolden's prior lawyers in 2019, which is after this case was sealed. And so at that point, everyone who had them would know that this is a sealed case and that this would not be permitted by the Court --

THE COURT: Well, what if the same documents -- what if documents are disclosed in cases A, B and C, and only case A is sealed, but they're fully available to the public with respect to case B and C, it may not be the most effective sealing order, but what then?

MS. CHAUDHRY: Well, your Honor, this is part of what we wanted to discuss with the Court. We'd like to brief this and address that because this is a slippery slope we have; and, clearly, the parties in that case and the Court's order made it very clear what happens. This is

not an unusual circumstance in that a record is sealed. And typically when parties in a separate litigation are interested in facts or documents that are under seal, there's a whole process to go through. This is a case where, years after it was sealed, that someone is trying to go around the sealing order by finding someone who might have it so that they can --

THE COURT: By the way, what is as fact that's under seal as opposed to a document? "Facts or documents under seal," what --

MS. CHAUDHRY: So the contents of what was in these deposition transcripts, those were for -- and the way I used it, that would be the facts. Right? We know that a case was filed, but in terms of what Ms. Marmand said in a deposition or in a transcript, those are facts that could be only learned if one were able to have access to a file that is not actually available to anybody in 2019 who didn't go through the court. Right? Everyone else would be prohibited from having access to this --

THE COURT: Not necessarily if the same documents are available in another case in another court which has not sealed them.

MS. CHAUDHRY: Yes, your Honor, if it was part of another case. But in this matter I don't believe that

these documents from your example of the A, B and C, and then I think D and E, I don't think that's what we have here. I think we have a time when Dr. Karzai obtained these documents for herself. I don't know that they were used in her case -- and what we're talking about was a family court petition -- and then held on to them and then later provided those to Ms. Goolden.

THE COURT: So Dr. Karzai obtained these documents at a time when she was entirely free to do so, and the order doesn't say anything about documents being pulled back or destroyed?

MS. CHAUDHRY: It doesn't say anything about that. And I --

THE COURT: And she then would be free to --

MS. CHAUDHRY: -- have no reason to say --

THE COURT: And you're saying she would not be free to disclose them later because, even though she got them lawfully and held them lawfully and didn't have to return them, she was now bound not to disclose them, even though it wasn't even her own case that was sealed?

MS. CHAUDHRY: Your Honor, I would agree that this sealing order leaves a little bit to be desired. Typically, protective orders, as you know, require anyone who receives the information to sign onto a protective

order and to agree that they will not turn any of the materials over to anyone else who does not also agree to be subject to a protective order and also give notice to someone. It would be a more complete and accurate thing if that's what happened here. But the intent is still -- what is the purpose of sealing something if --

THE COURT: Well, wait, wait, wait. This isn't a protective order like the type that we issue in discovery that says, Hey, if you get some material in discovery, you can't use it for any purpose other than this litigation; and if you do, then whatever. And people have to sign an undertaking. This is an order after a case is closed sealing the record of that case, after the case was closed, as I understand it. But before that case was closed, people had documents, were free to disclose them; and if they disclosed them to somebody else who was not directly bound by any sort of order -- and the order isn't directed at people; the order is directed at the record of that case so that people can't come in now and access things on the docket of that case because that particular docket is now sealed. But, certainly, if material was permitted to be disclosed during the course of litigation, was disclosed -- someone from -- by somebody in the Marmand case, let's say Marmand's counsel to someone in the Karzai case, let's say

Case 1:19-cv-06257-ALC-VF Document 315 Filed 04/24/23 Page 18 of 23



Ms. Karzai. Ms. Karzai says, okay, I have these documents; nobody's prohibited me from using them. The docket in that case is now sealed. Nobody can go to that court and get them, but I have these documents, I have them legitimately. Nobody has told me I have to destroy them. Nobody has directed an order toward me saying what I can't do. Nobody ahs directed an order toward litigants saying what they can't do. It's just keeping that record under seal.

So, you know, sometimes things are sealed. You know, somebody's juvenile conviction record might be sealed. That doesn't mean that if somebody has a copy of the disposition, they can't give it to somebody. It's -- you know, so I'm not so sure that there's been a violation of a protective order here. There is an order sealing the record. Nobody went to court and snuck in the back door or hacked into the system and took a sealed document out of the court that they were not supposed to. I'm not so sure there's been a violation. If there was no order in place during the course of the case that governed the parties' conduct and matters were disclosed at that time, I'm not so sure that anybody has done anything they're not permitted to do.

MS. CHAUDHRY: I mean, your Honor, I --

THE COURT: When is this deposition scheduled?

MS. CHAUDHRY: We were originally aiming for the first week in May, per the Court's order. And we're ready to proceed at that time, your Honor.

THE COURT: You have some time. So, I mean, if you want to brief it specifically, but I've got to tell you it's going to be somewhat fact specific and, too, in terms of what you're asking me to do, I mean, there's no fruit of the poisonous tree concept in civil litigation where we exclude evidence or anything. This is a criminal case concept. I mean, it seems to me you can always move to exclude something at trial as unduly prejudicial or -- and more prejudicial than probative or, you know, on relevance grounds or under some rule of evidence. But to say that someone cannot ask questions, I would say under the circumstances that you have now described, I'm not so sure there's even a line of what Ms. Goolden's counsel can't ask, because if she got these documents from some other source that was not -- and was not herself in any way bound not to receive them and not to use them, then I'm not even sure what ruling you want me to make or what the basis of it would be. Right?

I mean, if that -- usually the way this comes up is there is a protective order in another case, and a party wants to obtain documents from that case and cannot because

of the protective order and ask the Court for relief from the protective order and we steer them to the other Court where they ask for relief from the protective order, and they either get it or they don't get it, and therefore, they either get documents or they didn't. Here, the documents are already in hand from some source other than the court file, from a point in time seemingly before there was an order in place so there would not have been a violation of an order potentially that was used in a case other than the case where the records were sealed, where the documents would in any event be available from some other case, and you're asking me to say you can't use any of this information that you obtained, you would have to show me that, in the context of a sanctions motion, I would think, that plaintiff's counsel should not use it as a sanction for improper conduct. And I'm not sure that anything that I have in front of me suggests improper conduct by plaintiff's counsel.

MS. CHAUDHRY: Thank you, your Honor. I appreciate the Court sharing its views of our position --

THE COURT: Off the cuff, at least.

MS. CHAUDHRY: Well, we're just trying to make things interesting for you before you retire.

THE COURT: Thank you.

Case 1:19-cv-06257-ALC-VF Document 135 Filed 03/17/26 Page 42 of 43



MS. CHAUDHRY: And we will take what you've said under advisement. And we understand the Court's leanings on this.

THE COURT: Okay, look, if you want to make a motion, make the motion. Obviously, do it in enough time to get it decided not only before the deposition but before I leave, because I've already heard from you on this subject. If you don't, there'll be a transcript of this call, and somebody else can read the transcript or listen to the recording and pick it up from here with, you know, maybe separate thoughts on the matter.

But make sure you have your facts straight. Don't be assuming what happened and assuming how plaintiff's counsel got the documents. And, plaintiff's counsel, you know, if there is a motion made, I'm going to want to know from you with a little more specificity how they came into your possession in case there's any issue here. And, you know, don't give me a whole set of papers where somebody's making assumptions, and then in opposition I hear that's not at all what happened; what actually happened was this. Don't waste time. Okay?

MS. DECARLO: Yes, absolutely. Your Honor, we've been transparent about how we acquired this deposition transcript. And in fact, Dr. Karzai's attorney outlined in

a letter to Mr. Wardak's counsel how he acquired it and how it ended up in our hands. So Mr. Wardak's counsel, they have all the facts related to this.

THE COURT: Right. So, look, I'm going to say this to Ms. Goolden's counsel. Use your time wisely at the deposition. You have a certain number of hours that are permitted for depositions under the rules. Nobody has made an application to me for more time. I'm assuming you're going to stick within the amount of time you have unless you have a stipulation otherwise. You know, you may say, when it comes to Mr. Wardak's deposition or Ms. Goolden's deposition both sides will agree to more time. That's up to you. But as far as I'm concerned, you have a certain amount of time. You know, choose wisely what you -- how you spend that time, with the understanding that some of where you're going on this may be found inadmissible. And study those evidence rules first, and don't spend a whole lot of your precious deposition time asking questions on something where you think at the end of the day it's not going to be let in, anyway. Right? If you've got a good argument, you've got a good argument. If you think it's material and important and that's what you want to be doing, then do what you think is important. But, you know, again, I am not opining here on admissibility; I'm finding

it discoverable. Okay?

And what I'm finding discoverable, by the way, is accusations of conduct similar to that alleged in this case. Okay? I'm leaving it at that. I'm not finding relevant information about a prior dispute between Mr. Wardak and his company unless there's some very direct tie-in to conduct that's similar to the conduct alleged here. But the conduct as to the individual women, it seems to me is fair game for discovery; maybe not for trial, but for discovery. All right?

MS. DECARLO: Thank you, your Honor. Very much appreciated.

THE COURT: Okay. Now, with respect to timing, I'm assuming you're going to be able to work it out so that this is not opening a door to more fact discovery that hasn't already been raised and discussed. But with respect to that which you've flagged, either that you're working on cooperatively or depositions that you agree are yet to be scheduled, I'm assuming you can work that out and get those done by the current close of expert discovery. And if the deadlines overlap, they overlap. Is that fair?

MS. DECARLO: I think that's fair, yes, from plaintiff's end.

THE COURT: What about on defendant's side?